# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**ANNA MCNEIL, et al.,**

    **Plaintiffs**

**v.**

**YALE UNIVERSITY, et al.,**

    **Defendants.**

**CIVIL ACTION NO:**
**3:19-cv-00209 (VAB)**

**MAY 29, 2019**

## MEMORANDUM OF LAW IN SUPPORT OF
## 340 ELM, LLC'S MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... i

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

    I.   THE RELEVANT ALLEGATIONS ................................................................................. 2

    II.   THE RELEVANT FACTS ............................................................................................. 4

LEGAL STANDARD ............................................................................................................... 5

ARGUMENT .......................................................................................................................... 7

    I.   THE PLAINTIFFS FAIL TO STATE CLAIMS AGAINST 340 ELM, LLC UNDER THE

    FAIR HOUSING ACT OR CONNECTICUT DISCRIMINATORY HOUSING PRACTICES

    ACT (COUNTS III & IV, RESPECTIVELY) ............................................................... 7

    II.   THE PLAINTIFFS FAIL TO STATE CLAIMS AGAINST 340 ELM, LLC UNDER A

    CIVIL CONSPIRACY THEORY (COUNT V) ..................................................................... 13

    III.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST 340 ELM, LLC UNDER A

    DISCRIMINATION IN PLACES OF PUBLIC ACCOMODATION THEORY (COUNTS VI

    & VII)................................................................................................................... 16

CONCLUSION....................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........................................................ 5, 6, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ............................................ 5, 12

*Cabrera v. Jakabovitz*, 24 F.3d 372, 381 (2d Cir.), *cert. denied*, 513 U.S. 876 (1994). ............... 9

*Chestnut Realty, Inc. v. Commission on Human Rights & Opportunities, et al.,* 201 Conn. 350, 364 (September 2, 1986). ........................................................ 10

*Fair Housing in Huntington Committee Inc. v. Town of Huntington, N.Y.*, 316 F.3d 357, 366 (2d Cir.2003). ........................................................ 8, 9

*Hack v. President and Fellows of Yale College*, 237 F.3d 81, 88 (2d Cir.2000) ..................... 9, 10

*Harp v. King*, 266 Conn. 747, 779 (2003). .................................................. 13

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). .................................... 5

*Huntington Branch, N.A.A. C.P. v. Town of Huntington*, 844 F.2d 926, 936 (2d Cir.), *aff'd*, 488 U.S. 15 (1988) ........................................................ 10

*James v. New York Racing Assn.,* 233 F.3d 149, 154 (2d Cir.2000) ........................... 10

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). ........................ 6

*Macomber v. Travelers Prop. & Cas. Corp.*, 277 Conn. 617, 636 (2006). .................... 13

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ........................................ 8

*Miko v. Commission on Human Rights & Opportunities*, 220 Conn. 192, 202 (1991). ................ 8

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) .................................... 6

*Pension Benefit Guar. Corp. ex rel. Saint Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717-718 (2d Cir. 2013). .............................. 6

*Quinnipiac Council, Boy Scouts of America, Inc. v. CHRO*, 204 Conn. 287, 294-298 (1987) .... 17

*Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 142 (2000)...................................... 8

*Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48–49

(2d Cir.), *cert. denied*, 537 U.S. 813 (2002). ........................................................................ 8

*Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 302 (2d Cir.1998) ............... 10, 12

*Saulpaugh v. Monroe Community Hospital,* 4 F.3d 134, 142 (2d Cir.1993), *cert. denied*, 510 U.S.

1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994). ................................................................... 10

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)........................................................................ 9

*Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 575 (2d Cir.2003).................................. 10

*United State ex rel Customs Fraud Investigations, LLC v. Victaulic Co.,* 839 F.3d 242, 251 (3d

Cir. 2016) ................................................................................................................................ 6

*United States v. Town Hall Terrace Ass'n*, No. 95–CV–0533, 1997 WL 128353, *4 (W.D.N.Y.

Mar.14, 1997)......................................................................................................................... 9

**Statutes**

42 U.S.C. § 3602(f)....................................................................................................................... 11

42 U.S.C. § 3604...................................................................................................................... 7, 11

42 U.S.C. § 3604(a) ................................................................................................................. 8, 11

42 U.S.C. § 3604(b) ................................................................................................................. 9, 12

Connecticut General Statute, § 46a-64c....................................................................................... 8

Connecticut General Statutes § 46a-63(1) ................................................................................. 16

Connecticut General Statutes § 46a-64..................................................................................... 18

Connecticut General Statutes § 46a-64c(a)................................................................................. 8

Connecticut General Statutes § 46a-64c(b) ................................................................................ 9

Connecticut General Statutes §46a-64b..................................................................................... 17

Connecticut General Statutes §46a-64c. ........................................................................ 17

Federal Rule of Civil Procedure 12(d) .......................................................................... 6

Federal Rule of Civil Procedure 8(a)(2) ....................................................................... 6

Federal Rules of Civil Procedure, Rule 12(b)(6). ........................................................ 5

Public Act 90-246, Sections 2 and 3. ........................................................................... 17

Public Act 90-246, Sections 2-5 ................................................................................... 18

Public Act 90-246, Sections 4 and 5 ............................................................................ 17

## INTRODUCTION

This is a claim of discrimination brought by several female Yale students based on purported conduct of fraternities at Yale.  The plaintiffs have styled their complaint as a class action, and recently amended it adding as an additional plaintiff a student organization named "Engender," which the three named plaintiffs are members of.

The plaintiffs allege that they have been discriminated against on the basis of sex in that they have been denied the opportunity to be members of fraternities at Yale and correlatively, deprived of the various benefits attendant thereto.  The plaintiffs also allege they have been mistreated by the Yale fraternities in a number of ways.  The plaintiffs have brought their claims against a number of parties including Yale University for their handling of the alleged issues raised the in the plaintiffs complaint, the national and local chapters of a number of  fraternities with chapters at Yale, and several homeowners and/or landlords whose buildings are or were allegedly inhabited by a number of members of such fraternities.

The defendant 340 Elm, LLC ("340 Elm") is one of the building owners that have been targeted by the plaintiffs in this action.  As detailed more fully below, 340 Elm purchased a duplex located at 340-42 Elm Street in New Haven, CT (the 340 Elm "Property") in 2016.  At the time 340 Elm purchased the Property in 2016, it was leased by Yale students.  After the end of the 2016-2017 lease year, 340 Elm conducted renovations of the property and put it on the market again to lease for 2018-2019.  In 2018 the 340 Elm Property was leased to nine Yale students for the 2018-2019 lease year.  These nine Yale students are alleged by the plaintiffs to be members of the defendant Yale Fraternity, Alpha Kappa Delta ("Kappa Delta"), Yale's local chapter of the national fraternity, Chi Psi.  The plaintiffs allege that Kappa Delta is comprised of 51 fraternity members.  Other than allegedly leasing to nine such members, 340 Elm has no other connections

1

to Kappa Delta or Chi Psi.  Neither the named plaintiffs nor anyone identifying themselves as members of a group termed "Engender" approached 340 Elm about leasing the premises for that calendar year, or at any other juncture.

At its core, the plaintiffs' decision to bring claims against 340 Elm in the instant action was a decision to include an irrelevant party in this case without any legal or factual basis to do so. Through artful pleading, the plaintiffs define "Defendant Fraternities" to include housing corporations including defendant 340 Elm which lacks any substantive connection to the named fraternities and asserts baseless claims against them. To be sure, the plaintiffs have no basis for the claims they have alleged against 340 Elm.

Ultimately, the plaintiffs fail to meet the required pleading standards on essential elements of the causes of action asserted, and as such, the claims against 340 Elm should be dismissed.

## BACKGROUND

### I.   THE RELEVANT ALLEGATIONS

The plaintiffs claim that

> Each Defendant Fraternity's local chapter, national organization and housing corporation operated in concert to engage in the discriminatory and unlawful practices alleged in this Complaint.  Accordingly, each local chapter, national organization, and housing corporation are referred to collectively by the common name of the fraternity.  For example, "Sigma Chi" refers collectively to Defendant Sigma Chi International Fraternity; Defendant Sigma Chi, Theta Upsilon Chapter; and the Defendant House Corporation of Sigma Chi at Yale, Inc.

Plaintiffs' Amended Complaint, ¶ 60.

The plaintiffs allege that "the national organizations and local chapters exercise substantial control over the use of the fraternity houses" and that "the fraternity houses are integral to the operations of Defendant Fraternities: they serve as the Fraternities' principal party venues, as

2

residences to many fraternity members, and as bases of operations for the Fraternities at Yale." Plaintiffs' Amended Complaint, ¶ 158.

The plaintiffs also allege that "[t]he housing corporations earn money by charging fraternity members rent for their units in the fraternity houses" and "knowingly rent their houses to Chi Psi … for use as fraternity houses." Plaintiffs' Amended Complaint, ¶¶159, 161. The plaintiffs further allege that "Defendant Fraternities give priority to fraternity members – i.e. to men – in renting residential units in the fraternity houses. In many cases, Defendant Fraternities only allow fraternity members to rent units in the fraternity houses. By denying women admission as members, Defendant Fraternities also deny women the opportunity to rent units in the fraternity houses because of their gender." Plaintiffs' Amended Complaint, ¶ 163. Finally, the plaintiffs claim that the Defendant Fraternities (which includes housing corporations, including 340 Elm) have a "policy and practice of denying women" including plaintiffs' equal opportunity to rent units because of their gender. Plaintiffs' Amended Complaint, ¶ 164.

Ultimately, the plaintiffs allege that 340 Elm (and other defendants) are liable for violations of the Fair Housing Act (Count 3, ¶¶ 256-264), the Connecticut Discriminatory Housing Practices Act (Count 4, ¶¶ 265-277), Civil Conspiracy to commit housing law violations (Count 5, ¶¶ 278-284), and alleged discriminatory behavior in places of public accommodation under Connecticut General Statutes §§ 46a-63 and 46a-64 for denial of membership in fraternities (Count 6, ¶¶ 285-297) and hostile environment (Count 7, ¶¶ 298-309). The plaintiffs do not allege and there is no factual basis to support these allegations against 340 Elm.

## II.    THE RELEVANT FACTS

The plaintiffs allege that the Defendant Kappa Delta is the local chapter of Chi Psi fraternity, consists of 51 male members, is chartered, governed, managed and controlled by the Defendant Chi Psi Fraternity, and that Chi Psi Fraternity has the right to exercise control over activities, assets, policies and members of Kappa Delta.  Plaintiffs' Amended Complaint, ¶ 33. The plaintiffs also allege that 340 Elm, LLC is the owner and landlord of the Kappa Delta house and manages the house for Kappa Delta's and Chi Psi Fraternity's mutual benefit.  Plaintiffs' Amended Complaint, ¶ 54.

As indicated in the attached affidavit of Jesse Horsford, 340 Elm is a limited liability company which purchased and remodeled a duplex located at 340-342 Elm Street in New Haven, Connecticut in 2016 (the 340 Elm "Property"). Affidavit of Jesse Horsford, ¶¶ 4, 5, 10.  340-342 Elm Street is a duplex with eight bedrooms, collectively.  *Id.* at ¶ 7.  Each unit of the 340 Elm Property features several bedrooms, a living room, kitchen area, shared bathrooms and other communal space. *Id.* at ¶ 8.

At the time 340 Elm purchased the Property, it was already occupied by Yale students.  *Id.* at ¶ 9.  After the 2016-2017 lease term, which ended in the summer of 2017, extensive renovations began on the Property and it was not put on the market to rent again until 2018. *Id.* at ¶ 10.

The Farnam Realty Group, LLC was retained by 340 Elm to act as 340 Elm's agent for the purpose of leasing and performing landlord functions at the 340 Elm Property. *Id.* at ¶ 11.

In June 2018, the 340 Elm Property was rented for a 2018-2019 lease term to nine tenants. *Id.* at ¶ 12.  These individuals reported that they were members of the fraternity, Kappa Delta.  *Id.* at ¶ 15. The term of the 2018-2019 lease is June 1, 2018 to May 31, 2019.  *Id.* at ¶ 15.

4

Several other prospective tenants approached The Farnam Realty Group, LLC about renting the 340 Elm Property for the 2018-2019 lease term, including a several members of the girls volleyball team.  *Id.* at ¶¶ 16, 17.  Ultimately, the property was leased to current tenants because they were able to pay the amount being asked for as rent.  *Id.* at ¶ 18.[1]

None of the named plaintiffs, nor any groups identifying themselves as members of Engender approached The Farnam Realty Group, LLC about leasing the 340 Elm Property for the 2018-2019 lease term, or the 2019-2020 lease term.  *Id.* at ¶ 22.

## LEGAL STANDARD

Federal Rule 12(b)(6) provides for dismissal of a complaint or count(s) of a complaint for "failure to state a claim upon which relief can be granted."  Federal Rules of Civil Procedure, Rule 12(b)(6).  The party moving for dismissal has the burden of persuading the court beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle the plaintiff to relief.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A "formulaic recitation of the elements of a cause of action will not do," "[n]or does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alterations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "Plausibility … depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious

---

[1] Two leases have been executed for the 2019-2020 lease term to begin June 1, 2019 and extend through May 31, 2020.  *Id.* at ¶ 19.  These individuals reported themselves to be members of Chi Psi fraternity as well.  *Id.* at ¶ 21.

that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In short, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Federal Rule of Civil Procedure 8(a)(2)); *see also Pension Benefit Guar. Corp. ex rel. Saint Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717-718 (2d Cir. 2013).

Finally, pursuant to Federal Rule of Civil Procedure 12(d), attached as to this memorandum is an affidavit containing verified facts applicable to the plaintiffs' allegations, which may assist the court in its review of the instant motion.  To the extent the court will rely upon the attached affidavit, or prefer to do so, we ask the court's discretion to convert the instant motion to a motion for summary judgment, pursuant to Rule 56 and set forth additional pleadings and/or discovery the court would like to review attendant thereto.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (providing that when considering a Rule 12(b)(6) or 12(c) motion, a court is presented with materials outside the pleadings, and does not exclude them, the court is obligated to "convert" the pleadings challenge into a summary judgment motion); *United State ex rel Customs Fraud Investigations, LLC v. Victaulic Co.,* 839 F.3d 242, 251 (3d Cir. 2016) (providing that the court must give all parties notice of such conversion and an opportunity to both be heard and to present further materials in support of their positions on the motion).

## ARGUMENT

### I. THE PLAINTIFFS FAIL TO STATE CLAIMS AGAINST 340 ELM, LLC UNDER THE FAIR HOUSING ACT OR CONNECTICUT DISCRIMINATORY HOUSING PRACTICES ACT (COUNTS III & IV, RESPECTIVELY)

The plaintiffs fail to state claims against 340 Elm LLC under the Federal Fair Housing Act

or Connecticut Discriminatory Housing Practices Act.[2]

42 U.S.C. § 3604 provides:

> … it shall be unlawful –
>
> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604.

Connecticut General Statute, § 46a-64c provides:

> (a) It shall be a discriminatory practice in violation of this section: (1) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, creed, color, national origin, ancestry, sex, gender identity or expression, marital status, age, lawful source of income, familial status or status as a veteran. (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection

---

[2] The plaintiffs' claims alleging violations of the Connecticut Discriminatory Housing Practices Act are asserted collectively at the group the plaintiffs have defined as the "Defendant Fraternities" which includes 340 Elm and several other housing corporations. However, the plaintiffs allege they have not yet received releases of jurisdiction from the CHRO with respect to 340 Elm, and they have indicated that they will amend their complaint to add 340 Elm as a defendant to these counts once that has taken place. Plaintiffs' Amended Compl., ¶ 273, 296. The plaintiffs have also asserted claims against the same parties on behalf of Engender in the CHRO. Recently, partial releases of jurisdiction have been issued with respect to those matters. The CHRO retains jurisdiction over three amended claims, but the Engender claim was released on May 28, 2019. Accordingly, the plaintiffs indicate they will be amending their complaint to also include claims with respect to Engender on these counts. Plaintiffs' Amended Compl., ¶¶ 295, 296. 340 Elm, LLC submits this motion to dismiss and memorandum in support in anticipation that an amended complaint will be filed, once all releases of jurisdiction have been issued.

> therewith, race, creed, color, national origin, ancestry, sex, gender identity
> or expression, marital status, age, lawful source of income, familial status
> or status as a veteran."

Connecticut General Statute, § 46a-64c.

In analyzing housing discrimination claims under our state statutory scheme, "we are guided by the cases interpreting federal fair housing laws ..." *Miko v. Commission on Human Rights & Opportunities*, 220 Conn. 192, 202 (1991).

"A plaintiff can make out a claim of discrimination [under the FHA] either 'on a theory of disparate impact or one of disparate treatment.'" *Fair Housing in Huntington Committee Inc. v. Town of Huntington, N.Y.*, 316 F.3d 357, 366 (2d Cir. 2003).

Claims of intentional discrimination, i.e., disparate treatment, under the FHA are analyzed under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting analysis established for employment discrimination cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48–49 (2d Cir.), *cert. denied*, 537 U.S. 813 (2002). Under this scheme, plaintiffs must first make out a prima facie case of discrimination. *Id.* at 49. If the plaintiffs make out a prima facie case, then the burden of production shifts to the defendants to provide a legitimate, nondiscriminatory reason for their decision. *Id.* (citing *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 142 (2000)). If defendants meet that burden, "the McDonnell Douglas framework ... disappear[s] and the sole remaining issue [is] discrimination vel non." *Id.* (quoting *Reeves*, 530 U.S. at 142–43). Plaintiffs "must then prove that the defendants intentionally discriminated against them on a prohibited ground." *Id.* (citing *Reeves*, 530 U.S. at 143).

To make out a prima facie case of disparate treatment under 42 U.S.C. § 3604(a) (or its Connecticut corollary, Connecticut General Statutes § 46a-64c(a))  plaintiffs must show that (1)

they are members of a class protected by the FHA; (2) they sought, and were qualified, to rent (or continue renting) the dwellings in question; (3) defendants refused to rent to plaintiffs; and (4) the housing was put on the market or was rented to other tenants. *See Cabrera v. Jakabovitz*, 24 F.3d 372, 381 (2d Cir.), *cert. denied*, 513 U.S. 876 (1994).

"To establish a prima facie case [of disparate treatment] predicated upon 42 U.S.C. § 3604(b) (or the analogous Connecticut provision, Connecticut General Statutes § 46a-64c(b)) the plaintiff[s] must make a modest showing that a member of a statutorily protected class was not offered the same terms, conditions or privileges of rental of a dwelling or not provided the same services or facilities in connection therewith made available to others under circumstances giving rise to a reasonable inference of prohibited discrimination." *See United States v. Town Hall Terrace Ass'n*, No. 95–CV–0533, 1997 WL 128353, *4 (W.D.N.Y. Mar.14, 1997).

"In order to make out a prima facie case under the FHA on a theory of disparate impact, a plaintiff must demonstrate that an outwardly neutral practice [or rule] actually or predictably has a discriminatory effect; that is, has a significantly adverse or disproportionate impact on" the protected class. *Fair Hous. in Huntington Comm. Inc. v. Town of Huntington, N.Y.*, 316 F.3d 357, 366 (2d Cir. 2003).  S*ee also Hack v. President and Fellows of Yale College*, 237 F.3d 81, 88 (2d Cir. 2000) (in order to state FHA claim based on disparate impact, plaintiffs must show that the identified policy, although adopted for neutral reasons, has a discriminatory impact on the availability of housing for the protected class, or the terms and conditions on which the housing is offered), *cert. denied*, 534 U.S. 888, 122 S.Ct. 201, 151 L.Ed.2d 142 (2001), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

"A plaintiff [alleging disparate impact] need not show the defendant's action was based on any discriminatory intent," but "must prove the [facially neutral] practice 'actually or predictably

results in ... discrimination.'" *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 575 (2d Cir.2003) (quoting *Hack v. President & Fellows of Yale College*, 237 F.3d 81, 90 (2d Cir. 2000)). "Furthermore, the plaintiff must show a causal connection between the facially neutral policy and the alleged discriminatory effect." *Id.*

As with disparate-treatment claims, courts addressing disparate-impact claims employ a burden-shifting analysis. "Once a plaintiff establishes a prima facie case [of disparate impact], the burden shifts to the defendant[s] to 'prove that [their] actions furthered, in theory and in practice, a legitimate, bona fide ... interest and that no alternative would serve that interest with less discriminatory effect.'" *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 302 (2d Cir. 1998) (quoting *Huntington Branch, N.A.A. C.P. v. Town of Huntington*, 844 F.2d 926, 936 (2d Cir.), *aff'd*, 488 U.S. 15 (1988) (per curiam)).

Should the plaintiff make out a prima facie case for discrimination, the burden then shifts to the defendant who is obligated to "articulate… a non-discriminatory reason for its actions ..." (Citation omitted; internal quotation marks omitted.) *James v. New York Racing Assn.,* 233 F.3d 149, 154 (2d Cir. 2000); *Saulpaugh v. Monroe Community Hospital,* 4 F.3d 134, 142 (2d Cir. 1993), *cert. denied*, 510 U.S. 1164 (1994). "If the defendant articulates a legitimate, nondiscriminatory reason for its action, then the burden shifts back to the plaintiff to prove that the given reason was pretextual." *Chestnut Realty, Inc. v. Commission on Human Rights & Opportunities, et al.,* 201 Conn. 350, 364 (1986). The disparate treatment standard thus leaves the burden of persuasion at all times with the plaintiff. *Id.*, at 363.

The plaintiffs claim that the Defendant Fraternities engaged in unlawful sex discrimination in violation of the FHA and Connecticut Discriminatory Housing Practices Act, in that the "Defendant Fraternities refused to rent, refused to negotiate for the rental of, and otherwise made

10

unavailable or denied, dwellings to Plaintiffs McNeil, Singer, Walker, other members of Engender, and all members of the proposed class because of gender."  Plaintiffs' Amended Compl., ¶ ¶ 261, 270.  They also allege that the "Defendant Fraternities discriminated against Plaintiffs McNeil, Singer, Walker, other members of Engender, and the members of the proposed class based on their gender in terms, conditions, or privileges of the sale or rental of a dwelling, or in a provision of services or facilities in connection with such dwelling."  Plaintiffs' Amended Compl., ¶ ¶ 261, 270.  The plaintiffs allege that the defendants' actions were "taken intentionally, willfully and in disregard for the rights of others, and constituted a discriminatory housing practice as defined in 42 U.S.C. § 3602(f)."  Plaintiffs' Amended Compl., ¶ ¶ 262, 267.

Here, the plaintiffs do not make out a prima facie case of disparate treatment under 42 U.S.C. § 3604(a) or (b).  Under 42 U.S.C. § 3604(a), while the plaintiffs satisfy the first element in pleading that they are members of a protected class under the FHA, based on allegations of sex discrimination, they fail to satisfy the second and third elements in that none of the identified plaintiffs ever sought rental of the 340 Elm Property in question, and 340 Elm never refused to rent to the plaintiffs.  Compare to verified recitals set forth in the Affidavit of Jesse Horsford.  To be sure, none of the named plaintiffs, or any parties identified as members of Engender ever communicated with 340 Elm or the Farnam Group regarding the rental of the 340 Elm Property. *Id.*

Even if the court were to determine the plaintiffs have set forth a prima facie case under 42 U.S.C. § 3604(a), 340 Elm has valid, non-discriminatory reasons for not renting to the plaintiffs: (1) the plaintiffs never applied to rent the property or contacted 340 Elm by any means; and (2) the property was leased to other students based purely on the business terms of meeting the requested rent charges.

11

Furthermore, the plaintiffs do not have a claim of disparate treatment under 42 U.S.C. § 3604(b) as the 340 Elm Property was never rented to any of the plaintiffs and, by that fact alone the plaintiffs could not have been discriminated against with respect to the terms, conditions or privileges of rental of a dwelling.

The plaintiffs also fail to state a claim under a disparate impact theory.  The plaintiffs generally allege that the housing corporations refused to rent to "the Plaintiffs McNeil, Singer, Walker, other members of Engender, and all members of the proposed class because of their gender."  However, as provided in the Affidavit of Jesse Horsford, the plaintiffs never approached 340 Elm or attempted to lease the 340 Elm Property.   Affidavit of Jesse Horsford, ¶ 22.  Baseless allegations, generalized across all the various housing corporations are insufficient to withstand a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 557 (2007)).   The plaintiffs do not even attempt to distinguish the independent land owners who happen to rent to alleged fraternity members as individuals.

Even if the court were to determine the plaintiffs have set forth a prima facie case of disparate impact, as provided in the Affidavit of Jesse Horsford and discussed above, 340 Elm's decision to lease to the tenants it did during the 2018-2019 and 2019-2020 lease terms was made solely on such tenants' abilities to pay the asking price for rental of the units.  *See* Affidavit of Jesse Horsford, ¶ 18.  Such business interest undoubtedly qualifies as "a legitimate, bona fide … interest that no alternative would serve that interest with less discriminatory effect."  (internal quotations omitted). *See Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 302 (2d Cir. 1998).  Given that the plaintiffs never applied to rent the premises, they will further be unable to legitimately allege and/or show that such reason was pretextual.

Accordingly, the plaintiffs fail to state claims against 340 Elm, LLC under the Fair Housing

Act or the Connecticut Discriminatory Housing Act, and such claims should be dismissed.

## II.   THE PLAINTIFFS FAIL TO STATE CLAIMS AGAINST 340 ELM, LLC UNDER A CIVIL CONSPIRACY THEORY (COUNT V)

The plaintiffs fail to state a claim against 340 Elm LLC under a civil conspiracy theory.

"The [elements] of a civil action for conspiracy are: (1) a combination between two or more

persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3)

an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the

object, (4) which act results in damage to the plaintiff." (Internal quotation marks omitted.) *Harp

v. King*, 266 Conn. 747, 779 (2003). There is, however, "no independent claim of civil conspiracy.

Rather, [t]he action is for damages caused by acts committed pursuant to a formed conspiracy

rather than by the conspiracy itself.... Thus, to state a cause of action, a claim of civil conspiracy

must be joined with an allegation of a substantive tort." (Citation omitted; emphasis in original;

internal quotation marks omitted.) *Id*., at 779 n. 37.  "[T]he essence of a civil conspiracy ... [is]

two or more persons acting together to achieve a shared goal that results in injury to another." *Id*.,

at 779.

The purpose of a civil conspiracy claim is to impose civil liability for damages on those

who agree to join in a tortfeasor's conduct and, thereby, become liable for the ensuing damage,

simply by virtue of their agreement to engage in the wrongdoing. *Macomber v. Travelers Prop. &

Cas. Corp*., 277 Conn. 617, 636 (2006). Implicit in this purpose, and in the principle that there

must be an underlying tort for the viability of a civil conspiracy claim, is the notion that the

coconspirator be liable for the damages flowing from the underlying tortious conduct to which the

coconspirator agreed.  *Id.*

The plaintiffs allege the following facts in support of their claims:

- That "[e]ach local Chapter, national organization and housing corporation conspired to engage in the unlawful violations of fair housing laws set forth in this complaint." Plaintiffs' Amended Compl., ¶ 280.

- That "each fraternity's local chapter, national organization, and housing corporation agreed to use their house in New Haven as a fraternity house and agreed that the units in the house would solely be made available to men or that men would receive priority in renting units at the house." Plaintiffs' Amended Compl., ¶ 280.

- That "[p]ursuant to and in furtherance of this scheme, each Fraternity deterred or prevented Plaintiffs McNeil, Singer, Walker, other Engender members, and proposed class members from becoming Fraternity members and thereby gaining an equal opportunity as their male peers to rent units [in] each Fraternity house." Plaintiffs' Amended Compl., ¶ 281.

- "Accordingly, each of the fraternity's local chapters, national organizations, and housing corporations conspired together to rent, refuse to negotiate for the rental of, and otherwise make unavailable or deny, dwellings to Plaintiffs McNeil, Singer and Walker, other members of Engender, and all members of Engender, and all members of the proposed class because of their gender." Plaintiffs' Amended Compl., ¶ 282.

While the plaintiffs appear to properly plead the first element, i.e. that there was a combination between two or more persons (the fraternities and housing corporations) they fail to sufficiently plead the second element. To succeed on the second element, the plaintiffs would be required to plead that 340 Elm joined with Kappa Delta/Chi Psi to do a criminal or unlawful act,

14

i.e. violating Federal and Connecticut law regarding discriminatory housing practices.  These arguments are addressed in the previous section of this memorandum as well as the third element which would require successfully claiming that 340 Elm took actions "pursuant to the scheme and in furtherance of the object," and both fail for the reasons set forth therein.   addressed in the previous section, or (3) that 340 Elm took actions "pursuant to the scheme and in furtherance of the object."

The plaintiffs allege that 340 Elm agreed to use the Property as a fraternity house, that it would be solely available to men, and that 340 Elm refused to rent or negotiate the rental with the named plaintiffs and proposed class.  Plaintiffs' Amended Compl., ¶¶ 280, 282.  As addressed in the previous section, none of the named plaintiffs approached 340 Elm for the purpose of leasing the 340 Elm Premises.  *See also*, Affidavit of Jesse Horsford, ¶ 22.  Accordingly, 340 Elm cannot be liable for the purported refusal to rent to such parties.  The plaintiff has no viable alternative argument under this count.

As addressed in the previous section, the plaintiffs' allegations of violations of the Fair Housing Act and Connecticut Discriminatory Housing Practices Act fail as a matter of law with respect to 340 Elm, and accordingly, the plaintiffs cannot claim conspiracy in conjunction with these deficient causes of action.

In addition, as provided in Jesse Horsford's affidavit, 340 Elm has no contract, relationship or connection with Kappa Delta, Chi Psi or any other local or national chapters of fraternities mentioned in the instant complaint.  Affidavit of Jesse Horsford, ¶ 23.  In fact, the entirety of 340 Elm's transactions with any party allegedly affiliated with such fraternities was the 2018-2019 and 2019-2020 lease of the 340 Elm Property, each to nine individuals who plaintiffs allege comprise part of the fifty-one Kappa Delta members.  Plaintiffs' Amended Compl., ¶33; Affidavit of Jesse

Horsford, ¶¶ 12, 25. 340 Elm has had no other interactions with the fraternities named in this lawsuit.

Accordingly, the plaintiffs' claims against 340 Elm, LLC under a civil conspiracy theory fail as a matter of law.

## III. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST 340 ELM, LLC UNDER A DISCRIMINATION IN PLACES OF PUBLIC ACCOMODATION THEORY (COUNTS VI & VII)

The plaintiffs fail to state a claim against 340 Elm under a discrimination in places of public accommodation theory.

The plaintiffs assert two claims under this theory, one alleging discrimination in denial in memberships of fraternities, and one alleging a hostile environment.[3] These claims are asserted collectively against the group of defendants that the plaintiffs have defined as the "Defendant Fraternities." "Defendant Fraternities" purportedly includes 340 Elm and several other housing corporations, as well as national fraternities and Yale chapter fraternities. *See* Plaintiffs' Amended Compl., ¶ 60.

Connecticut General Statutes, § 46a-63(1) provides:

> Place of public accommodation, resort or amusement means any establishment which caters or offers its services or facilities or goods to the general public, including, but not limited to, any commercial property or building lot, on which it is intended that a commercial building will be constructed or offered for sale or rent…

---

[3] The plaintiffs allege they have not yet received releases of jurisdiction from the CHRO with respect to 340 Elm, and they have indicated that they will amend their complaint to add 340 Elm as a defendant to these counts once that has taken place. Plaintiffs' Amended Compl., ¶ ¶ 292, 293, 304, 305. The plaintiffs have also asserted claims against the same parties on behalf of Engender in the CHRO.  Recently, partial releases of jurisdiction have been issued with respect to those matters.  The CHRO retains jurisdiction over three amended claims, but the Engender claim was released on May 28, 2019.   Accordingly, the plaintiffs indicate they will be amending their complaint to also include claims with respect to Engender on these counts. Plaintiffs' Amended Compl., ¶ ¶ 295, 296, 307, 308.  340 Elm, LLC submits this motion to dismiss and memorandum in support in anticipation that an amended complaint will be filed, once all releases of jurisdiction have been issued.

Connecticut General Statutes, § 46a-64 provides:

> (a) It shall be a discriminatory practice in violation of this section: (1) To deny any person within the jurisdiction of this state full and equal accommodations in any place of public accommodation, resort or amusement because of … sex … of the applicant, subject only to the conditions and limitations established by law and applicable alike to all persons…

> (b) (1) The provisions of this section with respect to the prohibition of sex discrimination shall not apply to (A) the rental of sleeping accommodations provided by associations and organizations which rent all such sleeping accommodations on a temporary or permanent basis for the exclusive use of persons of the same sex

The plaintiffs' claims based on General Statutes § 46a-63 and 46a-64, which prohibit discriminatory public accommodations practices, is misplaced.  Its scope and reach were substantially modified in 1990 when the General Assembly passed specific legislation prohibiting discriminatory housing practices, i.e. Connecticut General Statutes §46a-64b and Connecticut General Statutes §46a-64c.  Public Act 90-246, Sections 4 and 5.  When this new legislation was enacted, the legislature amended General Statutes 46a-63 and 46a-64 to remove references to housing accommodations from its scope.  Public Act 90-246, Sections 2 and 3.  A copy of this Public Act is attached hereto for reference as Exhibit A and evidences the clear intent of the legislature to treat housing discrimination in a separate and distinct category for the purpose of addressing claims of this type.  *Compare Quinnipiac Council, Boy Scouts of America, Inc. v. CHRO*, 204 Conn. 287, 294-298 (1987) (discussing the prior version of the law, General Statutes (Rev. to 1977) 353-35(a)).

The plaintiffs claim that the Defendant Fraternities are public accommodations under Connecticut General Statutes §46a-63 because they are establishments that cater or offer their services or facilities or goods to the general public.  Plaintiffs' Amended Compl., ¶ ¶ 287, 300.

17

They allege:

> Defendant Fraternities open themselves up to the general public in numerous ways. They regularly host parties that are open to the general public and they allow a broad array of organizations and individuals to rent and use their spaces. Defendant Fraternities' primary admission criterion for membership is gender: upon information and belief, they admit the vast majority of men who apply while completely denying female students the opportunity to become members. The Fraternities depend upon, and have established a symbiotic relationship with Yale, which provides Fraternities with resources and allows the Fraternities to recruit Yale students.

Plaintiffs' Amended Complaint, ¶¶ 288, 301.

The plaintiffs further claim that:

> 289. Defendant Fraternities have a policy and practice of discriminating against female students. Defendant Fraternities each refuse to admit women to their membership.

> 290. Defendant Fraternities Explicitly rejected the requests of Plaintiffs McNeil, Singer, Walker, and other members of Engender, to become members because of their gender and/or indicated it would be futile for Plaintiffs McNeil, Singer, Walker, and other members of Engender, to apply for membership. The Fraternities have also rejected and/or deterred other members of the proposed class from becoming or seeking to become members in the community.

> 302. Defendant Fraternities have a policy and practice of creating a hostile environment at their houses and events throughout Yale's campus. Plaintiffs McNeil, Singer, Walker, other members of Engender, and members of the proposed class were subjected to sexual harassment or assault in fraternity houses and at fraternity parties. The prevalence of sexual harassment at fraternities is so great that Plaintiffs McNeil, Singer, and Walker no longer feel comfortable attending fraternity parties.

340 Elm leases two residences in a duplex to nine individuals. Affidavit of Jesse Horsford, ¶¶ 12, 19. A private residence is, by definition, not a place of public accommodation, resort or amusement regardless of whether the lessees are all members of the same club(s)/organization(s). *See* Public Act 90-246, Sections 2-5 (Exhibit A). Regardless of whether the defendant fraternity is found to be a public accommodation, the two apartments 340 Elm leases to nine students

collectively who are allegedly members of Kappa Delta does not in turn render 340 Elm or the 340 Elm Property, two private residences, places of public accommodation.  Finally, even if 340 Elm were deemed a place of public accommodation because of the tenants' activities there, *340 Elm* has never denied the named plaintiffs the opportunity to lease the premises, nor any applicant because of sex.  *See* Affidavit of Jesse Horsford, ¶¶ 22, 26.  Any claim that 340 Elm would be liable for owning the property and leasing it to individuals who have guests over on a public accommodations basis would be a clear misapplication of the law based on its text, purpose and intent.  *See* discussion of Public Act 90-246, above.

Defendant 340 Elm is not aware of any discriminatory behavior of its lessees, and to hold 340 Elm or landlords/residential property owners in general to a standard of investigating potential discriminatory behavior of its prospective tenants or organizations they are suspected of belonging to would be to set an unworkable standard.  *See* Affidavit of Jesse Horsford, ¶¶ 30, 31.  The plaintiffs have not alleged specific discriminatory behavior of the individual tenants who leased 340 Elm, nor is 340 Elm aware of any.  *Id*.  Research of Connecticut law and analogous statutory framework from other jurisdiction have yielded no precedent for the plaintiff's claims.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the defendant 340 Elm, LLC respectfully requests this court grant its motion to dismiss the plaintiffs' claims asserted against it in the instant action as they fail to meet the pleading standards required, are without merit and are completely baseless.

THE DEFENDANT,
304 ELM, LLC

BY MILANO & WANAT LLC

By:     /s/ CT 30406
        Liza M. Fletcher
        Milano & Wanat LLC
        471 East Main Street
        Branford, Connecticut 06405
        Phone: (203) 315-7000
        Fax: (203) 315-7007

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on **May 29, 2019**, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by first-class mail to all parties who are unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/ CT 30406
Liza M. Fletcher

# EXHIBIT A

> Connecticut General Statutes Annotated
>   Title 46a. Human Rights (Refs & Annos)
>     Chapter 814C. Human Rights and Opportunities
>       Part II. Discriminatory Practices (Refs & Annos)

C.G.S.A. § 46a-63

§ 46a-63. Discriminatory public accommodation practices: Definitions

Currentness

As used in this chapter:

(1) "Place of public accommodation, resort or amusement" means any establishment which caters or offers its services or facilities or goods to the general public, including, but not limited to, any commercial property or building lot, on which it is intended that a commercial building will be constructed or offered for sale or rent;

(2) "Deaf person" means a person who cannot readily understand spoken language through hearing alone and who may also have a speech defect which renders his speech unintelligible to most people with normal hearing;

(3) "Lawful source of income" means income derived from Social Security, supplemental security income, housing assistance, child support, alimony or public or state-administered general assistance.

**Credits**
(1980, P.A. 80-422, § 11; 1983, June Sp.Sess., P.A. 83-3, § 1; 1989, P.A. 89-288, § 1; 1990, P.A. 90-246, § 2; 1991, P.A. 91-58, § 23; 2004, P.A. 04-76, § 37.)

**Editors' Notes**

Relevant Additional Resources
Additional Resources listed below contain your search terms.

### HISTORICAL AND STATUTORY NOTES

#### Codification

The term "mobile home" has been changed to "mobile manufactured home" wherever appearing pursuant to 1983, June Sp.Sess., P.A. 83-3, § 1.

Technical changes were made to conform to Gen.St., Rev. to 2005.

#### Amendments

**1989 Amendment.** 1989, P.A. 89-288, § 1, added subsec. (4) defining "lawful source of income".

§ 46a-63. Discriminatory public accommodation practices. Definitions, CT ST § 46a-63

Case 3:19-cv-00209-VAB Document 72-1 Filed 05/29/19 Page 29 of 49

**1990 Amendment.** 1990, P.A. 90-246, § 2, in subsec. (1), deleted pars. (A) and (C), which included public housing and mobile manufactured home parks, deleted par. (B) designation and reference to any housing accommodation, deleted former subsec. (e) which defined "mobile manufactured home park", and redesignated former subsec. (4) as (3).

**1991 Amendment.** 1991, P.A. 91-58, § 23, in the opening sentence, added reference to definitions as used in this chapter.

**2004 Amendment.** 2004, P.A. 04-76, § 37, inserted "state-administered" in subd. (3).

Notes of Decisions containing your search terms (0)
View all 7

C. G. S. A. § 46a-63, CT ST § 46a-63
The statutes and Constitution are current with enactments of Public Acts enrolled and approved by the Governor on or before May 9, 2019 and effective on or before May 29, 2019.

End of Document                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

Connecticut General Statutes Annotated
Title 46a. Human Rights (Refs & Annos)
Chapter 814C. Human Rights and Opportunities
Part II. Discriminatory Practices (Refs & Annos)

C.G.S.A. § 46a-64

§ 46a-64. Discriminatory public accommodations practices prohibited. Penalty

Effective: October 1, 2017
Currentness

(a) It shall be a discriminatory practice in violation of this section: (1) To deny any person within the jurisdiction of this state full and equal accommodations in any place of public accommodation, resort or amusement because of race, creed, color, national origin, ancestry, sex, gender identity or expression, marital status, age, lawful source of income, intellectual disability, mental disability, physical disability, including, but not limited to, blindness or deafness, or status as a veteran, of the applicant, subject only to the conditions and limitations established by law and applicable alike to all persons; (2) to discriminate, segregate or separate on account of race, creed, color, national origin, ancestry, sex, gender identity or expression, marital status, age, lawful source of income, intellectual disability, mental disability, learning disability, physical disability, including, but not limited to, blindness or deafness, or status as a veteran; (3) for a place of public accommodation, resort or amusement to restrict or limit the right of a mother to breast-feed her child; (4) for a place of public accommodation, resort or amusement to fail or refuse to post a notice, in a conspicuous place, that any blind, deaf or mobility impaired person, accompanied by his guide dog wearing a harness or an orange-colored leash and collar, may enter such premises or facilities; or (5) to deny any blind, deaf or mobility impaired person or any person training a dog as a guide dog for a blind person or a dog to assist a deaf or mobility impaired person, accompanied by his guide dog or assistance dog, full and equal access to any place of public accommodation, resort or amusement. Any blind, deaf or mobility impaired person or any person training a dog as a guide dog for a blind person or a dog to assist a deaf or mobility impaired person may keep his guide dog or assistance dog with him at all times in such place of public accommodation, resort or amusement at no extra charge, provided the dog wears a harness or an orange-colored leash and collar and is in the direct custody of such person. The blind, deaf or mobility impaired person or person training a dog as a guide dog for a blind person or a dog to assist a deaf or mobility impaired person shall be liable for any damage done to the premises or facilities by his dog. For purposes of this subdivision, "guide dog" or "assistance dog" includes a dog being trained as a guide dog or assistance dog and "person training a dog as a guide dog for a blind person or a dog to assist a deaf or mobility impaired person" means a person who is employed by and authorized to engage in designated training activities by a guide dog organization or assistance dog organization that complies with the criteria for membership in a professional association of guide dog or assistance dog schools and who carries photographic identification indicating such employment and authorization.

(b) (1) The provisions of this section with respect to the prohibition of sex discrimination shall not apply to (A) the rental of sleeping accommodations provided by associations and organizations which rent all such sleeping accommodations on a temporary or permanent basis for the exclusive use of persons of the same sex or (B) separate bathrooms or locker rooms based on sex. (2) The provisions of this section with respect to the prohibition of discrimination on the basis of age shall not apply to minors or to special discount or other public or private programs to assist persons sixty years of age and older. (3) The provisions of this section with respect to the prohibition of discrimination on the basis of physical disability

shall not require any person to modify his property in any way or provide a higher degree of care for a physically disabled person, including, but not limited to blind or deaf persons, than for a person not physically disabled. (4) The provisions of this section with respect to the prohibition of discrimination on the basis of creed shall not apply to the practice of granting preference in admission of residents into a nursing home as defined in section 19a-490, if (A) the nursing home is owned, operated by or affiliated with a religious organization, exempt from taxation for federal income tax purposes and (B) the class of persons granted preference in admission is consistent with the religious mission of the nursing home. (5) The provisions of this section with respect to the prohibition of discrimination on the basis of lawful source of income shall not prohibit the denial of full and equal accommodations solely on the basis of insufficient income.

(c) Any person who violates any provision of this section shall be guilty of a class D misdemeanor.

**Credits**

(1949 Rev., § 8375; 1949, Supp. § 691a; 1953, Supp. § 2464c; 1955, Supp. § 3267d; 1958 Rev., § 53-35; 1959, P.A. 113; 1961, P.A. 472, §§ 1, 2; 1963, P.A. 594; 1965, Feb.Sp.Sess., P.A. 141; 1967, P.A. 177, § 1; 1972, P.A. 186, § 15; 1973, P.A. 73-119; 1973, P.A. 73-279, § 6; 1974, P.A. 74-205; 1975, P.A. 75-323; 1976, P.A. 76-49, § 3; 1977, P.A. 77-604, § 37, eff. July 6, 1977; 1978, P.A. 78-148, § 12; 1979, P.A. 79-186; 1980, P.A. 80-422, § 12; 1980, P.A. 80-483, § 135, eff. June 6, 1980; 1985, P.A. 85-289, § 7; 1985, P.A. 85-512, § 5; 1988, P.A. 88-114;1988, P.A. 88-288;1989, P.A. 89-21, § 2;1989, P.A. 89-288, § 2;1990, P.A. 90-230, § 63, eff. June 8, 1990; 1990, P.A. 90-246, § 3;1990, P.A. 90-330, § 4, eff. July 1, 1990; 1994, P.A. 94-238, § 4, eff. July 1, 1994; 1997, P.A. 97-141, § 2;1997, P.A. 97-210, § 1;2007, P.A. 07-217, § 167, eff. July 12, 2007; 2011, P.A. 11-55, § 25;2011, P.A. 11-129, § 20;2012, P.A. 12-80, § 94;2017, P.A. 17-127, § 5.)

**Editors' Notes**

Relevant Additional Resources
Additional Resources listed below contain your search terms.

### HISTORICAL AND STATUTORY NOTES

#### Transfer of Section

This section, formerly set out as C.G.S.A. § 53-35, was transferred to C.G.S.A. § 46a-64 in Gen.St., Rev. to 1981.

#### Codification

On and after Oct. 1, 2011, the term "the mentally retarded" has been changed to "persons with intellectual disability", pursuant to 2011, P.A. 11-129, § 20(a)(1), the term "mentally retarded", "mentally retarded person" or "mentally retarded persons" has been changed to intellectual disability", "person with intellectual disability" or "persons with intellectual disability", pursuant to 2011, P.A. 11-129, § 20(a)(2), and "mental retardation" has been changed to "intellectual disability", pursuant to 2011, P.A. 11-129, § 20(a)(3), in the following provisions: C.G.S.A. §§ 2c-2b, 4a-60, 4b-31, 8-2g, 8-3e, 9-159s, 10-91f, 17a-593, 17a-594, 17a-596, 45a-598, 45a-669, 45a-672, 45a-676, 45a-677, 45a-678, 45a-679, 45a-680, 45a-681, 45a-682, 45a-683, 46a-51, 46a-60, 46a-64, 46a-64b, 46a-66, 46a-70, 46a-71, 46a-72, 46a-73, 46a-75, 46b-76, 46b-84, 52-146o, 53a-46a, 53a-181i and 54-250.

#### Amendments

**1959 Amendment.** 1959, P.A. 113, included reference to sale or rental of any housing accommodation which is one of five or more units located on a single parcel or contiguous parcels of land owned or controlled by one person.

**1961 Amendments.** 1961, P.A. 472, § 1, inserted references to building lots, reduced from five to three the number of contiguous housing accommodations to which the section applied, and defined "owns or otherwise controls" to include ownership or control during the past year and direct or indirect ownership or control by the "same interests". The former section was designated as subsec. (a).

1961, P.A. 472, § 2, added a former subsec. (b) making the amendment inapplicable to pending proceedings.

**1963 Amendment.** 1963, P.A. 594, in subsec. (a), deleted former language limiting applicability to housing accommodations or building lots which were among three or more such accommodations or lots, and inserted a proviso excepting owner-occupied duplexes and rental of rooms in owner-occupied homes; and in subsec. (b), extended the inapplicability of the section to cases pending Oct. 1, 1963.

**1965 Amendment.** 1965, Feb.Sp.Sess., P.A. 141, inserted references to national origin or ancestry.

**1967 Amendment.** 1967, P.A. 177, § 1, inserted references to commercial property and buildings.

**1972 Amendment.** 1972, P.A. 186, § 15, in subsec. (a) inserted the reference to mobile home parks.

**1973 Amendments.** 1973, P.A. 73-119, in subsec. (a), made the section applicable to sex, and inserted a fourth sentence, exempting from sex discrimination any association or organization which rents exclusively to persons of the same sex.

1973, P.A. 73-279, § 6, in subsec. (a), inserted references to physical disability, including but not limited to, blindness; inserted subsecs. (b) and (c), specifying that no property need be modified for disabled persons and that blind persons may be accompanied by their guide dogs; designated the former last sentence of subsec. (a), relating to penalties, as subsec. (d); and redesignated former subsec. (b) as subsec. (e).

**1974 Amendment.** 1974, P.A. 74-205, made subsec. (a) applicable to marital status, and added a fifth sentence relating to denial of housing to an unrelated man and woman.

**1975 Amendment.** 1975, P.A. 75-323, made subsec. (a) applicable to age, and added a sixth sentence excepting from age discrimination provisions minors, government aided housing for the elderly, or housing developed and maintained exclusively for persons within a specified age group.

**1976 Amendment.** 1976, P.A. 76-49, § 3, made the section applicable to deafness and deaf persons; and added, to subsec. (b), a second sentence defining "deaf person".

**1977 Amendment.** 1977, P.A. 77-604, § 37, inserted, in the second sentence of subsec. (a), ", age".

**1978 Amendment.** 1978, P.A. 78-148, § 12, made subsec. (a) applicable to mental retardation.

**1979 Amendment.** 1979, P.A. 79-186, designated subsec. (c) as subd. (c)(1), relating to guide dogs, harnesses, and liability and added subd. (c)(2) relating to a notice.

**1980 Amendments.** 1980, P.A. 80-422, § 12, rewrote the section to read:

"(a) It shall be a discriminatory practice in violation of this section: (1) To deny any person within the jurisdiction of this state full and equal accommodations in any place of public accommodation, resort or amusement because of race, creed, color, national origin, ancestry, sex, marital status, age, mental retardation or physical disability, including, but not

limited to, blindness or deafness of the applicant, subject only to the conditions and limitations established by law and applicable alike to all persons; (2) to discriminate, segregate or separate on account of race, creed, color, national origin, ancestry, sex, marital status, age, mental retardation or physical disability, including, but not limited to, blindness or deafness; (3) for a place of public accommodation, resort or amusement to fail or refuse to post a notice, in a conspicuous place, that any blind or deaf person, accompanied by his guide dog wearing a harness, may enter such premises or facilities; or (4) to deny any blind or deaf person, accompanied by his guide dog, full and equal access to any place of public accommodation, resort or amusement. Any blind or deaf person may keep his guide dog with him at all times in such place of public accommodation, resort or amusement at no extra charge, provided the dog wears a harness and is in the direct custody of the blind or deaf person. The blind or deaf person shall be liable for any damage done to the premises or facilities by his dog.

"(b)(1) The provisions of this section shall not apply (A) to the rental of a housing accommodation in a building which contains housing accommodations for not more than two families living independently of each other, if the owner or members of his family reside in one of such housing accommodations, or (B) to the rental of a room or rooms in a housing accommodation, if such rental is by the occupant of the housing accommodation, or by the owner of the housing accommodation and he or members of his family reside in such housing accommodation. (2) The provisions of this section with respect to the prohibition of sex discrimination shall not apply to the rental of sleeping accommodations provided by associations and organizations which rent all such sleeping accommodations on a temporary or permanent basis for the exclusive use of persons of the same sex. (3) The provisions of this section with respect to the prohibition of discrimination on the basis of marital status shall not be construed to prohibit the denial of housing accommodations to a man and a woman who are both unrelated by blood and not married to each other. (4) The provisions of this section with respect to the prohibition of discrimination on the basis of age shall not apply to minors, to federal or state-aided or municipal housing for elderly persons, to special discount or other public or private programs to assist persons sixty years of age and older or to privately owned housing developed and maintained exclusively for persons within specified age groups. (5) The provisions of this section with respect to the prohibition of discrimination on the basis of physical disability shall not require any person to modify his property in any way or provide a higher degree of care for a physically disabled person, including, but not limited to blind or deaf persons, than for a person not physically disabled.

"(c) Any person who violates any provision of this section shall be fined not less than twenty-five nor more than one hundred dollars or imprisoned not more than thirty days or both."

1980, P.A. 80-483, § 135, in subd. (c)(1) as it appeared prior to amendment by 1980, P.A. 80-422, § 12, inserted "or her" and "or she".

**1985 Amendments.** 1985, P.A. 85-289, § 7, in subsec. (a), inserted references to mobility impaired persons throughout.

1985, P.A. 85-512, § 5, in subd. (4) of subsec. (b), inserted ", including mobile manufactured home parks,".

**1988 Amendments.** 1988, P.A. 88-114, in subsec. (b), added subd. (6).

1988. P.A. 88-288, in subsec. (a), prohibited discrimination in accommodations on the basis of mental disability.

**1989 Amendments.** 1989, P.A. 89-21, § 2, in subsec. (a)(3), (4), inserted reference to an orange colored leash and collar, wherever appearing.

1989, P.A. 89-288, § 2, in subsecs. (a)(1) and (a)(2), added lawful source of income as a reason for certain practices considered discriminatory; and added subsec. (b)(7).

**1990 Amendments.**1990, P.A. 90-230, § 63, in subsec. (a), in sentence beginning "It shall be a discriminatory practice", in item (2), substituted "mental disability or physical disability" for "physical or mental disability".

1990, P.A. **90-246**, § 3, without references to amendment of subsec. (a) by 1990, P.A. 90-230, § 63, in subsec. (b), deleted subd. (1), which related to housing rentals, and redesignated former subd. (2) as (1); deleted subd. (3), which provided that denial of housing accommodations to unmarried couples did not constitute discrimination because of marital status; redesignated former subds. (4) to (7) as (2) to (5); and in subd. (2), deleted provisions that had excepted government housing and mobile home parks for the elderly from the age discrimination provisions of this section.

1990, P.A. 90-330, § 4, without reference to amendments by 1990, P.A. 90-230, § 63, and 1990, P.A. **90-246**, § 13, in subsec. (a), subd. (2), made discrimination on account of a learning disability a violation of this section.

**1994 Amendment.**1994, P.A. 94-238, § 4, in subsec. (b)(1), inserted subpar. designators and added subpar. (B).

**1997 Amendments.**1997, P.A. 97-141, § 2, added all references to assistance dogs and to persons training guide dogs or assistance dogs in subsec. (a); added the fourth sentence in subsec. (a); and made other nonsubstantive changes.

1997, P.A. 97-210, § 1, in subsec. (a), added new subd. (3); and redesignated former subds. (3) and (4) as new subds. (4) and (5).

**2007 Amendment.**2007, P.A. 07-217, § 167, made technical corrections.

**2011 Amendment.**2011, P.A. 11-55, § 25, inserted "gender identity or expression," in subds. (a)(1) and (a)(2).

**2012 Amendment.**2012, P.A. 12-80, § 94, in subsec. (c), substituted "shall be guilty of a class D misdemeanor" for "shall be fined not less than twenty-five dollars or more than one hundred dollars or imprisoned not more than thirty days, or both".

**2017 Amendment.**2017, P.A. 17-127, § 5, in (a), inserted ", or status as a veteran," and ", or status as a veteran"; and made nonsubstantive changes.

## Derivation:

1905, P.A. ch. 11.

1918 Rev., § 6135.

1930 Rev., § 5985.

1933, Supp. § 1160b.

1935, Supp. § 1676c.

1941, Supp. § 860f.

1958 Rev., § 53-35b.

1967, P.A. 210, § 2.

1980, P.A. 80-422, § 50.


Notes of Decisions containing your search terms (0)
View all 19

C. G. S. A. § 46a-64, CT ST § 46a-64
The statutes and Constitution are current with enactments of Public Acts enrolled and approved by the Governor on or before May 9, 2019 and effective on or before May 29, 2019.

End of Document                                         © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Substitute House Bill No. 5958
          Substitute House Bill No. 5958
                PUBLIC ACT NO. 90-246
AN ACT ADOPTING A COMPREHENSIVE CONNECTICUT FAIR
HOUSING STATUTE CONFORMING TO THE FEDERAL FAIR
HOUSING ACT.
     Section 1. Subdivision (8) of section 46a-51
of the general statutes is repealed and the
following is substituted in lieu thereof:
     (8) "Discriminatory practice" means a
violation of section 4a-60, 46a-58, 46a-59,
46a-60, 46a-64, AS AMENDED BY SECTION 3 OF THIS
ACT, [46a-64a,] 46a-66, 46a-68, sections 46a-70 to
46a-78, inclusive, [or] subsection (a) of section
46a-80 OR SECTION 5 OF THIS ACT;
     Sec. 2. Section 46a-63 of the general
statutes, as amended by section 1 of public act
89-288, is repealed and the following is
substituted in lieu thereof:
     As used in this chapter:
     (1) "Place of public accommodation, resort or
amusement" means any establishment which caters or
offers its services or facilities or goods to the
general public, including, but not limited to,
[(A) public housing projects and all other forms
of publicly assisted housing, (B) any housing
accommodation,] ANY commercial property or
building lot, on which it is intended that a
[housing accommodation or] commercial building
will be constructed or offered for sale or rent;
[, and (C) mobile manufactured home parks;]
     (2) "Deaf person" means a person who cannot
readily understand spoken language through hearing
alone and who may also have a speech defect which
renders his speech unintelligible to most people
with normal hearing;
     [(3) "Mobile manufactured home park" means a
plot of ground upon which two or more mobile homes
occupied for residential purposes are located;]
     [(4)] (3) "Lawful source of income" means
income derived from social security, supplemental
security income, housing assistance, child
support, alimony or public or general assistance.
     Sec. 3. Section 46a-64 of the general
statutes, as amended by section 2 of public act
89-21 and section 2 of public act 89-288, is
repealed and the following is substituted in lieu
thereof:
     (a) It shall be a discriminatory practice in
violation of this section: (1) To deny any person
within the jurisdiction of this state full and
equal accommodations in any place of public
accommodation, resort or amusement because of
race, creed, color, national origin, ancestry,
sex, marital status, age, lawful source of income,
mental retardation, mental disability or physical
disability, including, but not limited to,

blindness or deafness of the applicant, subject
only to the conditions and limitations established
by law and applicable alike to all persons; (2) to
discriminate, segregate or separate on account of
race, creed, color, national origin, ancestry,
sex, marital status, age, lawful source of income,
mental retardation or physical or mental
disability, including, but not limited to,
blindness or deafness; (3) for a place of public
accommodation, resort or amusement to fail or
refuse to post a notice, in a conspicuous place,
that any blind, deaf or mobility impaired person,
accompanied by his guide dog wearing a harness or
an orange-colored leash and collar, may enter such
premises or facilities; or (4) to deny any blind,
deaf or mobility impaired person, accompanied by
his guide dog, full and equal access to any place
of public accommodation, resort or amusement. Any
blind, deaf or mobility impaired person may keep
his guide dog with him at all times in such place
of public accommodation, resort or amusement at no
extra charge, provided the dog wears a harness or
an orange-colored leash and collar and is in the
direct custody of the blind, deaf or mobility
impaired person. The blind, deaf or mobility
impaired person shall be liable for any damage
done to the premises or facilities by his dog.
     (b) (1) [The provisions of this section shall
not apply (A) to the rental of a housing
accommodation in a building which contains housing
accommodations for not more than two families
living independently of each other, if the owner
or members of his family reside in one of such
housing accommodations, or (B) to the rental of a
room or rooms in a housing accommodation, if such
rental is by the occupant of the housing
accommodation, or by the owner of the housing
accommodation and he or members of his family
reside in such housing accommodation. (2)] The
provisions of this section with respect to the
prohibition of sex discrimination shall not apply
to the rental of sleeping accommodations provided
by associations and organizations which rent all
such sleeping accommodations on a temporary or
permanent basis for the exclusive use of persons
of the same sex. [(3) The provisions of this
section with respect to the prohibition of
discrimination on the basis of marital status
shall not be construed to prohibit the denial of
housing accommodations to a man and a woman who
are both unrelated by blood and not married to
each other. (4)] (2) The provisions of this
section with respect to the prohibition of
discrimination on the basis of age shall not apply
to minors, [to federal or state-aided or municipal
housing for elderly persons,] to special discount
or other public or private programs to assist

persons sixty years of age and older. [, or to privately owned housing, including mobile manufactured home parks, developed and maintained exclusively for persons within specified age groups. (5)] (3) The provisions of this section with respect to the prohibition of discrimination on the basis of physical disability shall not require any person to modify his property in any way or provide a higher degree of care for a physically disabled person, including, but not limited to blind or deaf persons, than for a person not physically disabled. [(6)] (4) The provisions of this section with respect to the prohibition of discrimination on the basis of creed shall not apply to the practice of granting preference in admission of residents into a nursing home as defined in section 19a-490, if (A) the nursing home is owned, operated by or affiliated with a religious organization, exempt from taxation for federal income tax purposes and (B) the class of persons granted preference in admission is consistent with the religious mission of the nursing home. [(7)] (5) The provisions of this section with respect to the prohibition of discrimination on the basis of lawful source of income shall not prohibit the denial of full and equal accommodations solely on the basis of insufficient income.

(c) Any person who violates any provision of this section shall be fined not less than twenty-five nor more than one hundred dollars or imprisoned not more than thirty days or both.

Sec. 4. (NEW) As used in this section and section 5 of this act: (1) "Discriminatory housing practice" means any discriminatory practice specified in section 5 of this act.

(2) "Dwelling" means any building, structure, mobile manufactured home park or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, mobile manufactured home park or portion thereof.

(3) "Fair Housing Act" means Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (42 U.S.C. 3600-3620).

(4) "Family" includes a single individual.

(5) "Familial status" means one or more individuals who have not attained the age of eighteen years being domiciled with a parent or another person having legal custody of such individual or individuals; or the designee of such parent or other person having such custody with the written permission of such parent or other person; or any person who is pregnant or is in the

process of securing legal custody of any individual who has not attained the age of eighteen years.

(6) "Housing for older persons" means housing: (A) Provided under any state or federal program that the Secretary of the United States Department of Housing and Urban Development determines is specifically designed and operated to assist elderly persons as defined in the state or federal program; or (B) intended for, and solely occupied by, persons sixty-two years of age or older; or (C) intended and operated for occupancy by at least one person fifty-five years of age or older per unit in accordance with the standards set forth in the federal Fair Housing Act and regulations developed pursuant thereto by the Secretary of the United States Department of Housing and Urban Development.

(7) "Mobile manufactured home park" means a plot of land upon which two or more mobile manufactured homes occupied for residential purposes are located.

(8) "Physical or mental disability" includes, but is not limited to, mental retardation, as defined in section 1-1g of the general statutes and physical disability, as defined in subdivision (15) of section 46a-51 of the general statutes and also includes, but is not limited to, persons who have a handicap as that term is defined in the federal Fair Housing Act.

(9) "Residential real estate-related transaction" means (A) the making or purchasing of loans or providing other financial assistance for purchasing, constructing, improving, repairing or maintaining a dwelling, or secured by residential real estate; or (B) the selling, brokering or appraising of residential real property.

(10) "To rent" includes to lease, to sublease, to let and to otherwise grant for a consideration the right to occupy premises not owned by the occupant.

Sec. 5. (NEW) (a) It shall be a discriminatory practice in violation of this section:

(1) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, creed, color, national origin, ancestry, sex, marital status, age, lawful source of income, or familial status.

(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, creed, color, national origin, ancestry, sex, marital status, age, lawful source of income,

or familial status.

(3)   To make, print or publish, or cause to be made, printed or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, creed, color, national origin, ancestry, sex, marital status, age, lawful source of income, familial status, or physical or mental disability, or an intention to make any such preference, limitation or discrimination.

(4) (A) To represent to any person because of race, creed, color, national origin, ancestry, sex, marital status, age, lawful source of income, familial status, or physical or mental disability that any dwelling is not available for inspection, sale or rental when such dwelling is in fact so available.

(B) It shall be a violation of this subdivision for any person to restrict or attempt to restrict the choices of any buyer or renter to purchase or rent a dwelling (1) to an area which is substantially populated, even if less than a majority, by persons of the same protected class as the buyer or renter, (2) while such person is authorized to offer for sale or rent another dwelling which meets the housing criteria as expressed by the buyer or renter to such person and (3) such other dwelling is in an area which is not substantially populated by persons of the same protected class as the buyer or renter. As used in this subdivision, "area" means municipality, neighborhood or other geographic subdivision which may include an apartment or condominium complex; and "protected class" means race, creed, color, national origin, ancestry, sex, marital status, age, lawful source of income, familial status, or physical or mental disability.

(5) For profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, creed, color, national origin, ancestry, sex, marital status, age, lawful source of income, familial status, or physical or mental disability.

(6)   (A)   To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a physical or mental disability of: (i) Such buyer or renter; (ii) a person residing in or intending to reside in such dwelling after it is so sold, rented, or made available; or (iii) any person associated with such buyer or renter.

(B)   To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or

facilities in connection with such dwelling, because of a physical or mental disability of: (i) Such person; or (ii) a person residing in or intending to reside in such dwelling after it is so sold, rented, or made available; or (iii) any person associated with such person.

(C) For purposes of this subdivision, discrimination includes: (i) A refusal to permit, at the expense of a person with a physical or mental disability, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises; except that, in the case of a rental, the landlord may, where it is reasonable to do so, condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted; (ii) a refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; (iii) in connection with the design and construction of covered multi-family dwellings for the first occupancy after March 13, 1991, a failure to design and construct those dwellings in such manner that they comply with the requirements of Section 804(f) of the Fair Housing Act or the provisions of the state building code as adopted pursuant to the provisions of sections 29-269 and 29-273 of the general statutes, whichever requires greater accommodation. "Covered multi-family dwellings" means buildings consisting of four or more units if such buildings have one or more elevators, and ground floor units in other buildings consisting of four or more units.

(7) For any person or other entity engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, creed, color, national origin, ancestry, sex, marital status, age, lawful source of income, familial status, or physical or mental disability.

(8) To deny any person access to or membership or participation in any multiple-listing service, real estate brokers' organization or other service, organization, or facility relating to the business of selling or renting dwellings, or to discriminate against him in the terms or conditions of such access, membership or participation, on account of race, creed, color, national origin, ancestry, sex, marital status, age, lawful source of income, familial status, or physical or mental disability.

(9) To coerce, intimidate, threaten, or

interfere with any person in the exercise or
enjoyment of, or on account of his having
exercised or enjoyed, or on account of his having
aided or encouraged any other person in the
exercise or enjoyment of, any right granted or
protected by this section.

(b) (1) The provisions of this section shall
not apply to (A) the rental of a room or rooms in
a dwelling if the owner actually maintains and
occupies part of such living quarters as his
residence or (B) a unit in a dwelling containing
living quarters occupied or intended to be
occupied by no more than two families living
independently of each other, if the owner actually
maintains and occupies the other such living
quarters as his residence. (2) The provisions of
this section with respect to the prohibition of
discrimination on the basis of marital status
shall not be construed to prohibit the denial of a
dwelling to a man or a woman who are both
unrelated by blood and not married to each other.
(3) The provisions of this section with respect to
the prohibition of discrimination on the basis of
age shall not apply to minors, to special discount
or other public or private programs to assist
persons sixty years of age and older or to housing
for older persons as defined in section 4 of this
act, provided there is no discrimination on the
basis of age among older persons eligible for such
housing. (4) The provisions of this section with
respect to the prohibition of discrimination on
the basis of familial status shall not apply to
housing for older persons as defined in section 4
of this act or to a unit in a dwelling containing
units for no more than four families living
independently of each other, if the owner of such
dwelling resides in one of the units. (5) The
provisions of this section with respect to the
prohibition of discrimination on the basis of
lawful source of income shall not prohibit the
denial of full and equal accommodations solely on
the basis of insufficient income. (6) The
provisions of this section with respect to the
prohibition of discrimination on the basis of sex
shall not apply to the rental of sleeping
accommodations provided by associations and
organizations which rent all such sleeping
accommodations on a temporary or permanent basis
for the exclusive use of persons of the same sex.

(c) Nothing in this section limits the
applicability of any reasonable state statute or
municipal ordinance restricting the maximum number
of persons permitted to occupy a dwelling.

(d) Nothing in this section or section 4 of
this act shall be construed to invalidate or limit
any state statute or municipal ordinance that
requires dwellings to be designed and constructed

in a manner that affords persons with physical or mental disabilities greater access than is required by this section or section 4 of this act.

(e) Nothing in this section prohibits a person engaged in the business of furnishing appraisals of real property to take into consideration factors other than race, creed, color, national origin, ancestry, sex, marital status, age, lawful source of income, familial status, or physical or mental disability.

(f) Notwithstanding any other provision of chapter 814c of the general statutes, complaints alleging a violation of this section shall be investigated within one hundred days of filing and a final administrative disposition shall be made within one year of filing unless it is impracticable to do so. If the commission on human rights and opportunities is unable to complete its investigation or make a final administrative determination within such time frames, it shall notify the complainant and the respondent in writing of the reasons for not doing so.

(g) Any person who violates any provision of this section shall be fined not less than twenty-five nor more than one hundred dollars or imprisoned not more than thirty days, or both.

Sec. 6. Section 46a-54 of the general statutes, as amended by section 2 of public act 89-332, is repealed and the following is substituted in lieu thereof:

The commission shall have the following powers and duties:

(1) To establish and maintain such offices as the commission may deem necessary;

(2) To organize the commission into a division of affirmative action monitoring and contract compliance, a division of discriminatory practice complaints and such other divisions, bureaus or units as may be necessary for the efficient conduct of business of the commission;

(3) To employ a commission counsel who shall not be subject to the provisions of chapter 67;

(4) To appoint such investigators and other employees and agents as it deems necessary, fix their compensation within the limitations provided by law and prescribe their duties;

(5) To adopt, publish, amend and rescind regulations consistent with and to effectuate the provisions of this chapter;

(6) To establish rules of practice to govern, expedite and effectuate the procedures set forth in this chapter;

(7) To recommend policies and make recommendations to agencies and officers of the state and local subdivisions of government to effectuate the policies of this chapter;

(8) To receive, initiate as provided in

section 46a-82, investigate and mediate
discriminatory practice complaints;
(9) By itself or with or by hearing officers,
to hold hearings, subpoena witnesses and compel
their attendance, administer oaths, take the
testimony of any person under oath and require the
production for examination of any books and papers
relating to any matter under investigation or in
question;
(10) To make rules as to the procedure for
the issuance of subpoenas by individual
commissioners and hearing officers;
(11) To require written answers to
interrogatories under oath relating to any
complaint under investigation pursuant to this
chapter alleging any discriminatory practice as
defined in subdivision (8) of section 46a-51, and
to adopt regulations in accordance with the
provisions of chapter 54 for the procedure for the
issuance of interrogatories and compliance with
interrogatory requests;
(12) To utilize such voluntary and
uncompensated services of private individuals,
agencies and organizations as may from time to
time be offered and needed and with the
cooperation of such agencies, (A) to study the
problems of discrimination in all or specific
fields of human relationships and (B) to foster
through education and community effort or
otherwise good will among the groups and elements
of the population of the state;
(13) To require the posting by an employer,
employment agency or labor organization of such
notices regarding statutory provisions as the
commission shall provide;
(14) To require the posting, [at any place of
public accommodation, resort or amusement, as
defined in section 46a-63] BY ANY RESPONDENT OR
OTHER PERSON SUBJECT TO THE REQUIREMENTS OF
SECTION 46a-64, AS AMENDED BY SECTION 3 OF THIS
ACT, OR SECTION 5 OF THIS ACT, of such notices of
statutory provisions as it deems desirable; and
(15) To enter into contracts for and accept
grants of federal funds.
Sec. 7. Subsection (a) of section 46a-68 of
the general statutes is repealed and the following
is substituted in lieu thereof:
(a) Each state agency, department, board and
commission shall develop and implement, in
cooperation with the commission on human rights
and opportunities, an affirmative action plan that
commits the agency, department, board or
commission to a program of affirmative action in
all aspects of personnel and administration. Such
plan shall be developed pursuant to regulations
adopted by the commission on human rights and
opportunities in accordance with chapter 54 to

ensure that affirmative action is undertaken as required by state and federal law to provide equal employment opportunities and to comply with all responsibilities under the provisions of sections 4-61u to 4-61w, inclusive, sections 46a-54 to 46a-64, inclusive, AS AMENDED BY SECTION 3 AND 6 OF THIS ACT, SECTION 5 OF THIS ACT and sections 46a-70 to 46a-78, inclusive. The executive head of each such agency, department, board or commission shall be directly responsible for the development, filing and implementation of such affirmative action plan.

Sec. 8. Section 46a-74 of the general statutes is repealed and the following is substituted in lieu thereof:

No state department, board or agency may permit any discriminatory practice in violation of SECTION 46a-59 OR SECTION 46a-64, AS AMENDED BY SECTION 3 OF THIS ACT, OR SECTION 5 OF THIS ACT. [the Public Accommodations Act.]

Sec. 9. Section 46a-82 of the general statutes is repealed and the following is substituted in lieu thereof:

(a) Any person claiming to be aggrieved by an alleged discriminatory practice, except for an alleged violation of section 46a-68, AS AMENDED BY SECTION 7 OF THIS ACT, may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person alleged to have committed the discriminatory practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission. AFTER THE FILING OF A COMPLAINT PURSUANT TO THIS SUBSECTION, THE COMMISSION SHALL SERVE UPON THE PERSON CLAIMING TO BE AGGRIEVED A NOTICE THAT: (1) ACKNOWLEDGES RECEIPT OF THE COMPLAINT AND (2) ADVISES OF THE TIME FRAMES AND CHOICE OF FORUMS AVAILABLE UNDER THIS CHAPTER.

(b) The commission, whenever it has reason to believe that any person has been engaged or is engaged in a discriminatory practice, may issue a complaint except for a violation of subsection (a) of section 46a-80.

(c) The commission may issue a complaint if: (1) An affirmative action plan filed pursuant to section 46a-68, AS AMENDED BY SECTION 7 OF THIS ACT, is in violation of any of the provisions of section 4-61u or 4-61w, sections 46a-54 to 46a-64, inclusive, AS AMENDED BY SECTIONS 3 AND 6 OF THIS ACT, SECTION 5 OF THIS ACT or sections 46a-70 to 46a-78, inclusive; or (2) an agency, department, board or commission fails to submit an affirmative action plan required under section 46a-68, AS AMENDED BY SECTION 7 OF THIS ACT.

(d) Any employer whose employees, or any of them, refuse or threaten to refuse to comply with

the provisions of section 46a-60, may file with
the commission a written complaint under oath
asking for assistance by conciliation or other
remedial action.
    (e) Any complaint filed pursuant to this
section must be filed within one hundred and
eighty days after the alleged act of
discrimination except that any complaint by a
person claiming to be aggrieved by a violation of
subsection (a) of section 46a-80 must be filed
within thirty days of the alleged act of
discrimination.
    Sec. 10. Subsection (a) of section 46a-83 of
the general statutes, as amended by section 4 of
public act 89-332, is repealed and the following
is substituted in lieu thereof:
    (a) [After] WITHIN TEN DAYS AFTER the filing
of any discriminatory practice complaint, OR AN
AMENDMENT ADDING AN ADDITIONAL RESPONDENT, the
commission shall cause the complaint to be served
upon the respondent [who may] TOGETHER WITH A
NOTICE (1) IDENTIFYING THE ALLEGED DISCRIMINATORY
PRACTICE, AND (2) ADVISING OF THE PROCEDURAL
RIGHTS AND OBLIGATIONS OF A RESPONDENT UNDER THIS
CHAPTER. THE RESPONDENT MAY file a written answer
to the complaint under oath with the commission
within fifteen days of receipt of the complaint,
PROVIDED THE ANSWER TO ANY COMPLAINT ALLEGING A
VIOLATION OF SECTION 5 OF THIS ACT MAY BE FILED
WITHIN TEN DAYS OF RECEIPT. The chairman of the
commission shall refer the same to a commissioner
or investigator to investigate and determine if
there is reasonable cause for believing that a
discriminatory practice has been or is being
committed as alleged in the complaint. The
commission may conduct fact-finding conferences
during the investigatory process for the purpose
of finding facts and promoting the voluntary
resolution of complaints. As used in this section
and section 46a-84, as amended by section 5 of
[this act] PUBLIC ACT 89-332, reasonable cause
means a bona fide belief that the material issues
of fact are such that a person of ordinary
caution, prudence and judgment could believe the
facts alleged in the complaint.
    Sec. 11. Subsection (c) of section 46a-86 of
the general statutes is repealed and the following
is substituted in lieu thereof:
    (c) In addition to any other action taken
hereunder, upon a finding of a discriminatory
practice prohibited by section 46a-58, 46a-59,
46a-64, AS AMENDED BY SECTION 3 OF THIS ACT, or
[46a-64a] SECTION 5 OF THIS ACT, the presiding
officer shall determine the damage suffered by the
complainant, which damage shall include but not be
limited to the expense incurred by the complainant
for obtaining alternate housing or space, storage

of goods and effects, moving costs [, attorney's fees] and other costs actually incurred by him as a result of such discriminatory practice AND SHALL ALLOW REASONABLE ATTORNEY'S FEES AND COSTS.

Sec. 12. Subsection (b) of section 46a-89 of the general statutes is repealed and the following is substituted in lieu thereof:

(b) (1) Whenever a complaint is filed with or by the commission pursuant to section 46a-82 alleging a violation of section 46a-64, AS AMENDED BY SECTION 3 OF THIS ACT, or [46a-64a] SECTION 5 OF THIS ACT concerning the sale or rental of [housing accommodations] A DWELLING or commercial property, and a commissioner believes upon review and the recommendation of the investigator assigned, that equitable relief is required OR THAT THE IMPOSITION OF PUNITIVE DAMAGES OR A CIVIL PENALTY WOULD BE APPROPRIATE, the commissioner may bring a petition [in equity] in the superior court in the judicial district in which the discriminatory practice which is the subject of the complaint occurred or in the judicial district in which the respondent resides.

(2) The petition shall (A) seek appropriate injunctive relief against the respondent, including orders or decrees restraining and enjoining him from selling or renting to anyone other than the complainant or otherwise making unavailable to the complainant any [housing accommodations] DWELLING or commercial property with respect to which the complaint is made, pending the final determination of proceedings on such complaint, or (B) seeking an award of [double] damages based on the [findings made] REMEDIES AVAILABLE under section [46a-86] 46a-86c AND AN AWARD OF PUNITIVE DAMAGES PAYABLE TO THE COMPLAINANT, not to exceed [three] FIFTY thousand dollars, or (C) SEEKING A CIVIL PENALTY PAYABLE TO THE STATE AGAINST THE RESPONDENT TO VINDICATE THE PUBLIC INTEREST: (i) IN AN AMOUNT NOT EXCEEDING TEN THOUSAND DOLLARS IF THE RESPONDENT HAS NOT BEEN ADJUDGED TO HAVE COMMITTED ANY PRIOR DISCRIMINATORY HOUSING PRACTICE; (ii) IN AN AMOUNT NOT EXCEEDING TWENTY-FIVE THOUSAND DOLLARS IF THE RESPONDENT HAS BEEN ADJUDGED TO HAVE COMMITTED ONE OTHER DISCRIMINATORY HOUSING PRACTICE DURING THE FIVE-YEAR PERIOD PRIOR TO THE DATE OF THE FILING OF THIS COMPLAINT; AND (iii) IN AN AMOUNT NOT EXCEEDING FIFTY THOUSAND DOLLARS IF THE RESPONDENT HAS BEEN ADJUDGED TO HAVE COMMITTED TWO OR MORE DISCRIMINATORY HOUSING PRACTICES DURING THE SEVEN-YEAR PERIOD PRIOR TO THE DATE OF THE FILING OF THE COMPLAINT; EXCEPT THAT IF THE ACTS CONSTITUTING THE DISCRIMINATORY HOUSING PRACTICE THAT IS THE OBJECT OF THE COMPLAINT ARE COMMITTED BY THE SAME NATURAL PERSON WHO HAS BEEN PREVIOUSLY ADJUDGED TO HAVE COMMITTED ACTS CONSTITUTING A

DISCRIMINATORY HOUSING PRACTICE, THEN THE CIVIL
PENALTIES SET FORTH IN SUBPARAGRAPHS (ii) AND
(iii) MAY BE IMPOSED WITHOUT REGARD TO THE PERIOD
OF TIME WITHIN WHICH ANY SUBSEQUENT DISCRIMINATORY
HOUSING PRACTICE OCCURRED OR (D) seeking [both]
TWO OR MORE OF THESE remedies.

(3) Upon service on the respondent of notice
pursuant to section 46a-89a, the respondent shall
be temporarily restrained from selling or renting
the [housing accommodations] DWELLING or
commercial property which [are] IS the subject of
the complaint to anyone other than the complainant
until the court or judge has decided the petition
for temporary injunctive relief, and the notice
shall so provide.

Sec. 13. Subsection (b) of section 46a-90a of
the general statutes is repealed and the following
is substituted in lieu thereof:

(b) When the hearing officer finds that the
respondent has engaged in any discriminatory
practice prohibited by section 46a-60, 46a-64, AS
AMENDED BY SECTION 3 OF THIS ACT, or [46a-64a]
SECTION 5 OF THIS ACT and grants relief on the
complaint, which relief requires that such
temporary injunction remain in effect, the
commission chairperson may, through the procedure
outlined in subsection (a) of section 46a-95,
petition the court which granted the original
temporary injunction to make the injunction
permanent.

Sec. 14. Section 46a-98a of the general
statutes is repealed and the following is
substituted in lieu thereof:

[In lieu of, but not in addition to, filing
and pursuing a complaint with the commission on
human rights and opportunities pursuant to section
46a-82, any] ANY person claiming to be aggrieved
by a violation of section [46a-64a] 5 OF THIS ACT
OR BY A BREACH OF A CONCILIATION AGREEMENT ENTERED
INTO PURSUANT TO THIS CHAPTER, may bring an action
in the superior court, or the housing session of
said court if appropriate WITHIN ONE YEAR OF THE
DATE OF THE ALLEGED DISCRIMINATORY PRACTICE OR OF
A BREACH OF A CONCILIATION AGREEMENT ENTERED INTO
PURSUANT TO THIS CHAPTER. NO ACTION PURSUANT TO
THIS SECTION MAY BE BROUGHT IN THE SUPERIOR COURT
REGARDING THE ALLEGED DISCRIMINATORY PRACTICE
AFTER THE COMMISSION HAS OBTAINED A CONCILIATION
AGREEMENT PURSUANT TO SECTION 46a-83, AS AMENDED
BY SECTION 10 OF THIS ACT, OR COMMENCED A HEARING
PURSUANT TO SECTION 46a-84, EXCEPT FOR AN ACTION
TO ENFORCE THE CONCILIATION AGREEMENT. The court
shall have the power to grant relief, by
injunction or otherwise, as it deems just and
suitable. In addition to the penalties provided
for under subsection [(c)] (g) of section
[46a-64a] 5 OF THIS ACT, the court may grant any

relief which a hearing officer may grant in a proceeding under section 46a-86, AS AMENDED BY SECTION 11 OF THIS ACT, or which the court may grant in a proceeding under section 46a-89, AS AMENDED BY SECTION 12 OF THIS ACT. THE COMMISSION, THROUGH ITS COUNSEL OR THE ATTORNEY GENERAL, MAY INTERVENE AS A MATTER OF RIGHT IN ANY ACTION BROUGHT PURSUANT TO THIS SECTION.

Sec. 15. Section 46a-64a of the general statutes is repealed.