UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANNA McNEIL, et al., | ) | Case No.:  3:19-cv-00209 |
| Plaintiffs, | ) | |
| | ) | Hon. Victor A. Bolden |
| v. | ) | |
| YALE UNIVERSITY *et al.*, | ) | |
| Defendants. | ) | |

MOTION OF FRATERNITY DEFENDANTS TO DISMISS COMPLAINT
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6)

5677692

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

RELEVANT BACKGROUND ........................................................................................ 2

LEGAL STANDARD ...................................................................................................... 4

ARGUMENT .................................................................................................................... 5

    I.      PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE FRATERNITY
          DEFENDANTS UNDER THE FAIR HOUSING ACT ....................................... 510

          A.      No Plaintiff Is an "Aggrieved Person" Entitled To Bring Suit Under the
                FHA ........................................................................................................... 6

          B.      The Fraternity Defendants Fall Within the FHA's Private Club
                Exemption ................................................................................................. 7

                1.      Fraternity Defendants Are Private Clubs Not Open to the Public .. 8

                2.      The Housing Entities Provide Lodgings to Local Chapter
                      Members and Limit the Rental and Occupancy of Lodgings ......... 8

                3.      The Fraternity Defendants Provide Lodging as an Incident to
                      Their Primary Purpose and Those Lodgings Are Owned for
                      Other Than a Commercial Purpose ............................................... 9

    II.     PLAINTIFFS DO NOT STATE A CLAIM UNDER THE CONNECTICUT
          FAIR HOUSING ACT ................................................................................... 10

    III.    PLAINTIFFS DO NOT STATE A CLAIM FOR CIVIL CONSPIRACY .......... 11

    IV.    THE COMPLAINT DOES NOT STATE A CLAIM OF DISCRIMINATION
          BY A "PLACE OF PUBLIC ACCOMMODATION" UNDER
          CONNECTICUT LAW .................................................................................. 12

          A.      The Complaint Does Not Adequately Allege That the Local Chapters
                and National Organizations Are "Places of Public Accommodation" ...... 12

                1.      The Local Chapters and National Organizations Are Not Open
                      to the Public ................................................................................. 13

                2.      The Local Chapters Maintain Private Relationships With Their
                      Constituencies .............................................................................. 13

                3.      Fraternity Defendants Have Not Eschewed Selectivity in Their
                      Membership .................................................................................. 15

i

B.    Construing State Law To Effectively Ban Fraternities Would Raise Grave Concerns Regarding First Amendment Associational Rights ........ 16

       1.    The Strength of the Local Chapters' and National Organizations' Associational Interests Warrants Protection ........ 18

       2.    The Public Accommodation Statute Significantly Interferes With the Associational Interests at Issue ...................................... 18

       3.    The Public Interest Is Not Served by the Interpretation of the Statute Urged by Plaintiffs ................................................................ 18

       4.    The Statute Is Not Tailored or Intended to Eliminate Gender-Specific Organizations ............................................................................ 19

V.    THE CLAIMS AGAINST DEFENDANT SIGMA ALPHA EPSILON FRATERNITY ARE MOOT ............................................................................ 19

CONCLUSION ............................................................................................................ 20

5677692

## TABLE OF AUTHORITIES

**Cases**

*ArtSkills, Inc. v. Royal Consumer Prods., LLC,*
No. 3:17-cv-1552, 2018 WL 3520431, at *6 (D. Conn. July 20, 2018) ........................................ 5

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................................................................. 5

*Aurecchione v. Schoolman Transp. Sys., Inc.,*
426 F.3d 635 (2d Cir. 2005) ............................................................................................................... 4

*AvalonBay Communities, Inc.,*
256 Conn. 557 (2001) ........................................................................................................................ 10

*Bd. Of Dirs. of Rotary Int'l v. Rotary Club of Duarte,*
481 U.S. 537 (1987) ........................................................................................................................... 18

*Bd. Of Dirs. Of Rotary Int'l v. Rotary Club of Duarte,*
481 U.S. 537 (1987) ........................................................................................................................... 17

*Beckworth v. Bizier,*
48 F. Supp. 3d 186 (D. Conn. 2014) ................................................................................................ 11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................................................................. 5

*Caro v. Fidelity Brokerage Servs.,*
No. 3:14-cv-01028, 2015 WL 1975463, at *11 (D. Conn. Apr. 30, 2015) ................................... 11

*Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City University of New York,*
502 F.3d 136 (2d Cir. 2007) ............................................................................................................. 18

*Concepcion v. Continuum of Care,*
3:17-cv-1854, 2018 WL 6529178, at *2 (D. Conn. Dec. 12, 2018) ................................................ 3

*Corcoran v. German Soc. Soc'y Frohsinn, Inc.,*
99 Conn. App. 839 (2007) ................................................................................................................ 14

*DeForest v. Bank of New York Mellon.*
No. 3:17-cv-01504, 2018 WL 4078275, at *3 (D. Conn. Aug. 7, 2018) (Bolden, J.) .................... 5

*Friends of the Earth, Inc. v. Laidlaw Env'l Servs. (TOC), Inc.,*
528 U.S. 167. ........................................................................................................................................ 6

5677692

*FW/PBS, Inc. v. Dallas,*
493 U. S. 215 (1990) ............................................................................................................. 6

*Global Network Communications, Inc. v. City of New York,*
458 F.3d 150 (2d Cir. 2006) ................................................................................................. 3

*Goldstein v. Pataki,*
516 F.3d 50 (2d Cir. 2008) ................................................................................................... 5

*Hack v. The President and Fellows of Yale College,*
16 F. Supp. 2d 183, 192-93 (D. Conn. 1998), ................................................................. 6, 7

*Harris v. Mills,*
572 F.3d 66, 72 (2d Cir. 2009) ............................................................................................ 5

*Kiwanis Int'l v. Ridgewood Kiwanis Club,*
806 F.2d 468 (3d Cir. 1986) ............................................................................................... 16

*LeBlanc-Sternberg v. Fletcher,*
67 F.3d 412 (2d Cir. 1995) ................................................................................................... 6

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) .............................................................................................................. 6

*Macomber v. Travelers Prop. & Cas. Corp.,*
277 Conn. 617 (2006) ......................................................................................................... 11

*Martinez v. Riverbay Corp.,*
16-CV-546 (KPF), 2016 WL 5818594, *2 (S.D.N.Y. Oct. 4, 2016) ..................................... 4

*Makarova v. United States,*
201 F.3d 110 (2d Cir. 2000) ................................................................................................. 4

*N.J. Carpenters Health Fund v. Novastar Mortg., Inc.,*
753 Fed. App'x 16 (2d Cir. 2018) ...................................................................................... 20

*Phelps v. Kapnolas,*
308 F.3d 180 (2d Cir. 2002) ................................................................................................. 5

*Quinnipiac Council, Boy Scouts of America, Inc. v. Commission on Human Rights & Opportunities,*
204 Conn. 287 (1987) ......................................................................................................... 12

*Roberts v. United States Jaycees,*
468 U.S. 609 (1984) ............................................................................................................ 17

5677692

*Spokeo v. Robins*,
136 S.Ct. 1540 (2016) .................................................................................................. 6

*State v. State*,
No. CV9557527S, 1996 WL 737513 (Sup. Ct. Conn. Dec. 16, 1996) ......................... 14

*United States Parole Comm'n v. Geraghty*,
445 U.S. 388 (1980) .................................................................................................... 20

*United States v. Columbus Country Club*,
915 F.2d 877 (3d Cir. 1990) .......................................................................................... 8

*United States v. N.Y.C. Dist. Council*,
709 F. App'x 60, 62 (2d Cir. 2017) ............................................................................. 20

*Viens v. America Empire Surplus Lines Ins. Co.*,
113 F. Supp. 3d 555 (D. Conn. 2015) ......................................................................... 10

*Warth v. Seldin*,
422 U.S. 490 (1972) ...................................................................................................... 6

**Statutes**

42 U.S.C. § 3607(a). ................................................................................................. 6, 7
42 U.S.C. § 3613(a)(1)(A) ............................................................................................ 6
Conn. Gen. Stat. § 46a-64-c ("CFHA") ................................................................. passim
Fair Housing Act, 42 U.S.C. § 3604 *et seq.* ("FHA").......................................... 2, 5, 6, 10
FHA.......................................................................................................................... passim

**Rules**

Fed. R. Civ. P. 12(1)) ............................................................................................... 2, 4
Fed. R. Civ. P.12(b)(6)) ........................................................................................ 2, 4, 11

5677692

## INTRODUCTION

The national fraternal organizations (the "National Organizations")[1], local Yale University chapters of those organizations (the "Local Chapters")[2], and the corporations that provide temporary student housing to members of those chapters ("the Housing Entities.),"[3] and together with the National Organizations and Local Chapters, (collectively the "Fraternity Defendants") support the efforts of the individual Plaintiffs to make the Yale University community a more welcoming place for all students.  But Plaintiffs' claims against the Fraternity Defendants are wholly without merit, and their attempts to hold the Fraternity Defendants liable for gender discrimination in housing and by places of public accommodation run afoul of both federal and state law.

For almost a year, the individual Plaintiffs have unsuccessfully argued that the Fraternity Defendants discriminated against them based on their gender in violation of Connecticut law. Plaintiffs first sought relief through the Connecticut Commission on Human Rights and Opportunities ("CHRO"), but in January, the CHRO dismissed their complaints at the initial, pre-investigation stage, finding "no reasonable possibility that investigating the complaint will result in a finding of reasonable cause" as to their claims of gender discrimination in places of public accommodation.

---

[1] Alpha Epsilon Pi Fraternity Inc.; Alpha Delta Phi International Inc.; Chi Psi Fraternity; Delta Kappa Epsilon Fraternity; Sigma Alpha Epsilon Fraternity; Sigma Chi Fraternity; Sigma Nu Fraternity Inc.; Sigma Phi Epsilon Fraternity; and Zeta Psi Fraternity.

[2] Alpha Epsilon Pi, Epsilon Upsilon; Yale Chapter of Alpha Delta Phi International, Inc.; Chi Psi Fraternity, Kappa Delta Chapter; Delta Kappa Epsilon Fraternity Phi Chapter; Leo; Sigma Chi Fraternity, Theta Upsilon Chapter; Sigma Nu Fraternity, Beta Alpha Chapter; Sigma Phi Epsilon, Connecticut Delta; and Zeta Psi Fraternity, Eta Chapter.

[3] Mother Phi Foundation Inc.; Connecticut Omega of Sigma Alpha Epsilon House Corporation; Housing Corporation of Sigma Chi at Yale I; SigEp Housing of Connecticut Delta LLC; High Street Housing Corporation; ZP Nutmeg Associates Inc.

Plaintiffs now seek a second bite at the apple by presenting those same, previously-rejected Connecticut law claims to this Court, accompanied by wholly baseless claims against the Fraternity Defendants under the Fair Housing Act, 42 U.S.C. § 3604 *et seq.* ("FHA"), and the state version of that statute, Conn. Gen. Stat. § 46a-64b *et seq.*, as well as an inadequately-pled, conclusory "civil conspiracy" claim.

The First Amended Complaint ("FAC") fails to state a claim against the Fraternity Defendants.  First, Plaintiffs do not and cannot state a claim of housing discrimination under the FHA, because they make no allegation that they made inquiry regarding, applied for, or were denied housing provided by any Fraternity Defendant, and because the Fraternity Defendants are covered by the FHA's private club exemption. Similarly, there are no allegations in the FAC that Plaintiff Engender was involved in housing discussions or sought housing access of any kind. Second, because Plaintiffs' FHA and state-law equivalent claims fail, so must their claim that the Fraternity Defendants conspired to violate those statutes.  Finally, the Fraternity Defendants are not "place[s] of public accommodation" under Connecticut Gen. Stat. § 46a-64 and therefore cannot be liable under the statute for gender discrimination, as already determined by the CHRO. Under Rules 12(b)(1) and 12(b)(6), this Court should dismiss Counts III-VII of the FAC in their entirety.

## RELEVANT BACKGROUND

In July 2018, Plaintiffs filed administrative complaints with the CHRO asserting that the National Organizations and the Local Chapters are "place[s] of public accommodation" engaged in gender-based discrimination in violation of Connecticut Gen. Stat. § 46a-64.  As referenced above, in January 2019, the CHRO dismissed the administrative complaints, finding "no reasonable possibility that investigating the complaint will result in a finding of reasonable

5677692

cause" to pursue further action. Exhibit A.[4]   The CHRO concluded that while Connecticut's definition of "public accommodation" is more expansive than that under federal law, "not every organization falls within the statutory definition of a public accommodation."[5]

In determining whether a particular organization is a "place of public accommodation" under the Connecticut statute, courts and the CHRO "look at factors such as membership size and selectivity."[6]   Applying those factors, the CHRO found that the fraternities at issue were not public accommodations because their "membership is relatively contained" and "[m]ost functions are limited to members and their guests, not the public at large."[7]

Plaintiffs amended their CHRO administrative complaint as to the Housing Entities on December 6, 2018; the Housing Defendants filed a response on March 12, 2019.  On May 7, 2019, Plaintiffs amended their Housing Complaint; given the lawsuit currently before this Court, Plaintiffs and the Housing Entities have jointly requested a release of jurisdiction from the CHRO.  To date, the CHRO has not yet granted that release, and so the administrative complaint against the Housing Entities remains pending.[8]

---

[4]   The Court may properly consider the CHRO's decision in connection with the Defendant Fraternities' motion pursuant to Fed. Rule Civ. Pro. 12(b)(6) because Plaintiffs incorporated by reference and relied on the terms and effect of the CHRO decision in drafting their Complaint. *See e.g.*, *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006). Exhibit B (First Amended Complaint) ¶ 292 (relying on the January 14, 2019 CHRO determination to support that Plaintiffs received releases of jurisdiction from the CHRO). In addition, the Court may take judicial notice of documentation from an administrative proceeding without converting a motion to dismiss into a motion for summary judgment. *Concepcion v. Continuum of Care*, 3:17-cv-1854, 2018 WL 6529178, at *2 (D. Conn. Dec. 12, 2018) (taking judicial notice of, *inter alia*, CHRO notice of final agency action).

[5] Exhibit A.

[6] *Id.*

[7] *Id.*

[8] As Plaintiffs have yet to receive a release of jurisdiction from the CHRO, their purported claims against the Housing Entities are procedurally premature.

Plaintiffs filed this purported class action in February 2019, alleging that they sought admission to several of the Local Chapters but were refused membership because of their gender. Based on denials of "bids" from the Local Chapters, Plaintiffs now claim gender discrimination in housing against all Fraternity Defendants under the FHA (Count III), civil conspiracy to violate fair housing laws (Count IV), and discrimination and creation of a hostile environment by the Local Chapters and National Organizations under Connecticut Gen. Stat. § 46a-64 (Counts V and VI).  Because Plaintiffs have not pled—and cannot plead—facts sufficient to support these claims, this Court should dismiss them.

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P 12(b)(1), "[a] district court may properly dismiss a case for lack of subject matter jurisdiction . . . if it lacks the statutory or constitutional power to adjudicate it." *Martinez v. Riverbay Corp.*, 16-CV-546 (KPF), 2016 WL 5818594, *2 (S.D.N.Y. Oct. 4, 2016) (alteration in original), quoting *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir. 2005).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Martinez,* 2016 WL 5818594 at *2, quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).  In deciding a motion pursuant to Fed. R. Civ. P. 12(b)(1):

> . . . the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff, but jurisdiction must be shown affirmatively, and that showing [may] not [be] made by drawing from the pleadings inferences favorable to the party asserting it.  Moreover, where subject matter jurisdiction is contested, a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.

*Martinez*, 2016 WL 5818594 at **6-7 (internal quotations omitted).

Further, pursuant to Fed. R. Civ. P. 12(b)(6), this Court should dismiss a complaint if, after "accept[ing] the material facts alleged in the complaint as true and constru[ing] all

4

reasonable inferences in the plaintiff's favor," the plaintiff has failed "to state a claim upon which relief can be granted." Fed. R. Civ. Pro. 12(b)(6); *see Phelps v. Kapnolas*, 308 F.3d 180, 183-84 (2d Cir. 2002) (internal quotation marks omitted). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A complaint's factual allegations must be "sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). While a complaint need not contain "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *ArtSkills, Inc. v. Royal Consumer Prods., LLC*, No. 3:17-cv-1552, 2018 WL 3520431, at *6 (D. Conn. July 20, 2018) (Bolden, J.), quoting *Iqbal*, 556 U.S. at 678. In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 555. "Determining whether the complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *DeForest v. Bank of New York Mellon*, No. 3:17-cv-01504, 2018 WL 4078275, at *3 (D. Conn. Aug. 7, 2018) (Bolden, J.), quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

## ARGUMENT

### I. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE FRATERNITY DEFENDANTS UNDER THE FAIR HOUSING ACT

Plaintiffs allege that they have been denied housing by the Fraternity Defendants based on their gender in violation of the Fair Housing Act. Plaintiffs make no attempt to explain how the Local Chapters, National Organizations, or Housing Entities engaged in such alleged behavior, either separately or collectively; indeed, Plaintiffs claim only that the Housing Entities

5

"acted in concert" with the National Organizations or Local Chapters "to engage in discriminatory . . . practices" (FAC ¶ 60) with respect to housing.

But regardless, Plaintiffs' FHA claim fails for two separate reasons: first, because there is not a single allegation in the FAC that any Plaintiff ever applied or attempted to apply for housing with any of the Fraternity Defendants, let alone that she was denied such housing; and second, even if Plaintiffs had been denied housing by the Fraternity Defendants, such denial is permissible under the FHA's private club exemption as stated in 42 U.S.C. § 3607(a). As such, this Court should dismiss Count III of the FAC in its entirety as to the Fraternity Defendants.

### A.     No Plaintiff Is an "Aggrieved Person" Entitled To Bring Suit Under the FHA

As a preliminary matter, only an "aggrieved person" may assert a private cause of action under the FHA. 42 U.S.C. § 3613(a)(1)(A). "To establish that a plaintiff is an aggrieved person under the Act, 'a private plaintiff [must] allege injury in fact within the meaning of Article III of the [United States] Constitution, that is, that he alleges distinct and palpable injuries that are fairly traceable to [the] defendants' actions." *Spokeo v. Robins*, 136 S.Ct. 1540, 1547 (2016) citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Friends of the Earth, Inc. v. Laidlaw Env'l Servs. (TOC), Inc.*, 528 U.S. 167, 180-81. *See also Hack v. The President and Fellows of Yale College*, 16 F. Supp. 2d 183, 192-93 (D. Conn. 1998), quoting *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412 (2d Cir. 1995). Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing these elements. *Spokeo*, citing *FW/PBS, Inc. v. Dallas*, 493 U. S. 215, 231 (1990). Where a case is at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element. *Warth v. Seldin*, 422 U.S. 490, 518 (1972). Plaintiffs fail to meet their burden to clearly allege facts demonstrating that they suffered an injury under the Fair Housing Act.

6

Plaintiffs' claim consists of entirely self-serving and unsupported allegations that "Defendant Fraternities…deny women the opportunity to rent units in the fraternity houses because of their gender" (FAC ¶ 163) and that "Defendant Fraternities refused to rent, refused to negotiate for the rental of, and otherwise made unavailable or denied, dwellings to Plaintiffs" (*id.* ¶ 270). But plaintiffs' allegations are insufficient, as they have not asserted any injury under the FHA, nor can they – according to their own FAC, at *no point* did any Plaintiff apply for or attempt to apply for housing with the Fraternity Defendants. Consequently, the Fraternity Defendants cannot have denied or otherwise refused to provide housing to any Plaintiff. Plaintiff Engender makes the same barebones assertions, without any factual support whatsoever that it used resources to seek equal access to housing.

Without such allegations, there can be no injury. *Hack*, 16 F. Supp. at 193 (finding that "[t]he amended complaint has set forth no factual allegations that satisfy the injury-in-fact element" of an FHA claim because "Yale has neither refused to provide residence hall accommodations to the plaintiffs nor denied the plaintiffs rooms in the residence halls"). Plaintiffs' FHA claim therefore fails as a matter of law.

### B. The Fraternity Defendants Fall Within the FHA's Private Club Exemption

Even if the FAC could survive the pleading deficiencies described above (which it cannot), the Fraternity Defendants are exempt from liability under the FHA's "private club exemption." Under this provision -- notably absent in the FAC's FHA claim --the statute explicitly does not "prohibit a private club not in fact open to the public, which as an incident to its primary purpose . . . provides lodgings which it owns or operates for other than a commercial purpose, from limiting the rental or occupancy of such lodgings to its members or from giving preference to its members." 42 U.S.C. § 3607(a). That is precisely the situation here.

7

To fall within the FHA's private club exemption, a defendant must:

> (1) be a "private club not in fact open to the public"; (2) provide "lodgings;" and (3) only limit the "rental or occupancy of such lodgings." Furthermore, if a defendant provides "lodgings," those lodgings must be: (4) provided "as an incident to [the club's] primary purpose or purposes;" and (5) owned or operated "for other than a commercial purpose."

*United States v. Columbus Country Club*, 915 F.2d 877, 884 (3d Cir. 1990). A review of the FAC conclusively establishes that, based on those five factors, the Fraternity Defendants fall squarely within the private club exemption.

### 1.  Fraternity Defendants Are Private Clubs Not Open to the Public

The Local Chapters are small, selective, private groups. As alleged in the Complaint, each Local Chapter has between 27 and 69 members -- a small fraction of the Yale University student population. FAC ¶¶ 31-39. Plaintiffs' other assertions -- that the Local Chapters host parties and rent their spaces to other student groups (*id.* ¶¶ 196-98) -- do not change the fact that the Local Chapters themselves are private clubs; if anything, the fact that the Local Chapters on rare occasions allow members of the Yale student community to attend their social events or to rent their spaces demonstrates that the vast majority of the time, the Local Chapters and the facilities owned by the Housing Entities are open only to members, who are chosen, by Plaintiffs' own admission, through a lengthy and time-consuming selection process. *Id.* ¶¶ 288, 301. In other words, Plaintiffs provide nothing to contradict the fact that the Fraternity Defendants are private clubs not open to the public within the meaning of the first prong of the FHA's private club exemption.

### 2.  The Housing Entities Provide Lodgings to Local Chapter Members and Limit the Rental and Occupancy of Lodgings

The Housing Entities do indeed provide lodgings for members of the Local Chapters. As alleged in the FAC, the Housing Entities offer accommodations to Local Chapter members

5677692

during the academic year and occasionally during the summer months pursuant to rental contracts.  *Id.* ¶ 159.  Further, according to the FAC, the Fraternity Defendants allow only Local Chapter members to rent accommodations in the properties owned by the Housing Entities, thereby limiting the rental and occupancy of those dwellings.  *Id.* ¶ 163.  By the Plaintiffs' own concession, then, the Fraternity Defendants meet the second and third prongs of the FHA's private club exemption.

      3.      **The Fraternity Defendants Provide Lodging as an Incident to Their Primary Purpose and Those Lodgings Are Owned for Other Than a Commercial Purpose**

The allegations in the FAC provide explicit support for the remaining two prongs of the private club exemption test.  First, Plaintiffs allege that "the fraternity houses are integral to the operations of Defendant Fraternities: they serve as the fraternities' principal party venues, as residences for many fraternity members, and as bases of operations at Yale.  Having a fraternity house is central to Defendant Fraternities' abilities to attract new members and therefore garner a steady stream of dues."  *Id.* ¶ 158.  Once again, by Plaintiffs' own concession, the Local Chapters use the spaces owned by the Housing Entities for the primary purpose of developing a social structure, not for the incidental purpose of providing members with lodging; further, the Housing Entities do not own the spaces primarily for a commercial purpose, but because they are "integral to the operations" of the Local Chapters.  In other words, the FAC expressly pleads facts in support of the fourth and fifth prongs of the FHA's private club exemption.  Accordingly, even if Plaintiffs could otherwise plead a viable claim against the Fraternity Defendants under the FHA—which, as discussed, they have not done and cannot do—they have in any event pled themselves out of court by asserting all elements of the FHA's private club exemption.  This Court can and should dismiss Count III of the FAC against the Fraternity Defendants.

9

5677692

## II.   PLAINTIFFS DO NOT STATE A CLAIM UNDER THE CONNECTICUT FAIR HOUSING ACT

As they did in their FHA claim, Plaintiffs allege that the Fraternity Defendants engaged in gender discrimination under the Connecticut Fair Housing Act, Conn. Gen. Stat. § 46a-64-c ("CFHA"), by refusing to rent rooms to them.  FAC ¶ 270.  But the same reasons discussed above, Plaintiffs have not alleged any injury and therefore cannot state a claim under the statute.

Like the FHA, the CFHA limits claims to "aggrieved persons."  Conn. Gen. Stat. §46a-98a.  And like the FHA, the CFHA "'requires…that a private plaintiff allege 'injury in fact' within the meaning of Article III of the Constitution.'"  *Viens v. America Empire Surplus Lines Ins. Co.*, 113 F. Supp. 3d 555, 561 (D. Conn. 2015), quoting *AvalonBay Communities, Inc.*, 256 Conn. 557, 592 (2001).  *See also Viens*, 113 F. Supp. at 561 n.3 ("the Connecticut Supreme Court has generally interpreted the CFHA in tandem with federal law"), *AvalonBay*, 256 Conn. at 591 ("[I]n addressing claims brought under both federal and state housing laws, we are guided by the cases interpreting federal fair housing laws.....despite differences between the state and federal statutes.").

As discussed above, Plaintiffs have not pled at any point in the FAC that they applied for or attempted to secure housing in any of the facilities owned by the Housing Entities, occupied by members of the Local Chapters, or otherwise used by the Fraternity Defendants.  As such, the Fraternity Defendants cannot have denied or otherwise refused to provide housing to any Plaintiff, and Plaintiffs therefore have not adequately pled an injury.  This Court should dismiss Count IV of the FAC.

5677692

## III.    PLAINTIFFS DO NOT STATE A CLAIM FOR CIVIL CONSPIRACY

Count V of the FAC alleges that the Fraternity Defendants conspired to violate the "fair housing laws set forth in this complaint" -- ostensibly, the FHA and CHFA.  But because Plaintiffs have not pled the elements of civil conspiracy, let alone the elements of the underlying statutes they allege were violated by the Fraternity Defendants, this claim must fail.

"'The elements of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff.'"  *Caro v. Fidelity Brokerage Servs.*, No. 3:14-cv-01028, 2015 WL 1975463, at *11 (D. Conn. Apr. 30, 2015) (granting motion to dismiss pursuant to Fed. R. Civ. P.12(b)(6)), quoting *Macomber v. Travelers Prop. & Cas. Corp.*, 277 Conn. 617, 635-36 (2006).  Further, "a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Beckworth v. Bizier*, 48 F. Supp. 3d 186, 203 (D. Conn. 2014) (granting motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)), quoting *Macomber*, 277 Conn. at 636.

Plaintiffs allege that the Fraternity Defendants conspired to "refuse to rent, refuse to negotiate for the rental of, and otherwise make unavailable, dwellings to Plaintiffs" (FAC ¶ 282) -- but as discussed above, the Fraternity Defendants did no such thing.  Once again, Plaintiffs at no point allege that they ever tried to rent or negotiated to rent rooms in the facilities owned by the Housing Entities, and as such, the Fraternity Defendants could not have refused to rent such rooms or otherwise denied housing to the Plaintiffs.  Plaintiffs therefore have not alleged  the injury required both for a claim of civil conspiracy and for claims brought under the FHA and CHFA.  This Court must deny Plaintiffs' civil conspiracy claim.

5677692

## IV.   THE COMPLAINT DOES NOT STATE A CLAIM OF DISCRIMINATION BY A "PLACE OF PUBLIC ACCOMMODATION" UNDER CONNECTICUT LAW

Counts VI and VII of the Complaint assert that the Local Chapters and National Organizations are "place[s] of public accommodation" that engaged in gender-based discrimination in violation of Connecticut Gen. Stat. § 46a-64.  But Plaintiffs have not pled—because they cannot—that these Defendants constitute "place[s] of public accommodation" under the statute.  For that reason, these state-law claims fail as a matter of law.

### A.   The Complaint Does Not Adequately Allege That the Local Chapters and National Organizations Are "Places of Public Accommodation"

Section 46a-64 prohibits discriminatory practices which deny any person within the State full and equal accommodations in "*any place of public accommodation*" on the basis of "race, creed, color, national origin, ancestry, sex, gender identity or expression, marital status, age, lawful source of income, intellectual disability, mental disability or physical disability . . . ." Conn. Gen. Stat. § 46a-4 (emphasis added).  "Although no organization is duty-bound to offer its *services* and *facilities* to all comers, once such an organization has determined to eschew selectivity" and thereby become a place of public accommodation, "under [Connecticut's] statute it may not discriminate among the general public." *Quinnipiac Council, Boy Scouts of America, Inc. v. Commission on Human Rights & Opportunities*, 204 Conn. 287, 299 (1987) (emphasis added).   Neither the Local Chapters nor the National Organizations constitute public accommodations under the Connecticut statute as interpreted by both federal and Connecticut courts.

To determine whether a particular establishment is a "place of public accommodation" under Connecticut law, courts consider whether: (1) the establishment is open to the general public; (2) it maintains a private relationship with its own constituency; and (3) it maintains

12

selectivity. *Quinnipiac Council*, 204 Conn. at 299.   Accordingly, to plead gender-based discrimination in violation of the statute, a plaintiff must allege facts sufficient to show that he or she was denied access to a "place of public accommodation" based on these factors.

Notably, the CHRO—the Connecticut state agency responsible for implementing this state statute—analyzed these factors and concluded that there was no reasonable possibility that further investigation of Plaintiffs' claims would result in a finding of probable cause, dismissing the administrative complaints at its earliest opportunity to do so.   Plaintiffs have alleged no material facts in the FAC regarding these public accommodation claims that they did not provide to the CHRO.   The Court accordingly should follow the decision of the CHRO and dismiss Counts VI and VII against the National Organizations and Local Chapters, as these groups do not and cannot constitute "places of public accommodation" under Connecticut law.

### 1.   The Local Chapters and National Organizations Are Not Open to the Public

As discussed above, Plaintiffs allege that the Local Chapters and National Organizations are "open to the public" because the Local Chapters host parties and infrequently rent their spaces to other Yale student organizations.   FAC ¶¶ 196-98.   Notably, Plaintiffs make no allegations whatsoever as to the National Organizations.   Further, Plaintiffs ignore both that the Yale undergraduate community is not the "general public" and that hosting infrequent social events does not remotely constitute maintaining relationships with the "public at large."   Indeed, Plaintiffs' assertions reinforce the fact that the Local Chapters are, in fact, private clubs that on rare occasions welcome guests for social events.

### 2.   The Local Chapters Maintain Private Relationships With Their Constituencies

"[C]overage under § 46a-64(a) depends, in each case, upon the extent to which a particular establishment has maintained a private relationship with its own constituency or a

5677692

general relationship with the public at large." *Corcoran v. German Soc. Soc'y Frohsinn, Inc.*, 99 Conn. App. 839, 844 (2007) (citation and internal quotation marks omitted).

For example, in *Corcoran*, the trial court concluded that a German culture social club was a "place of public accommodation" because it admitted virtually every male applicant to its membership and frequently opened events to women and other members of the general public. The club occupied a hall that was "used for weddings, birthday parties and other functions," had been "rented out for 'swing dance' lessons," and could "be used by members and non-members" alike. *Id.* at *1. The plaintiff in *Corcoran* was a woman who, after an initial invitation to visit the club, continued to return to the club "usually on a weekly basis" over the next six months; "[s]he did not receive any specific invitations to the club, but would show up as she chose." In other words, the club did not maintain a private relationship with its members.

By contrast, in *State v. State*, No. CV9557527S, 1996 WL 737513 (Sup. Ct. Conn. Dec. 16, 1996), the court found that the University of Connecticut had not engaged in gender discrimination in denying the plaintiff a position on the public university's cheerleading squad because, among other reasons, membership on the cheerleading team was not available to the general public—it was instead "an extracurricular activity limited to a discr[ete] group of people who meet certain specific qualifications." *Id.* at *9. For that reason, the cheerleading squad was not a "place of public accommodation" under Connecticut law. *Id.*

Further undermining their assertion that the fraternities defendants do not maintain private relationships with their own constituencies, Plaintiffs allege at length the benefits of membership in the Local Chapters and National Organizations that are foreclosed to non-member students, including:

> alumni and professional connections, including connections to prestigious banking and consulting firms, which often result in

14

> coveted job offers and economic opportunities[,] . . . . regular
> emails from recruiters or alumni professional resources[,] . . . .
> summer internships and job offers thanks to their fraternity alumni
> networks and contacts[,] . . . . prime off-campus housing, coveted
> parking spaces, and a national network of chapters that serve as the
> members' home bases on other campuses.

FAC ¶ 122.  These allegations reflect allegedly exclusive benefits of being a member of these

private clubs, neither open nor available to the public.

### 3. Fraternity Defendants Have Not Eschewed Selectivity in Their Membership

The only plausible reading of the FAC is that the Local Chapters are highly selective in

choosing their members.  According to Plaintiffs, "Yale's admissions office claims that the

Greek community comprises approximately 10% of the undergraduate population."[9] FAC ¶ 173.

Candidates for fraternity membership go through a lengthy application process.  As alleged in

the Complaint, once a year, at the beginning of the spring semester, the Local Chapters host a

series of events open to potential applicants.  *Id.* at ¶ 127.  According to Plaintiffs, "each

Fraternity has its own rush requirements (*e.g.* attendance at a specified number of events) which

applicants must meet in order to request a bid (*i.e.* apply) to the fraternity."

Plaintiffs also allege that even if a Local Chapter's members approve a particular

applicant, the National Fraternities retain the ability to veto the applicant's induction.  *Id.* at ¶

150.  As noted by the CHRO in dismissing Plaintiff Singer's administrative complaint, that the

Local Chapters' "membership is relatively contained" and that "[m]ost functions are limited to

members and their guests, not the public at large" are "indicia of selectivity."  Such indicia

weigh against a determination that the Local Chapters and National Organizations are places of

---

[9] There are nine defendant fraternities and at least two sororities on campus.  Accordingly, this Court may reasonably infer that *each* organization comprises less than 1% of the total student population at one of the nation's most elite and selective undergraduate institutions.  *See* FAC ¶¶ 8-9 (indicating the presence of plural sororities on campus), ¶¶ 31-39 (delineating nine individual defendant fraternities).

5677692

public accommodation under *Kiwanis Int'l v. Ridgewood Kiwanis Club*, 806 F.2d 468 (3d Cir. 1986).

Further, Plaintiffs allege that the Local Chapters and National Organizations remain regulated and selective by "requir[ing] their members to adopt a predetermined chapter structure, conform to certain brand and merchandise requirements, attend regular meetings, swear oaths of allegiance, and . . . pay dues." FAC ¶ 153.

It is worth noting that in reviewing Plaintiffs' assertions, the CHRO found that:

> Information in the case file or likely to be produced during an investigation shows that the Respondent's membership is relatively contained, turns over infrequently and mostly consists of the Yale football team or close associates. Most functions are limited to members and their guests, not the public at large. These are indicia of selectivity.

In sum, Plaintiffs claim that only male undergraduate students who meet and complete all Local Chapter recruitment requirements, complete and submit an application, are selected by the brothers of that Local Chapter to receive a bid, and are approved by the National Organizations can become members – or more properly, pledges, who must then complete a trial period in order to become full members. Accordingly, the only plausible reading of the FAC is that the Local Chapters and National Organizations are highly selective. For that reason, and because they are not open to the public and because they maintain private relationships with their members, they cannot constitute places of public accommodation under Connecticut law.

### B.   Construing State Law To Effectively Ban Fraternities Would Raise Grave Concerns Regarding First Amendment Associational Rights

Even if the Connecticut statute could be construed to treat the Local Chapters and National Organizations as "places of public accommodation" (and it cannot), a finding that these organizations are places of public accommodation would contravene the First Amendment

16

associational rights of their members.  This serious constitutional concern provides a critical reason to construe the Connecticut statute as inapplicable here.

"[I]mplicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious and cultural ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984).  That First Amendment right to intimate association – which includes the right to join certain single-gender organizations – "reflects the realization that individuals draw much of their emotional enrichment from close ties with others." *Id.* at 619.  The Local Chapters and National Organizations enjoy this First Amendment right.

To determine whether a governmental rule unconstitutionally infringes on an associational freedom, this Court "must balance . . . : (1) the strength of the associational interests asserted and their importance to the [groups seeking protection]; (2) the degree to which the rule interferes with those interests; (3) the public interests or policies served by the rule imposed; and (4) the tailoring of the rule to effectuate those interest or policies." *Id.*  This test is intended to reflect the full spectrum of associational liberties from "the most intimate to the most attenuated of personal attachments." *Id.* at 145, quoting *Bd. Of Dirs. Of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 546, 107 S. Ct. 1940, 95 L. Ed. 2d 474 (1987) (quotation marks omitted).  The "question is whether upon balancing the pertinent factors, do the state's interest and the means of achieving them, justify the states' intrusion on the particular associational freedom?" *Id.*  Each of these factors weighs in favor of a ruling that construing the Local Chapters and National Organizations as places of public accommodation under Connecticut law would be an unconstitutional infringement on the rights of their members to intimate association.

5677692

1.   **The Strength of the Local Chapters' and National Organizations'**
     **Associational Interests Warrants Protection**

The right to intimate association is not limited to family relationships; rather, the United States Supreme Court instructs that such relationships must be located "on a spectrum from the most intimate to the most attenuated of personal attachments." *Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City University of New York*, 502 F.3d 136, 144 (2d Cir. 2007), citing *Bd. Of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 546 (1987).   The criteria used to measure the strength of an associational interest in intimacy include "size, purpose, selectivity, and whether others are excluded from critical aspects of the relationship." *Id.*   As discussed above, each of these criteria weighs in favor of a finding that the Local Chapters' and National Organizations' associational interests warrant protection under the First Amendment.

2.   **The Public Accommodation Statute Significantly Interferes With the**
     **Associational Interests at Issue**

The State's interference with the Local Chapters' and National Organizations' rights to intimate association would wholly undermine their ability to select their own members. The men who have joined these organizations have selected to associate with each other in furtherance of the mission and purpose of each Local Chapter and National Organization.   A ruling that these entities constitute places of public accommodation that must admit non-male members would directly interfere with the very associational interests at issue here.

3.   **The Public Interest Is Not Served by the Interpretation of the Statute**
     **Urged by Plaintiffs**

Although "[t]here is undoubtedly a compelling interest in eradicating discrimination based on gender[,]" Plaintiffs cannot demonstrate that Conn. Gen. Stat. § 46a-64 was intended to accomplish this purpose in the context of fraternities. *Chi Iota*, 502 F. 3d at *148 (citation omitted).   Instead, the Connecticut statute expressly carves out some forms of

association by gender – for example, as they pertain to "rental of sleeping accommodations provided by associations and organizations which rent all such sleeping accommodations on a temporary or permanent basis for the exclusive use of persons of the same sex or [] separate bathrooms or locker rooms based on sex." Conn. Gen. Stat. § 46a-64(b).  In other words, the plain text of the statute demonstrates that it is not designed to unequivocally eradicate gender-specific spaces, and that the public interest would not be served by doing so.

      **4.**      <u>The Statute Is Not Tailored or Intended to Eliminate Gender-Specific Organizations</u>

As the CHRO found, in enacting the public accommodation statute, the State did not intend to target gender discrimination in private organizations.  Rather, both the plain text of the statute and the test by which an organization is deemed either private or public contravene that conclusion.  The Local Chapters and National Organizations respectfully contend if they are entitled to *any* degree of associational protection whatsoever, such protection should militate against public accommodation status, particularly as the statute is not tailored to accomplish Plaintiffs' goals as to private organizations – and, indeed, contains exceptions for the same.

**V.**      <u>THE CLAIMS AGAINST DEFENDANT SIGMA ALPHA EPSILON FRATERNITY ARE MOOT</u>

Plaintiffs' purported claims against Defendant Sigma Alpha Epsilon Fraternity ("SAE National") are moot on the grounds that there is no SAE local chapter at Yale.  SAE National was affiliated with a local chapter, Connecticut Omega Chapter of SAE ("CTOM"), which was chartered until August 9, 2018.[10]  SAE National disaffiliated with the local society at Yale, known as LEO.[11]  Following the suspension of CTOM's charter, there is no longer an SAE local chapter at Yale, and Plaintiffs' purported claims are moot.

---

[10] Ex. B at ¶ 35.

Under Article III of the Constitution, a federal court cannot adjudicate an issue unless it is presented with an actual 'case or controversy.'" *N.J. Carpenters Health Fund v. Novastar Mortg., Inc.*, 753 Fed. App'x 16, 19 (2d Cir. 2018), citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395-96 (1980). "A dispute is moot if the possibility of relief is so remote and speculative that any decision on the merits would amount to a declaration of principles or rules of law which cannot affect the matter in issue in the case." *United States v. N.Y.C. Dist. Council*, 709 F. App'x 60, 62 (2d Cir. 2017) (internal quotation marks omitted) (citation omitted). Here, there is no actual case or controversy, nor any injunctive relief the Court could grant as against SAE National, that would "integrate" a local chapter SAE by gender. FAC at p. 106. As such, Plaintiffs' claims against SAE National are moot.

## CONCLUSION

For the foregoing reasons, the Fraternity Defendants respectfully request that the Court dismiss with prejudice all claims against the fraternity defendants, specifically Counts III-VII.

Dated: New York, New York
      May 31, 2019

Respectfully submitted,

KAUFMAN BORGEEST & RYAN LLP

/s/ Joan M. Gilbride
Joan M. Gilbride (Ct.13836)
Laura B. Juffa *(Pro Hac Vice)*
Stephanie Fox *(Pro Hac Vice)*
*Attorneys for Defendants Alpha Delta Phi International Inc., Alpha Epsilon Pi Fraternity, Inc., Conn. Omega of Sigma Alpha Epsilon, Alpha Kappa Delta of Chi Psi, Alpha Epsilon Pi, Epsilon Upsilon, Chi Psi Fraternity, Delta Kappa Epsilon Fraternity, Edward Donahue, III, Leo, High Street Housing Corporation, Delta Kappa Epsilon, Phi*

[11] *Id.*

5677692

*Chapter, House Corporation of Sigma Chi at Yale, Sigma Phi Epsilon, Connecticut Delta Chapter, Sigma Alpha Epsilon Fraternity, Sigma Chi International Fraternity, Sig Ep Housing of Connecticut Delta LLC, Mother Phi Foundation, Inc., Sigma Chi, Theta Upsilon Chapter, Sigma Nu Fraternity Beta Alpha Chapter, Sigma Nu Fraternity, Inc., Sigma Phi Epsilon Fraternity, Yale Chapter of Alpha Delta Phi International, Inc., Zeta Psi Fraternity, Inc., ZP Nutmeg Association, Zeta Psi, ETA Chapter.*
120 Broadway, 14th Floor
New York, New York 10271
Telephone: 212.980.9600
Facsimile: 212.980.9291
Email: jgilbride@kbrlaw.com
Email: ljuffa@kbrlaw.com
Email: sfox@kbrlaw.com


Stanton Jones *(Pro Hac Vice)*
Emily Newhouse Dillingham *(Pro Hac Vice)*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001
Telephone: 202-942-5563
Email: stanton.jones@arnoldporter.com
Email: emily.dillingham@arnoldporter.com


TO:     (via ECF)
        All counsel of record

5677692

## **CERTIFICATE OF SERVICE**

I certify that on this day 31st of May, 2019, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all counsel who are registered users.

/s/ Joan Gilbride
Joan M. Gilbride

5677692