# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ANNA MCNEIL, ELIANA SINGER, RY WALKER**, on behalf of themselves and all others similarly situated, and **ENGENDER** on behalf of itself and its members | ) ) ) ) ) | No. 3:19-cv-00209-VAB |
| **Plaintiffs,** | ) ) ) | |
| **v.** | ) | |
| **Yale University; Yale Chapter of Alpha Delta Phi International, Inc.; Alpha Epsilon Pi, Epsilon Upsilon; Alpha Kappa Delta of Chi Psi; Delta Kappa Epsilon, Phi Chapter; Leo; Sigma Chi, Theta Upsilon Chapter; Sigma Nu Fraternity Beta Alpha Chapter; Sigma Phi Epsilon, Connecticut Delta Chapter; Zeta Psi, ETA Chapter; Alpha Delta Phi International Inc.; Alpha Epsilon Pi Fraternity, Inc.; Chi Psi Fraternity; Delta Kappa Epsilon Fraternity; Sigma Alpha Epsilon Fraternity; Sigma Chi International Fraternity; Sigma Nu Fraternity, Inc.; Sigma Phi Epsilon Fraternity; Zeta Psi Fraternity, Inc.; Sig Ep Housing of Connecticut Delta LLC; Edward J. Donahue III; 402 Crown LLC; 340 Elm, LLC; Mother Phi Foundation, Inc.; Connecticut Omega of Sigma Alpha Epsilon House Corporation; House Corporation of Sigma Chi at Yale, Inc.; High Street Housing Corporation; ZP Nutmeg Associates Inc.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | **July 3, 2019** |

## PLAINTIFFS' OPPOSITION TO DEFENDANT 340 ELM, LLC'S MOTION TO DISMISS

## <u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ..................................................................................................... ii

I.      INTRODUCTION .................................................................................................... 1

II.     SUMMARY OF RELEVANT FACTUAL ALLEGATIONS ..................................... 2

III.    LEGAL STANDARD ............................................................................................... 4

IV.     ARGUMENT ........................................................................................................... 5

    A. 340 Elm's Extrinsic Factual Assertions Should Be Disregarded ................................... 5

    B. Plaintiffs Adequately Plead Claims Against 340 Elm Under the Fair Housing Act and the Connecticut Discriminatory Housing Practices Act (Counts III and IV) ............... 6
       i.   Disparate Treatment—Direct Evidence: Facial Classification .............................. 8
       ii.  Disparate Treatment—Circumstantial Evidence: *McDonnell Douglas* ................... 9
       iii. Disparate Impact ................................................................................................ 15

    C. Plaintiffs Adequately Plead a Civil Conspiracy Claim (Count V) ............................ 17

    D. Plaintiffs Adequately Plead Claims Against 340 Elm for Discrimination in Places of Public Accommodation (Counts VI and VII) ........................................................... 18

V.      CONCLUSION ...................................................................................................... 23

## TABLE OF AUTHORITIES

CASES:

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 4

*AvalonBay Cmtys., Inc. v. Town of Orange*,
    775 A.2d 284 (Conn. 2001) ............................................................................. 6, 11

*Barbano v. Madison Cty.*,
    922 F.2d 139 (2d Cir. 1990) .................................................................................. 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 4, 16

*Boykin v. KeyCorp*,
    521 F.3d 202 (2d Cir. 2008) ............................................................................. 9, 12

*BPP Ill., LLC v. Royal Bank of Scot. Grp. PLC*,
    603 F. App'x 57 (2d Cir. 2015) ........................................................................... 19

*Cabrera v. Jakabovitz*,
    24 F.3d 372 (2d Cir. 1994) .................................................................................. 12

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ..................................................................... 4, 5, 6, 11

*Collins v. Conn. Job Corps*,
    684 F. Supp.2d 232 (D. Conn. 2010) ..................................................................... 7

*Collins v. Univ. of Bridgeport*,
    781 F. Supp. 2d 59 (D. Conn. 2011) ..................................................................... 20

*Conn. Fair Hous. Ctr. v. Corelogic Rental Prop. Sols., LLC*,
    369 F. Supp. 3d 362 (D. Conn. 2019) .................................................................. 13

*Corcoran v. German Soc. Soc'y Frohsinn, Inc.*,
    916 A.2d 70 (Conn. App. Ct. 2007) ..................................................................... 19

*Corcoran v. German Soc. Soc'y Frohsinn, Inc.*,
    No. CV020562775S, 2008 WL 642659 (Conn. Super. Ct. Feb. 21, 2008) ............. 21

*Doe v. Columbia Univ.*,
  831 F.3d 46 (2d Cir. 2016) .................................................................................. 4, 22, 23

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ....................................................................................................... 4

*Fahnbulleh v. GFZ Realty, LLC*,
  795 F. Supp. 2d 360 (D. Md. 2011) ........................................................................ 13

*Fair Hous. in Huntington Comm., Inc. v. Town of Huntington, N.Y.*,
  316 F.3d 357 (2d Cir. 2003) ....................................................................................... 7

*Foman v. Davis*,
  371 U.S. 178 (1962) ................................................................................................. 15

*Francis v. Kings Park Manor, Inc.*,
  917 F.3d 109 (2d Cir. 2019) ..................................................................................... 13

*Fulk v. Lee*, No. CV 9763572S,
  1999 WL 596378 (Conn. Super. Ct. July 29, 1999) ................................................. 7

*Gashi v. Grubb & Ellis Prop. Mgmt. Servs., Inc.*,
  801 F. Supp. 2d 12 (D. Conn. 2011) ....................................................................... 15

*Goel v. Bunge, Ltd.*,
  820 F.3d 554 (2d Cir. 2016) ....................................................................................... 4

*Harp v. King*,
  835 A.2d 953 (Conn. 2003) ................................................................................ 17, 18

*Hayden v. Cty. of Nassau*,
  180 F.3d 42 (2d Cir. 1999) ......................................................................................... 8

*Int'l Union, UAW v. Johnson Controls, Inc.*,
  499 U.S. 187 (1991) ................................................................................................... 8

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*,
  534 U.S. 124 (2001) ................................................................................................. 23

*Jalal v. Columbia Univ. in City of N.Y.*,
  4 F. Supp. 2d 224 (S.D.N.Y. 1998) ........................................................................... 9

*L.C. v. LeFrak Org., Inc.*,
  987 F. Supp. 2d 391 (S.D.N.Y. 2013) ..................................................................... 16

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015) ................................................................................................ 4

*Martinez v. Cal. Inv'rs XII*,
   No. CV 05-7608-JTL, 2007 WL 8435675 (C.D. Cal. Dec. 12, 2007) ...................................... 13

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ............................................................................................................ 7

*McMillan v. City of N.Y.*,
   711 F.3d 120 (2d Cir. 2013) ................................................................................................ 8

*Mhany Mgmt., Inc. v. Cty. of Nassau*,
   819 F.3d 581 (2d. Cir. 2016) ............................................................................................. 15

*Mitchell v. Shane*,
   350 F.3d 39 (2d Cir. 2003) .................................................................................................. 9

*Neudecker v. Boisclair Corp.*,
   351 F.3d 361 (8th Cir. 2003) ............................................................................................. 13

*Palmer v. Fannie Mae*,
   755 F. App'x 43 (2d Cir. 2018) ....................................................................................... 9, 10

*Patterson v. Cty. of Oneida*,
   375 F.3d 206 (2d Cir. 2004) ................................................................................................ 8

*Quinnipiac Council, Boy Scouts of Am., Inc. v. Comm'n on Human Rights & Opportunities*,
   528 A.2d 352 (Conn. 1987) ............................................................................................ 19, 20

*Ragin v. New York Times*,
   923 F.2d 995 (2d Cir. 1991) .............................................................................................. 15

*Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*,
   294 F.3d 35 (2d Cir. 2002) .............................................................................................. 7, 10

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) ............................................................................................................ 9

*Thurmond v. Bowman*,
   211 F. Supp. 3d 554 (W.D.N.Y. 2016) ............................................................................... 12

*Tice v. Southington Bd. of Educ.*,
   2 Fed. Appx. 152 (2d Cir. 2001) ........................................................................................ 15

*U.S. v. Space Hunters, Inc.*,
   429 F.3d 416 (2d Cir. 2005) ............................................................................................. 12

*Viens v. Am. Empire Surplus Lines Ins. Co.*,
   113 F. Supp. 3d 555 (D. Conn. 2015) ................................................................................. 6

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*,
   515 U.S. 528 (1995) ......................................................................................................... 23

*Wanamaker v. Town of Westport Bd. of Educ.*,
   No. 3:11-cv-1791, 2015 WL 2229716 (D. Conn. Mar. 16, 2015) ....................................... 7

*Wetzel v. Glen St. Andrew Living Cmty., LLC*,
   901 F.3d 856 (7th Cir. 2018) ............................................................. 1, 12, 14, 22

*Williams v. Poretsky Mgmt., Inc.*,
   955 F. Supp. 490 (D. Md. 1996) ....................................................................................... 13


**STATUTES:**

42 U.S.C. § 2000e *et seq* ..................................................................................................... 9

42 U.S.C. § 3604 ........................................................................................................... 1, 6, 15

Conn. Gen. Stat. § 46a-63 ..................................................................................................... 22

Conn. Gen. Stat. § 46a-64 ........................................................................................... 1, 18, 22

Conn. Gen. Stat. § 46a-64b .................................................................................................... 22

Conn. Gen. Stat. § 46a-64c .......................................................................................... 1, 6, 22

Conn. Gen. Stat. Ann. § 46a-63 ............................................................................................. 19

Conn. Gen. Stat. Ann. § 46a-64(b) ........................................................................................ 19


**RULES:**

24 C.F.R. § 100.7(a)(1)(iii) ................................................................................................... 13

Fed. R. Civ. P. 15(a)(1)(B) .................................................................................................... 15

Fed. R. Civ. P. 8(a)(2) ............................................................................................................. 4

Fed. R. Civ. P. 8(c)(1) .................................................................................... 19

Fed. R. Civ. P. 8(d)(3) .............................................................................. 22, 23

Fed. R. Civ. P. 12 ........................................................................... 5, 6, 11, 13

## I.     INTRODUCTION

Defendant 340 Elm, LLC ("Defendant" or "340 Elm") is a New Haven landlord that knowingly rents its property at 340-342 Elm Street (the "Property") to an organization that openly discriminates based on gender. Defendant leases the Property exclusively to members of Chi Psi Fraternity ("Chi Psi") for use as the Chi Psi Fraternity house. Chi Psi, in turn, promulgates a facially-discriminatory policy of renting housing units at the Property to men but not women.

On three separate occasions, Plaintiffs McNeil, Singer, and Walker, and other members of Plaintiff Engender applied to become members of Chi Psi. On three separate occasions, the Fraternity rejected them, and therefore prevented them from accessing the attendant social and economic benefits of fraternity membership, including housing at 340 Elm. By renting to an organization that explicitly discriminates against women, 340 Elm, in turn, makes its Property unavailable to Plaintiffs because of their gender and thereby violates the federal Fair Housing Act ("FHA") and the Connecticut Discriminatory Housing Practices Act ("CDHPA"). 42 U.S.C. § 3604; Conn. Gen. Stat. § 46a-64c. Courts hold landlords directly liable for the discriminatory actions of their tenants. *See Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856 (7th Cir. 2018), *cert. dismissed sub nom. Glen St. Andrew Living Com. v. Wetzel*, 139 S. Ct. 1249 (2019). Defendant 340 Elm also agreed with its associated fraternity, Chi Psi, to engage in these discriminatory acts and is thus liable for civil conspiracy. Further, renting to Chi Psi renders 340 Elm a place of public accommodation; accordingly, 340 Elm has illegally discriminated against Plaintiffs in violation of Conn. Gen. Stat. § 46a-64.

Plaintiffs meet the required pleading standards on each of these causes of action. Because Plaintiffs' fair housing, civil conspiracy, and public accommodations claims all require fact-intensive inquiries, and 340 Elm attempts to impermissibly introduce extrinsic evidence to resolve

these questions, dismissal of the case at this stage of the litigation is inappropriate. For the reasons that follow, the Court should deny Defendant's Motion to Dismiss.

## II.    SUMMARY OF RELEVANT FACTUAL ALLEGATIONS

As detailed in the Amended Complaint, Plaintiffs Anna McNeil, Eliana Singer, and Ry Walker are undergraduate students at Defendant Yale University ("Yale" or the "University"). Dkt. No. 63, Amended Complaint ("AC") ¶ 1. They are co-directors of Plaintiff Engender—an undergraduate organization dedicated to promoting equity and inclusion within the Yale community, including the fraternity system. *Id.* ¶¶ 1, 125–26. Yale's all-male fraternities are the de facto social environment for many students at Yale, and female students are regularly subjected to harassment and assault at these organizations' events. *Id.* ¶¶ 2, 4. Plaintiffs McNeil, Singer, and Walker were all groped at fraternity parties during their first semester at Yale. *Id.* ¶ 3. The fraternities also offer their members economic and social opportunities that Yale's female and non-binary students cannot access. *Id.* ¶ 7.

Plaintiffs and their peers in Engender allege that Yale's fraternities disproportionately contribute to the high levels of gender inequality, sexual harassment, and sexual assault on and around Yale's campus. *Id.* ¶ 126. To combat sexual harassment and to take advantage of the social and economic opportunities fraternities offer to Yale men, beginning in 2017, Engender attempted to integrate Yale's fraternities by gender, including the fraternity Alpha Kappa Delta of Chi Psi. *Id.* ¶¶ 10–11, 128, 135–36, 141.

Alpha Kappa Delta ("Kappa Delta") is a local chapter of Chi Psi Fraternity.[1] *Id.* ¶ 33. In January and February 2017, Engender organized a group of female students (including Plaintiffs

---

[1] For purposes of this brief, "Chi Psi" refers collectively to Kappa Delta and Chi Psi Fraternity.

McNeil and Walker) to request access to Defendant Fraternities'[2] rush processes. The president of Kappa Delta "denied the requests for a gender-integrated rush process, specifically citing instructions from their national organizations that the national bylaws mandated gender discrimination." *Id.* ¶ 128. On January 16, 2018, Plaintiff McNeil emailed the Yale chapter presidents of Defendant Fraternities on behalf of Engender's members, requesting that the Fraternities open their rush process to non-male students. Kappa Delta again indicated that female students were not permitted to rush because "Chi Psi's national constitution specifically defines the fraternity as an all-male organization." *Id.* ¶¶ 135–36. Finally, on December 12, 2018, Plaintiff Singer emailed the president of each of the local chapters on behalf of Engender, requesting access to their upcoming rush processes. Chi Psi did not respond, effectively excluding Plaintiffs from its rush process. *Id.* ¶ 141. There was no other way to seek admission to the fraternity.

Because they were denied membership in Chi Psi, and fraternities only allow fraternity members—men—to live in fraternity houses, Plaintiffs were unable to live in the Chi Psi fraternity house. *Id.* ¶¶ 163, 261. Defendant 340 Elm is the owner and landlord of the Chi Psi house, manages the house for Kappa Delta's, Chi Psi Fraternity's, and its own mutual benefit, and knowingly rents its house for use as a male-only fraternity house. *Id.* ¶¶ 54, 161.

Plaintiffs allege that by renting exclusively to a fraternity that has repeatedly denied Plaintiffs membership and subjected Plaintiffs to sexual harassment and/or assault at fraternity parties, 340 Elm is liable for discriminating against Plaintiffs under Counts III, IV, V, VI and VII of the Amended Complaint.

---

[2] As defined in the Amended Complaint, the Defendant Fraternities include the local chapters, national organizations, and housing corporations of the fraternities known as: Alpha Epsilon Pi, Alpha Delta Phi, Chi Psi, Delta Kappa Epsilon, Sigma Alpha Epsilon/Leo, Sigma Chi, Sigma Nu, Sigma Phi Epsilon, and Zeta Psi. AC ¶ 2. n.1.

### III.     LEGAL STANDARD

The "liberal pleading standard[]" of Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citations omitted).

A court should deny a motion to dismiss if a complaint states "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). As the Supreme Court stated in *Twombly*, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." 550 U.S. at 556 (citation omitted).

On a 12(b)(6) motion, a "court . . . is not engaged in an effort to determine the true facts," *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016); that comes later—"[t]he test of a claim's 'substantive merits' is 'reserved for . . . summary judgment.'" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558–59 (2d Cir. 2016) (citation omitted). Thus, the Court must take a complaint "as a whole," "accepting all factual allegations . . . as true and drawing all reasonable inferences in Plaintiffs' favor." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 169, 171 (2d Cir. 2015).

## IV.     ARGUMENT

### A.     340 Elm's Extrinsic Factual Assertions Should Be Disregarded

When considering a Rule 12(b)(6) motion, the Court should ignore purported facts outside the complaint and accept all factual allegations in the plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002).

Despite this well-established rule, Defendant's Motion relies on a significant number of factual assertions and conclusions that are not included in the Amended Complaint. Attached to Defendant's Motion is the affidavit of Jesse Horsford and 117 pages of unauthenticated exhibits, consisting of ostensible former and current lease agreements for the Property and an email from a prospective tenant. *See* Dkt. No. 72-2, Aff. in Supp. of 340 Elm, LLC's Mot. to Dismiss ("Horsford Aff.") Exs. A–C. Nearly all of Defendant's arguments in support of its motion to dismiss rely on facts not contained in the Amended Complaint and are derived instead from the affidavit and exhibits appended to the Motion. *See* Dkt. No. 72-1, Mem. of Law in Supp. of 340 Elm, LLC's Mot. to Dismiss ("Def.'s Mot.").

For example, in support of its arguments that Plaintiffs have failed to state a claim against Defendant under Counts III through VII, Defendant improperly relies on the alleged extrinsic facts—drawn from its proffered affidavit and appended exhibits—that the Property is a remodeled duplex that houses nine Chi Psi members from Yale;[3] that several other prospective tenants approached Defendant to rent the property, including members of the Yale women's volleyball team; that none of the named Plaintiffs or members of Engender directly approached Defendant about leasing the Property; and that the Property was leased to current tenants because of their

---

[3] Defendant incorrectly asserts in its Motion that Plaintiffs allege that "Kappa Delta is comprised of 51 fraternity members" and that Defendant is "leasing to nine such members." Def.'s Mot. at 1. But the Complaint alleges that Kappa Delta has "at least 51 male members," and makes no mention of how many fraternity members were tenants of 340 Elm. AC ¶ 33.

ability to pay the amount of rent requested by Defendant. *Id.* at 4–5; Horsford Aff. ¶¶ 5, 7, 12, 15–18. Including these extrinsic facts is both improper and premature. *Chambers*, 282 F.3d at 154 ("Consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2)."). As will be discussed in greater detail below, without these extrinsic facts, Defendant cannot meet its burden under Rule 12(b)(6), and the motion to dismiss should be denied.

As Defendant acknowledges, if the Court were to rely on its external sources, this motion to dismiss would have to be converted to a motion for summary judgment. *See* Def.'s Mot. at 6. But before the Court rules on a converted motion, it must afford both parties "an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56." *Chambers*, 282 F.3d at 154. Thus, even if the Court converts Defendant's Motion, Plaintiffs' claims are not subject to dismissal at this juncture.

## B.     Plaintiffs Adequately Plead Claims Against 340 Elm Under the Fair Housing Act and the Connecticut Discriminatory Housing Practices Act (Counts III and IV)

The FHA makes it unlawful "[t]o refuse to sell or rent . . . or otherwise make unavailable or deny, a dwelling to any person because of . . . sex" or "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . sex." 42 U.S.C. § 3604 (a)–(b). The Connecticut Discriminatory Housing Practices Act ("CDHPA") contains the same prohibitions. Conn. Gen. Stat. § 46a-64c. Housing discrimination claims under the Connecticut statute are "generally interpreted . . . in tandem with federal law." *Viens v. Am. Empire Surplus Lines Ins. Co.*, 113 F. Supp. 3d 555, 561 n.3 (D. Conn. 2015); *see also AvalonBay Cmtys., Inc. v. Town of Orange*, 775 A.2d 284, 307 (Conn. 2001) ("[I]n addressing claims brought under both federal and

state housing laws, we are guided by the cases interpreting federal fair housing laws . . . despite differences between the state and federal statutes." (citations omitted)).[4]

Housing discrimination claims—under both the FHA and the CDHPA—can be brought "either on a theory of disparate impact or one of disparate treatment." *Fair Hous. in Huntington Comm., Inc. v. Town of Huntington, N.Y.*, 316 F.3d 357, 366 (2d Cir. 2003) (citation omitted). *See also Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002) ("Plaintiffs who allege violations under . . . the FHA . . . may proceed under [the] theories [ ] disparate treatment [and] disparate impact"), *superseded by statute on other grounds*.

Plaintiffs plainly state claims under both theories. Defendant tries to divert the Court by invoking the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applicable to cases that rely on **circumstantial evidence** of discriminatory intent. *See, e.g.*, *Wanamaker v. Town of Westport Bd. of Educ.*, No. 3:11-cv-1791, 2015 WL 2229716, at *1 (D. Conn. Mar. 16, 2015); *Collins v. Conn. Job Corps*, 684 F. Supp. 2d 232, 250 (D. Conn. 2010). But here, circumstantial evidence of discriminatory intent is unnecessary. Chi Psi and its fellow fraternities openly admit that they use facially-discriminatory policies and practices to exclude all women as a class. There could be no stronger *direct* evidence of discrimination. 340 Elm, as owner and landlord, adopts and promulgates these policies by knowingly and deliberately furnishing the Property to a discriminatory organization (Chi Psi) that refuses to rent to women. Where the parties agree that women would not be admitted as residents (or at least would be disfavored) because of

---

[4] As Defendant notes, as of the filing of the Amended Complaint, Plaintiffs had not yet received releases of jurisdiction for their CDHPA claims against 340 Elm. Plaintiffs received these releases of jurisdiction on July 1, 2019. Because state housing law claims need not be exhausted at the CHRO, *see Fulk v. Lee*, No. CV 9763572S, 1999 WL 596378, at *3-4 (Conn. Super. Ct. July 29, 1999), the Court may decide the CDHPA claims. To avoid any doubts, Plaintiffs can seek leave to amend to clarify that they bring CDHPA claims against 340 Elm.

their gender, there is no need to apply the *McDonnell Douglas* approach. *See McMillan v. City of N.Y.*, 711 F.3d 120, 129 (2d Cir. 2013). Nevertheless, even assuming a burden shifting paradigm applies here, Plaintiffs would satisfy the pleading requirements for a *McDonnell Douglas* claim.

### i. Disparate Treatment—Direct Evidence: Facial Classification

Intentional discrimination may be demonstrated by a facially-discriminatory policy—i.e., a policy that "expressly classifies persons on the basis of race or gender." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999) (equal protection case), *overruled on other grounds by Gonzaga v. Doe*, 536 U.S. 273 (2002); *Int'l Union, UAW v. Johnson Controls, Inc.*, 499 U.S. 187 (1991) (Title VII: employer policy barring fertile women from certain jobs involving exposure to lead). In a facial classification case, it does not matter whether the defendant has a "malevolent" or benign motive: "[w]hether a [] practice involves disparate treatment through explicit facial discrimination does not depend on why the [defendant] discriminates but rather on the explicit terms of the discrimination." *Johnson Controls*, 499 U.S. at 199.

Here, Plaintiffs allege, fraternities like Chi Psi adopt precisely such a facial classification— welcoming men for membership and housing but refusing their female counterparts: it is part of their organizational DNA. The landlord, 340 Elm, has an independent duty not to engage in or facilitate housing discrimination; its intent may be inferred through its acquiescence in Chi Psi's open, notorious, and longstanding policy. *See, e.g.*, *Barbano v. Madison Cty.*, 922 F.2d 139, 141, 143 (2d Cir. 1990) ("knowing and informed toleration of discriminatory statements," amounting to "acquiescence"); *Patterson v. Cty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (in context of municipal liability under § 1981/1983, a policy or custom of intentional discrimination is established when a "discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials" (citation omitted)), *superseded in*

part on other grounds by statute;[5] cf. Hill v. City of N.Y., 136 F. Supp. 3d 304, 340 (E.D.N.Y. 2015) ("[T]he acquiescence theory permits an inference of discriminatory intent based on the union's disregard of an employer's discrimination").

### ii. Disparate Treatment—Circumstantial Evidence: *McDonnell Douglas*

FHA disparate treatment claims based on circumstantial evidence "are analyzed using the *McDonnell Douglas* burden-shifting framework" established for employment discrimination cases under Title VII, 42 U.S.C. § 2000e *et seq. Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008). In such cases, "[p]laintiffs may establish a prima facie case of housing discrimination by showing (1) that they are members of a protected class; (2) that they sought and were qualified to rent or purchase the housing; (3) that they were rejected; and (4) that the housing opportunity remained available to other renters or purchasers." *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003).

Importantly, "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas* at least as the test was originally formulated, to defeat a motion to dismiss." *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). That is because the prima facie standard "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).

Thus, at the pleading stage of a housing discrimination case, "a plaintiff can survive a motion to dismiss if the plaintiff can allege facts that support a plausible claim that the plaintiff was 'a member of a protected class,' suffered relevant 'adverse' treatment, and 'can sustain a

---

[5] *See generally Jalal v. Columbia Univ. in City of N.Y.*, 4 F. Supp. 2d 224, 240 (S.D.N.Y. 1998) ("[A]cquiescence with a decision that is known to have been the product of discrimination can itself show a discriminatory intent.") (collecting cases).

*minimal* burden of showing facts suggesting an inference of discriminatory motivation.'" *Palmer*, 755 F. App'x at 45 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).[6]

Here, Plaintiffs surpass their "minimal burden" to state a claim of disparate treatment under the FHA and the CDHPA. *Id.* Indeed, even though they are not required to, Plaintiffs plead all the elements of the traditional prima facie case. Plaintiffs are members of a protected class under the FHA and CDHPA and therefore meet the first element, a fact that Defendant does not dispute. Def.'s Mot. at 11; AC ¶¶ 25–28. Defendant also does not dispute that Plaintiffs sufficiently plead the fourth element of the prima facie inquiry, that the housing opportunity remained available for renters other than Plaintiffs. Indeed, Defendant has continued renting its property to Chi Psi for use as a fraternity house for male residents. *Id.* ¶¶ 54, 161.

Instead, 340 Elm argues that Plaintiffs do not meet the second and third elements of the prima facie test because none of the Plaintiffs "ever sought out rental of the 340 Elm Property in question, and 340 Elm never refused to rent to the plaintiffs . . . none of the named plaintiffs, or any parties identified as members of Engender ever communicated with 340 Elm or the Farnam Group [340 Elm's purported agent] regarding rental of the 340 Elm Property." Def.'s Mot. at 11 (citing extrinsic evidence, Horsford Aff.).

---

[6] *See also Doe v. Columbia Univ.*, 831 F.3d 46, 55, n.8 (2d Cir. 2016) ("[A]t the 12(b)(6) stage of a Title VII suit, allegation of facts supporting a minimal plausible inference of discriminatory intent suffices as to this element of the claim because this entitles the plaintiff to the temporary presumption of *McDonnell Douglas* until the defendant furnishes its asserted reasons for its action against the plaintiff. . . . For this reason, we have often vacated 12(b)(6) . . . dismissals of complaints alleging discrimination. . . . We have also cautioned district courts against imposing too high a burden on plaintiffs alleging discrimination at the 12(b)(6) stage." (citations omitted)); *Reg'l Econ. Cmty. Action Program, Inc.*, 294 F.3d at 49 ("[Plaintiffs'] initial burden of production under the *McDonnell Douglas* analysis is 'minimal'") (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)); *Littlejohn*, 795 F.3d at 311 n.9 ("[T]he elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim."(citation omitted)).

This argument is meritless. As an initial matter, it entirely rests on extrinsic evidence that must be disregarded in evaluating a motion under Rule 12(b)(6). *Chambers*, 282 F.3d at 154. Moreover, Plaintiffs in fact allege that they sought—and were denied—housing at 340 Elm. Defendant knowingly rented the Property to Chi Psi for use as a male-only fraternity house. Plaintiffs attempted to apply to Chi Psi and were rejected three times over the course of two years; Chi Psi provided explicitly discriminatory reasons for the rejection. AC ¶¶ 128, 135–36, 141. Because the Property is exclusively rented to male members of Chi Psi and serves as their fraternity house—a fact fully known to Defendant, *see* AC ¶ 161[7]—Plaintiffs were effectively precluded from applying to reside and residing at the Property. *Id.* ¶¶ 163–64. By knowingly renting to an organization that discriminates based on gender, Defendant made the Property unavailable to women. *See AvalonBay Cmtys., Inc.*, 775 A.2d at 307 ("The phrase 'otherwise make unavailable' has been interpreted to reach a wide variety of discriminatory housing practices.").

---

[7] Were the Court to convert Defendant's Motion to a motion for summary judgment and consider extrinsic evidence, it should be noted that Defendant does not deny knowing that the Property serves as a fraternity house. Defendant admits that under the 2018 to 2019 lease term, the Property was leased to tenants who "reported that they were members of the fraternity, Kappa Delta" and that under the 2018 to 2019 lease term, the Property was leased to tenants who "reported themselves to be members of Chi Psi fraternity as well." Def.'s Mot. at 4–5; *see also* Horsford Aff. ¶¶ 15, 21. While Defendant alleges that it "did not rent the Property to Kappa Delta or Chi Psi for use as a 'fraternity house'" and that it "did not agree that the Property would be used as a 'fraternity house'", Horsford Aff. at ¶¶ 24, 28, this careful phrasing certainly leaves open that Defendant knew that its tenants would use the Property as a fraternity house. Indeed, in the two leases executed for the 2018 to 2019 lease term for 340 and 342 Elm Street, the following provisions are *crossed out*:

- "I (we) agree that the basement areas are only to be used for the purposes of laundry and storage…using the basements for any other use will be considered a willful violation (by you) of the lease terms."
- "You agree not to smoke any tobacco products within the common areas…[n]ot to use, or allow visitors to use, illegal drugs or in the apartment, the building or anywhere on the property nor drink alcohol in common areas or on property grounds. The use or sale of illegal drugs on the premises will subject the tenant to immediate eviction." Horsford Aff. at Ex. A.

These deletions from the leases indicate knowledge on the part of Defendant that the Chi Psi tenants would host parties at the Property and use the basement as a fraternity house.

Moreover, even if Plaintiffs could have communicated directly with Defendant about a rental—an extrinsic factual issue that cannot be considered at this stage of the proceeding— Plaintiffs plausibly allege they were deterred from doing so because all tenants had to be male members of Chi Psi. *See, e.g.*, *Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994) (finding a FHA violation where a landlord deterred housing applications from prospective tenants based on their race), *superseded by statute on other grounds*; *U.S. v. Space Hunters, Inc.*, 429 F.3d 416, 429 (2d Cir. 2005) (finding triable issue of whether a housing vendor discriminated against individuals with disabilities by deterring them from submitting applications); *Thurmond v. Bowman*, 211 F. Supp. 3d 554, 556 (W.D.N.Y. 2016) (granting summary judgment against defendant who deterred a prospective tenant from renting his unit based on her gender and familial status). Accordingly, Plaintiffs adequately plead the second and third elements of a prima facie claim of disparate treatment. Taken as a whole, Plaintiffs' allegations meet the liberal standard of Rule 8. *Boykin*, 521 F.3d at 215 (holding that a plaintiff who stated her protected status, set forth the circumstances under which she was treated differently, and alleged that this differential treatment was on the basis of her protected status was sufficient to state a claim; "[plaintiff] did not need to allege discriminatory animus for her disparate treatment claim to be sufficiently pleaded.").

Plaintiffs' Amended Complaint also raises a plausible inference that 340 Elm violated the FHA/CDHPA by acquiescing in or failing to remedy discrimination that it knew or should have known reigned at its property. Courts around the country hold landlords directly liable for the discriminatory actions of their tenants, analogizing to the responsibility employers have under Title VII to correct a discriminatory working environment. *See Wetzel*, 901 F.3d at 863–65 (holding landlord liable because it "had, but failed to deploy, available remedial tools," including evicting or suspending certain privileges of tenants who harassed another tenant on the basis of her sexual

12

orientation, and noting that "[c]ontrol in the absolute sense . . . is not required for liability. Liability attaches because a party has an arsenal of incentives and sanctions . . . that can be applied to affect conduct but fails to use them." (citations omitted));[8] *see also* 24 C.F.R. § 100.7(a)(1)(iii) (in a 2016 rule amendment, HUD confirmed that "[a] person is directly liable for . . . [f]ailing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it").

This Court has recently confirmed that entities "can be liable under [the FHA] where they knew of and had the power to correct and end a discriminatory housing practice." *Conn. Fair Hous. Ctr. v. Corelogic Rental Prop. Sols., LLC*, 369 F. Supp. 3d 362, 374 (D. Conn. 2019).[9] The Court determined that FHA liability can extend to a consumer reporting agency that screens prospective tenants, and noted that without imposing liability in these circumstances, "a housing provider could simply use an intermediary to take discriminatory and prohibited actions on its behalf and defeat the purpose of the FHA." *Id.* at 375.

Here, Plaintiffs allege that Defendant effectively permitted Chi Psi to determine who was able to rent units in the fraternity house. *See, e.g.*, AC ¶¶ 158, 161, 163–64. 340 Elm knew or

---

[8] *See also Fahnbulleh v. GFZ Realty, LLC*, 795 F. Supp. 2d 360, 364 (D. Md. 2011) (denying defendant's motion to dismiss because a landlord could be held liable under the FHA for failing to take corrective action against tenant-on-tenant sexual harassment, and noting that "[t]o hold otherwise would be to introduce an unjustified discrepancy between Title VII and Title VIII theories of harassment and discrimination"); *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364 (8th Cir. 2003) (reversing lower court's dismissal of complaint because a landlord can be held liable for failing to address tenant's discriminatory behavior on the basis of another tenant's disability); *Martinez v. Cal. Inv'rs XII*, No. CV 05-7608-JTL, 2007 WL 8435675, at *1 (C.D. Cal. Dec. 12, 2007) (denying defendant's Rule 12(c) motion because landlord could be held liable for the racially motivated harassment of one tenant towards another tenant); *Williams v. Poretsky Mgmt., Inc.*, 955 F. Supp. 490, 496 (D. Md. 1996) (denying defendant's motion for summary judgment because a landlord could be held liable under the FHA for failing to correct sexual harassment committed by its employee against a tenant).

[9] The Court relies in part on a vacated Second Circuit precedent, but the Second Circuit has not given any indication as to why the case, *Francis v. Kings Park Manor, Inc.*, was vacated. 917 F.3d 109, 114 (2d Cir. 2019), *opinion withdrawn*, 920 F.3d 168, 169 (2d Cir. 2019). The case remains on appeal.

should have known that Chi Psi would exercise that authority in a discriminatory manner. *See, e.g.*, *id.* ¶ 161. Chi Psi, after all, is an exclusively male fraternity. Discovery will allow Plaintiffs to determine what sanctions Defendant had at its disposal and failed to enforce against its tenant. *Wetzel*, 901 F.3d at 863. Clearly, at minimum, it could have declined to renew the lease.

In its final sortie against Plaintiffs' disparate treatment claim, 340 Elm claims that it had a valid, non-discriminatory reason for not renting to them: that Plaintiffs never applied to rent the Property and that Defendant leased the Property to Chi Psi members because they were able to pay the requested rent.[10] Def.'s Mot. at 11. But these arguments must be rejected, in part because they entirely rely on extrinsic evidence, *see* Horsford Aff., and further because they are premature: Defendant's purportedly non-discriminatory reasons for not renting to Plaintiff should not be considered until summary judgment. *Littlejohn*, 795 F.3d at 311 ("The plaintiff cannot reasonably be required to allege more facts in the complaint than the plaintiff would need to defeat a motion for summary judgment made prior to the defendant's furnishing of a non-discriminatory justification."). Moreover, as discussed above, Defendant's assertion that Plaintiffs never applied to live in 340 Elm's Property is inaccurate and contradicted by the allegations of the complaint.

---

[10] By claiming that the Property was leased to Chi Psi members based "purely" on their abilities to pay the asking price for rental of the units, Defendant implies that all other prospective tenants were unable to pay the requested rent amount. Def.'s Mot. at 11. But if the Court were to treat Defendant's Motion as a motion for summary judgment and consider Defendant's exhibits, Plaintiffs would argue that the email from members of the Yale women's volleyball team does not indicate that they were unable to pay the requested rent. *See* Horsford Aff. Ex. B. In the email, a female prospective tenant indicates that she and seven other women would like to rent the house and inquires whether 340 Elm would accept $8500 instead of the requested $9000 per month in rent. *Id.* This cannot possibly be characterized as lack of "abilities to pay the asking price." Def.'s Mot. at 12. It was not necessarily even a rejection of Defendant's rental offer. It was simply a negotiating position or inquiry in the back-and-forth between a landlord and prospective tenants.

Construing the allegations in the manner most favorable to Plaintiffs, the Amended Complaint states a plausible claim of disparate treatment under the FHA.[11]

### iii.  Disparate Impact

FHA disparate impact cases "examine[] whether a facially neutral policy has a differential impact or effect on a particular group." *Gashi v. Grubb & Ellis Prop. Mgmt. Servs., Inc.*, 801 F. Supp. 2d 12, 16 (D. Conn. 2011). A plaintiff can establish a prima facie case by showing "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 617 (2d. Cir. 2016) (citations omitted).

Plaintiffs' allegations are more than sufficient to proceed on a theory, in the alternative, of disparate impact. Again, Defendants rely entirely on the purported fact that Plaintiffs did not directly apply to 340 Elm for a lease. Def.'s Mot. at 12 (citing Horsford Aff.). But as detailed in the preceding section, this argument impermissibly rests on extrinsic evidence and ignores the minimal burden Plaintiffs have at the motion to dismiss stage. Plaintiffs have pled that fraternities

---

[11] In addition to disparate treatment under 42 U.S.C. § 3604 (a)–(b), Defendant's acts, as pled in the Complaint, give rise to liability under § 3604(c) for causing the making of statements indicating a discriminatory policy or preference for renting the house's dwelling units to men but not women. Each time that Chi Psi represented itself as a male-only fraternity or turned women away from joining and seeking housing, it plainly and unambiguously communicated this discriminatory message. Section 3604(c) is an expansive provision that covers a range of conduct, even by parties bearing no direct discriminatory animus. *See, e.g., Ragin v. New York Times*, 923 F.2d 995 (2d Cir. 1991) (finding *New York Times* liable for publishing and failing to screen out housing advertisements that could convey a discriminatory message through racial patterns in the models depicted in the ads).

The Amended Complaint pleads sufficient allegations to put Defendants on notice of a claim under § 3604(c). *See Tice v. Southington Bd. of Educ.*, 2 Fed. Appx. 152, 153 (2d Cir. 2001) ("The principal function of pleadings under the Federal Rules is to give fair notice of the claim asserted … There is no requirement in the Federal Rules that a plaintiff cite statutory sections in the complaint."). To the extent there is any ambiguity, Plaintiffs request leave to amend to more clearly cite this subsection of the statute in Count III. *See generally* Fed. R. Civ. P. 15(a)(1)(B) ("The court should freely give leave when justice so requires."); *Foman v. Davis*, 371 U.S. 178, 182 (1962) (describing the liberal standard for amendment).

at Yale—and by extension, the housing corporations that rent to them—have a policy of discriminating against female students by refusing to admit women to their membership. AC ¶¶ 128, 135–36, 141, 261–63. Because the Property is rented exclusively to Chi Psi members, Defendant effectively made the property unavailable to women. To the extent that renting to an all-male fraternity is not a facially discriminatory practice, Plaintiffs sufficiently allege that this "neutral" policy has a differential impact or effect on female students at Yale. *See Twombly,* 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face"); *L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 402 (S.D.N.Y. 2013) (requiring only that "plaintiffs pleading disparate impact claims must include at least one allegation that raises an inference of such disparity—one sufficient to put the defendants on notice regarding the basis for plaintiffs' belief in a disparate effect.").

Defendant also offers that Plaintiffs did not "attempt to distinguish the independent land owners who happen to rent to alleged fraternity members as individuals" in their Amended Complaint. Def.'s Mot. at 12. But this argument is neither accurate nor relevant to dismissal at the pleading stage. Plaintiffs allege that 340 Elm "is the owner and landlord of the Kappa Delta house, and manages the house for its, Kappa Delta's, and Chi Psi Fraternity's mutual benefit," a fact Defendant does not dispute in its Motion. AC ¶ 54. That allegation sufficiently distinguishes Defendant from other defendants in the case. Defendant's status and conduct is pinpointed.

Lastly, 340 Elm maintains that it decided to lease to Chi Psi based on a purported bona fide business interest: specifically, Chi Psi's members' ability to pay the asking price for rental. Def.'s Mot. at 12. As with the disparate treatment claim, this argument must be rejected because it impermissibly rests on the affidavit of Jesse Horsford and goes beyond what plaintiffs need to offer at the pleading stage. Plaintiffs need not plead around such defenses. *See Littlejohn*, 795 F.3d

at 311.[12] As owner and landlord, 340 Elm cannot establish that this rationale would let it off the hook for renting to a group that expressly discriminates against a protected category of individuals. Nor, at this stage, can it demonstrate that it would have otherwise been unable to obtain its desired rent or the substantial equivalent or that the property would have remained vacant.

### C.      Plaintiffs Adequately Plead a Civil Conspiracy Claim (Count V)

Plaintiffs have also met their burden of pleading that 340 Elm conspired to engage in the unlawful violations of fair housing laws. Under Connecticut law, "[t]he elements of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." *Harp v. King*, 835 A.2d 953, 972 (Conn. 2003) (citation omitted). There is no independent claim of civil conspiracy; "[r]ather, the action is for damages caused *by acts committed pursuant to a formed conspiracy* rather than by the conspiracy itself. Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Id.* at 972 n.37 (citation omitted).

Defendant acknowledges in its Motion that Plaintiffs have adequately pled the first element of civil conspiracy, that 340 Elm and Chi Psi entered into an agreement ("a combination between two or more persons"). Def.'s Mot. at 14. Together, they agreed to use the Property as a fraternity house, and thereby agreed to violate the FHA and CDHPA ("unlawful acts") by making dwellings in the property unavailable to women. AC ¶¶ 161, 280. Pursuant to this unlawful scheme, Plaintiffs allege that Chi Psi repeatedly denied them membership based on their gender, and thus barred them from renting units in the Property ("act[s] done . . . in furtherance" and "damage"). *Id.* ¶¶

---

[12] *See supra* n.6.

17

128, 135–36, 141, 163, 281–82, 291. These allegations are sufficient to support an inference that Defendant and Chi Psi engaged in a civil conspiracy to violate the FHA and CDHPA. *See generally Harp*, 835 A.2d at 972 (reciting elements of civil conspiracy claim).

The only arguments Defendant offers against this claim are based on extrinsic evidence not included in the Amended Complaint, and therefore inadmissible. Even if they were admissible, they have no bearing on Plaintiffs' civil conspiracy claim at this stage. For example, Defendant again makes the factual assertion that Plaintiffs never directly approached Defendant about renting the Property. Def.'s Mot. at 15. But as discussed at length above, Plaintiffs were repeatedly denied admission to Chi Psi, which prevented them from living in the fraternity's house. That is sufficient for purposes of the FHA and CDHPA. Defendant also attempts to distance itself from the fraternity by alleging, based on extrinsic documents, that only nine of 51 Kappa Delta members at Yale lived in the Property and that 340 Elm had no connection with the local or national chapter of Chi Psi. *Id.*; Horsford Aff. ¶¶ 12, 25. But Plaintiffs' allegation that Defendant knowingly rented the property to members of Chi Psi to use as their fraternity house is enough to satisfy the elements of a civil conspiracy claim at the pleading stage.[13]

### D.   Plaintiffs Adequately Plead Claims Against 340 Elm for Discrimination in Places of Public Accommodation (Counts VI and VII)

Connecticut law prohibits discriminatory practices which "deny any person . . . full and equal accommodations in any place of public accommodation . . . because of . . . sex . . . of the applicant." Conn. Gen. Stat. § 46a-64. "Public accommodation" is defined as "any establishment

---

[13] If the Court were to consider Defendant's extrinsic evidence, it should be noted here that Defendant admits that all units for the 2018-2019 and 2019-2020 lease terms were leased to Chi Psi members; it cannot argue that leasing to individual members of the fraternity creates "no contract, relationship or connection with Kappa Delta [or] Chi Psi." Def.'s Mot. at 15. And again, Defendant does not deny that it knew the Property would serve as a fraternity house for Chi Psi. *See supra*, n.7.

which caters or offers its services or facilities or goods to the general public." Conn. Gen. Stat. Ann. § 46a-63.[14] [15]

To determine whether an establishment meets this definition, Connecticut courts evaluate the extent to which the establishment maintains a private relationship with its constituency or a general relationship with the public at large, and whether the establishment maintains selectivity. *Quinnipiac Council, Boy Scouts of Am., Inc. v. Comm'n on Human Rights & Opportunities*, 528 A.2d 352, 359 (Conn. 1987) ("Although no private organization is duty-bound to offer its services and facilities to all comers, once such an organization has determined to eschew selectivity, under our statute it may not discriminate among the general public."); *see also Corcoran v. German Soc. Soc'y Frohsinn, Inc.*, 916 A.2d 70, 72–73 (Conn. App. Ct. 2007) (noting the expansiveness of "[the Connecticut] public accommodation statutes . . . unlike the federal statute, our statute does not . . . expressly exclude private clubs or organizations" (citations omitted)).

---

[14] Defendant cites to Conn. Gen. Stat. Ann. § 46a-64(b), which exempts from the public accommodations statute "the rental of sleeping accommodations provided by associations and organizations which rent all such sleeping accommodations on a temporary or permanent basis for the exclusive use of persons of the same sex." Defendant has not argued that this exemption applies to the Property, and has therefore waived that argument. Moreover, "a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *BPP Ill., LLC v. Royal Bank of Scot. Grp. PLC*, 603 F. App'x 57, 59 (2d Cir. 2015); Fed. R. Civ. P. 8(c)(1). Nothing in the Amended Complaint (or, for that matter, in Defendant's extrinsic evidence) suggests that 340 Elm's sleeping accommodations are for the *exclusive* use of persons of the same sex. There is, for example, no allegation that 340 Elm imposes a rule (in the manner of a traditional single-sex boarding house) barring female guests from staying with male hosts for short periods of time.

[15] As Defendant notes, as of the filing of the Amended Complaint, Plaintiffs had not yet received releases of jurisdiction for claims of public accommodations discrimination against 340 Elm. Therefore, Plaintiffs indicated in their Amended Complaint that they would seek leave to amend to assert these claims against 340 Elm once they had received the releases of jurisdiction. AC ¶¶ 293, 305. 340 Elm therefore filed its motion to dismiss the public accommodations discrimination claims "in anticipation that an amended complaint will be filed." Def.'s Mot. at 16 n.3. Plaintiffs received the relevant releases of jurisdiction on July 1, 2019 and will seek leave to amend to assert the public accommodation discrimination claims against 340 Elm. Plaintiffs respectfully request that once the Amended Complaint is filed, the Court deem 340 Elm's Motion made as to Plaintiffs' public accommodations claims and consider the arguments presented in 340 Elm's Motion, this opposition brief, and any reply brief that 340 Elm submits.

But as the *Quinnipiac* court made clear, this "question of coverage [under the Connecticut General Statutes] is a question not of law but of fact." *Quinnipiac Council*, 528 A.2d at 359. "It is entirely consistent with the underlying law governing discriminatory practices to inquire into *specific* circumstances to determine whether a complainant has established a discriminatory denial of accommodations. All of our antidiscrimination law is essentially fact-bound." *Id.* (emphasis added); *see also Collins v. Univ. of Bridgeport*, 781 F. Supp. 2d 59, 66 (D. Conn. 2011) (noting that "the issue of whether [defendant] may be a place of public accommodation" to be a "fact-specific inquiry is ill-suited to a motion to dismiss"). Because the inquiry of whether 340 Elm is open to the public and eschews selectivity enough to constitute a public accommodation is purely fact-driven, and because nearly all of Defendant's arguments rely on facts extrinsic to the Amended Complaint, the answer to this question cannot be ascertained at this early stage.

Moreover, Plaintiffs have alleged a variety of facts supporting the inference that 340 Elm is a public accommodation. Plaintiffs allege that the Yale fraternities throw open house parties to which "hundreds (or even thousands) of Yale undergraduates" are invited; host events that are advertised as "public" and welcome students from neighboring schools; admit partygoers without checking their identifications; and allow organizations and individuals to rent and use their spaces. AC¶¶ 118–19, 196–99, 288, 301. Permitting its tenants to use the Property as a fraternity house in this manner is precisely what renders 340 Elm a place of public accommodation. The Property is an integral part of the fraternity because it serves as more than just a residence for its tenants; it also serves as a party venue, base of operations for the Chi Psi fraternity, and source of revenue. *Id.* ¶¶ 158, 161. Further, Plaintiffs allege that Chi Psi is not selective, in that its main admission requirement is that applicants are men, but otherwise Chi Psi does not restrict recruitment to a specific cohort of students. *Id.* ¶¶ 193–95.

20

All of Defendant's arguments—namely, that 340 Elm consists of two residences leased to nine individuals and is therefore insufficiently open to the public—are questions of fact to be resolved after the parties have had an opportunity to conduct discovery. *See Corcoran v. German Soc. Soc'y Frohsinn, Inc.*, No. CV020562775S, 2008 WL 642659, at *3 (Conn. Super. Ct. Feb. 21, 2008) (holding that a club qualified as a public accommodation, and considering factual issues such as the purpose for which an establishment was being used, the activities held in the building, and whether non-members have access to the building). Nor are Plaintiffs required to point to more specific details about discriminatory behavior by the tenants who occupied the Property. Def.'s Mot at 19. Plaintiffs sufficiently plead that Chi Psi as an organization repeatedly denied Plaintiffs membership in the fraternity; that Plaintiffs and members of the class experienced harassment and assault at various Yale fraternity parties; and that Plaintiffs no longer feel comfortable attending parties at fraternity houses. AC ¶¶ 116–17, 128, 135–36, 141, 289–90, 302.[16]

The Court must also disregard Defendant's attempts to distance itself from the fraternity by claiming that it was "not aware of any discriminatory behavior" on the part of its male tenants, Chi Psi Fraternity, or Kappa Delta. Def.'s Mot. at 19. Not only are these arguments impermissible because they are based entirely on alleged facts contained in the affidavit of Jesse Horsford, but they also fail to address that Plaintiffs allege Defendant rented to its tenants *knowing* that they were members of Chi Psi and would use the premises as a fraternity house. AC ¶ 161. Defendant does not absolve itself of liability by repeating here—for the third time—that it never directly denied Plaintiffs the opportunity to rent the Property. By knowingly renting to a fraternity that excludes women from its membership and creates a hostile environment for women, Defendant effectively discriminated against Plaintiffs. *See Corcoran*, 2008 WL 642659, at *6 (noting that

---

[16] To the extent that the Court requires more specific allegations about discriminatory behavior by members of the Chi Psi Fraternity against Plaintiffs, Plaintiffs seek leave to amend their Complaint under Rule 15(a).

courts consider the "practical effect" of an organization's policies as well as the policies themselves); *cf. Wetzel*, 901 F.3d at 863 (finding, consistent with law interpreting Title VII, landlord liable for housing discrimination when it knew or should have known about the discriminatory acts of tenants); *see also supra* n.7. Tellingly, Defendant does not attempt to refute that Chi Psi perpetuated a hostile environment and denied Plaintiffs membership. Discovery will allow Plaintiffs to determine the extent of Defendant's awareness of its tenants' misconduct.

The only permissible, though unavailing, argument Defendant raises is that sections 46a-63 and 46a-64 are inapplicable to discrimination in private homes because references to housing accommodations were specifically removed from the public accommodations statute when sections 46a-64b and 46a-64c (the CDHPA) were passed to prohibit housing discrimination. Def.'s Mot. at 17–18. This argument fails to consider, however, that a landlord of a public accommodation that includes dwelling units could be held liable under *both* a theory of public accommodations in violation of sections 46a-63 and 46a-64 as well as under a theory of housing discrimination in violation of sections 46a-64b and 46a-64c.[17] Defendant operates the Property as residential building and is liable under the CDHPA (and FHA) for unlawful sex discrimination against Plaintiffs. *See supra* section IV.B. But Defendant is additionally liable under the public accommodations statute because the Property was being used as a base of operations for an unselective, but male-only membership organization to host "house parties" and to hold "public

---

[17] To the extent Defendant's argument implies that the same property cannot be subject to both the public accommodations statute and the fair housing statute, it must be noted that at the pleading stage, "the plaintiff is at liberty to plead different theories, even if they are inconsistent with one another, and the court must accept each sufficiently pleaded theory at face value, without regard to its inconsistency with other parts of the complaint." *Doe v. Columbia*, 831 F.3d at 48 (citations omitted); *see* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims . . . as it has, regardless of consistency.").

events." AC ¶¶ 196–97, 301. Passage of the CDHPA does not preclude a claim under the public accommodations statute when a property is being used for both residential and public purposes.[18]

Taking these allegations as a whole, Plaintiffs sufficiently allege that Defendant is a place of public accommodation that denies Plaintiffs membership on the basis of sex and create a hostile environment. Thus, 340 Elm's motion to dismiss Plaintiffs' public accommodation claims should be denied in its entirety.

## V.   CONCLUSION

Plaintiffs' well-pled Amended Complaint survives Defendant's Motion to Dismiss. The Amended Complaint contains extensive factual allegations supporting Plaintiffs' claims that the Defendant landlord illegally discriminated against women. Defendant's Motion rests largely on extrinsic evidence beyond the complaint and asks the Court to resolve disputed facts. These tactics are improper in a motion addressed to the pleadings. None of Plaintiffs' claims are barred as a matter of law. Accordingly, this Court should deny Defendant's motion, and permit Plaintiffs to engage in and complete the discovery process.

---

[18] Indeed, it is common for a property to be multi-use. For instance, many residential buildings also contain hotels, office spaces, and/or stores. There is no blanket exemption to § 46a-64 for such multi-use spaces. To the extent Defendant's argument implies that the same property cannot be subject to both the public accommodations statute and the fair housing statute, this is contrary to the remedial purposes of the statues and the basic principle that the acts should be construed as harmonious; one does not shoulder out the other. *See, e.g.*, *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995) ("[W]hen two statutes are capable of co-existence . . . it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." (citations omitted)); *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 125–26 (2001) (courts will harmonize overlapping statutes "so long as each reaches some distinct cases."). It must be also noted that, at the pleading stage, "the plaintiff is at liberty to plead different theories, even if they are inconsistent with one another, and the court must accept each sufficiently pleaded theory at face value, without regard to its inconsistency with other parts of the complaint." *Doe v. Columbia*, 831 F.3d at 48 (citations omitted); *see* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims . . . as it has, regardless of consistency.").

Dated:  July 3, 2019

Respectfully submitted,


 _/s/ David Tracey_____


David Sanford*
David Tracey*
Albert Powell*
Scott Sullivan*
Meredith Firetog**
Carolin Guentert**
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
dtracey@sanfordheisler.com
apowell@sanfordheisler.com
ssullivan@sanfordheisler.com
mfiretog@sanfordheisler.com
cguentert@sanfordheisler.com
*admitted *pro hac vice*
***pro hac vice* forthcoming

Attorney Daniel H. Schneider
Fed. Bar No. ct13208
**Schneider Law Firm, LLC**
112 Broad Street North, First Floor
Milford, CT 06460
Telephone: (203) 874-0030
Facsimile: (203) 878-01117
Daniel@Schneider-Law-Firm.com


*Attorneys for Plaintiffs and the Proposed
Class*