## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ANNA MCNEIL, ELIANA SINGER, RY WALKER, on behalf of themselves and all others similarly situated, and ENGENDER on behalf of itself and its members** | ) ) ) ) ) | **No. 3:19-cv-00209-VAB** |
| **Plaintiffs,** | ) ) | |
| **v.** | ) | |
| **Yale University; Yale Chapter of Alpha Delta Phi International, Inc.; Alpha Epsilon Pi, Epsilon Upsilon; Alpha Kappa Delta of Chi Psi; Delta Kappa Epsilon, Phi Chapter; Leo; Sigma Chi, Theta Upsilon Chapter; Sigma Nu Fraternity Beta Alpha Chapter; Sigma Phi Epsilon, Connecticut Delta Chapter; Zeta Psi, ETA Chapter; Alpha Delta Phi International Inc.; Alpha Epsilon Pi Fraternity, Inc.; Chi Psi Fraternity; Delta Kappa Epsilon Fraternity; Sigma Alpha Epsilon Fraternity; Sigma Chi International Fraternity; Sigma Nu Fraternity, Inc.; Sigma Phi Epsilon Fraternity; Zeta Psi Fraternity, Inc.; Sig Ep Housing of Connecticut Delta LLC; Edward J. Donahue III; 402 Crown LLC; 340 Elm, LLC; Mother Phi Foundation, Inc.; Connecticut Omega of Sigma Alpha Epsilon House Corporation; House Corporation of Sigma Chi at Yale, Inc.; High Street Housing Corporation; ZP Nutmeg Associates Inc.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | **JULY 3, 2019** |

## PLAINTIFFS' OPPOSITION TO DEFENDANT 402 CROWN LLC'S MOTION TO DISMISS

### TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 2

LEGAL STANDARD ...................................................................................................... 4

ARGUMENT .................................................................................................................... 5

    I.       402 CROWN'S EXTRINSIC FACTUAL ASSERTIONS
            SHOULD BE DISREGARDED ............................................................... 5

    II.     THE AMENDED COMPLAINT SATISFIES RULE 8 .......................... 6

    III.    PLAINTIFFS ADEQUATELY PLEAD HOUSING
            DISCRIMINATION CLAIMS .............................................................. 7

          A.  Plaintiffs State a Claim Under the Fair Housing Act (Count
             III) ................................................................................................ 7

              1.   Plaintiffs state a claim based on facially-discriminatory
                  classification ............................................................... 9

              2.   Plaintiffs satisfy the pleading requirements for a
                  McDonnell Douglas-type claim of housing discrimination .......... 10

              3.   As landlord, 402 Crown is liable for the discriminatory
                  acts of its fraternity tenant, AEPi ............................... 12

              4.   Plaintiffs satisfy the pleading requirements for a disparate
                  impact claim of housing discrimination ......................... 14

          B.   Plaintiffs state a claim under the Connecticut Discriminatory
              Housing Practices Act (Count IV) ............................................ 15

          C.   Plaintiffs State a Claim of Civil Conspiracy (Count V) ................ 15

    IV.    PLAINTIFFS ADEQUATELY PLEAD A CLAIM OF
            DISCRIMINATION IN A PLACE OF PUBLIC
            ACCOMMODATION (COUNTS VI AND VII) .................................. 16

          A.  Plaintiffs State a Claim for Violation of Conn. Gen. Stat. §
             46a-64 ......................................................................................... 16

          B.  Defendant's Administrative Exhaustion Argument is
             Misplaced .................................................................................... 18

          C.  Engender Has Standing to Assert a Claim Under Conn. Gen.
             Stat. § 46a-64 ............................................................................. 19

CONCLUSION.................................................................................................................21

# TABLE OF AUTHORITIES

**CASES:**

*All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*,
651 F.3d 218 (2d Cir. 2011) ........................................................................................ 22

*Amchem Prods, Inc. v. Windsor*,
521 U.S. 591 (1997) .................................................................................................... 23

*AvalonBay Communities, Inc. v. Town of Orange*,
775 A.2d 284 (Conn. 2001) ..................................................................................... 8, 17

*Barbano v. Madison Cty.*,
922 F.2d 139 (2d Cir. 1990) ....................................................................................... 11

*Boykin v. KeyCorp*,
521 F.3d 202 (2d Cir. 2008) ....................................................................................... 12

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ......................................................................................... 5

*Collins v. Conn. Job Corps*,
684 F. Supp. 2d 232 (D. Conn. 2010) .................................................................... 10, 19

*Comm'n on Human Rights and Opportunities ex rel. Thomas George v. Town of West Hartford*,
CHRO No. 0910466, 2011 WL 1734676 (CT. Civ. Rts. Mar. 24, 2011) ................................. 20

*Conn. Fair Hous. Ctr. v. Corelogic Rental Prop. Sols., LLC*,
369 F. Supp. 3d 362 (D. Conn. 2019) .................................................................... 15, 16

*Corcoran v. German Soc. Soc'y Frohsinn, Inc.*,
No. CV020562775S, 2008 WL 642659 (Conn. Super. Ct. Feb. 21, 2008) ............................ 20

*Doe v. Columbia Univ.*,
831 F.3d 46 (2d Cir. 2016) ........................................................................................ 5, 13

*Erickson v. Pardus*,
551 U.S. 89 (2007) ........................................................................................................ 4

*Fair Hous. in Huntington Comm., Inc. v. Town of Huntington, N.Y.*,
316 F.3d 357 (2d Cir. 2003) ......................................................................................... 8

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016) ......................................................................................... 5

*Harnage v. Lightner*,
  916 F.3d 138 (2d Cir. 2019) ............................................................................ 6, 7

*Hayden v. Cty. of Nassau*,
  180 F.3d 42 (2d Cir. 1999) ................................................................................ 10

*Hill v. City of N.Y.*,
  136 F. Supp. 3d 304 (E.D.N.Y. 2015) ................................................................. 11

*Hunt v. Wash. St. Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ............................................................................... 22, 23, 24

*Int'l Union, UAW v. Johnson Controls, Inc.*,
  499 U.S. 187 (1991) ...................................................................................... 10, 11

*Jalal v. Columbia Univ. in City of N.Y.*,
  4 F. Supp.2d 224 (S.D.N.Y. 1998) ...................................................................... 11

*Jansson v. Stamford Health, Inc.*,
  No. 3:16-CV-260, 2017 WL 1289824 (D. Conn. Apr. 5 2017) ............................. 7

*Khalil v. Farash Corp.*,
  452 F. Supp. 2d 203 (W.D.N.Y. 2006) ................................................................ 14

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) ................................................................................. 5

*Lowe v. Planning & Zoning Comm'n of Mansfield*,
  No. 16-CV-381, 2017 WL 1375170 (D. Conn. Apr. 14, 2017) .............................. 8

*Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*,
  739 F. Supp. 2d 104 (D. Conn. 2010) ................................................................. 17

*McMillan v. City of N.Y.*,
  711 F.3d 120 (2d Cir. 2013) ................................................................................. 9

*MHANY Mgmt., Inc. v. Cty. of Nassau*,
  819 F.3d 581 (2d Cir. 2016) ................................................................................ 16

*Mitchell v. Shane*,
  350 F.3d 39 (2d Cir. 2003) ................................................................................. 12

*Neudecker v. Boisclair Corp.*,
   351 F.3d 361, 364 (8th Cir. 2003) ............................................................................. 13

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ....................................................................................... 6

*Palmer v. Fannie Mae*,
   755 F. App'x 43 (2d Cir. 2018) ........................................................................... 12, 13

*Patterson v. Cty. of Oneida*,
   375 F.3d 206 (2d Cir. 2004) ..................................................................................... 11

*Quinnipiac Council, Boy Scouts of Am., Inc. v. Comm'n on Human Rights & Opportunities*,
   528 A.2d 352 (Conn. 1987) ......................................................................... 18, 19, 20

*Ragin v. New York Times*,
   923 F.2d 995 (2d Cir. 1991) ....................................................................................... 9

*Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*,
   294 F.3d 35 (2d. Cir 2002) ....................................................................................... 13

*Salahuddin v. Cuomo*,
   861 F.2d 40 (2d Cir. 1988) ......................................................................................... 7

*Skinner v. Switzer*,
   562 U.S. 521 (2011) ................................................................................................... 9

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) ............................................................................................. 9, 12

*Tice v. Southington Bd. of Educ.*,
   2 F. App'x 152 (2d Cir. 2001) ................................................................................. 10

*Univ. of Bridgeport*,
   781 F. Supp. 2d 59 (D. Conn. 2011) ........................................................................ 19

*Wanamaker v. Westport Bd. of Educ.*,
   No. 3:11-cv-1791, 2015 WL 2229716 (D. Conn. Mar. 16, 2015) ........................... 10

*Warth v. Seldin*,
   422 U.S. 490 (1975) ................................................................................................. 23

*Wetzel v. Glen St. Andrew Living Cmty., LLC*,
   901 F.3d 856 (7th Cir. 2018) ................................................................................... 14

*Williams v. Cmty. Sols., Inc.*,
    932 F. Supp. 2d 323 (D. Conn. 2013) ................................................................. 18


**STATUTES:**

42 U.S.C. § 3604 ...................................................................................... 2, 7, 8, 12

Conn. Gen. Stat. § 46a-101(b) ............................................................................ 19

Conn. Gen. Stat. § 46a-64 ........................................................................... passim

Conn. Gen. Stat. § 46a-64(a) ...................................................................... 17, 19

Conn. Gen. Stat. § 46a-64(a)(1) .......................................................................... 17

Conn. Gen. Stat. § 46a-64(a)(2) .......................................................................... 17

Conn. Gen. Stat. § 46a-64c .................................................................................. 2

Conn. Gen. Stat. §§ 46a-63 ............................................................................ 2, 21

Title VII, 42 U.S.C. §§ 2000 ................................................................... 9, 10, 13


**RULES:**

Fed. R. Civ. P. 15(a)(1)(B) .................................................................................. 8

Fed. R. Civ. P. 56(d) ............................................................................................ 5

Fed. R. Civ. P. 8(a)(2) ..................................................................................... 4, 6

Fed. R. Civ. P. 12 ....................................................................................... 5, 7, 13


**REGULATIONS:**

24 C.F.R. § 100.7(a)(1)(iii) ................................................................................ 13

## **INTRODUCTION**

Defendant 402 Crown, LLC ("Defendant" or "402 Crown") is a housing organization which owns and manages the Alpha Epsilon Pi ("AEPi") fraternity house at Yale University ("Yale" or the "University"). 402 Crown furnished the property to the all-male AEPi fraternity for use as a single-sex fraternity house and residence. Defendant was fully aware that AEPi was a male-only organization which propounded and enforced a discriminatory policy excluding women from its membership. Likewise, it knew that the fraternity would make dwelling units available to men but not to women. It knew that women who sought to join the fraternity or to obtain associated housing benefits would be turned away because of their gender.

Thus, by renting the property to AEPi, Defendant willfully facilitated and enabled unlawful housing and public accommodations discrimination in violation of the federal Fair Housing Act ("FHA") and Connecticut law. As a property owner and landlord of a dwelling from which female tenants are effectively barred, 402 Crown comes within the broad reach of these statutes, and its conduct forms a valid basis for liability. Defendant plays an integral role in a discriminatory scheme; addressing its conduct would provide vital relief and redress to Plaintiffs and the class. It is not insulated merely because AEPi as a fraternity arguably has a more central or immediate place in the discriminatory ecosystem of the 402 Crown property. A landlord cannot evade responsibility through the mere presence of an intermediary or agent; this would thwart the liberal and expansive purposes of the fundamental civil rights statutes at issue. If AEPi—with Defendant's imprimatur and blessing—had posted signs on the premises stating, "Women Need Not Apply," Defendant as landlord would clearly be on the hook. This case is no different.

Plaintiffs McNeil, Singer, and Walker and other members of Plaintiff Engender are victims of AEPi's and Defendant 402 Crown's discriminatory acts and practices. They have consistently

been denied the opportunity to become members of the fraternities at Yale and to obtain housing in fraternity facilities such as 402 Crown. On two separate occasions, Defendant AEPi denied Plaintiffs fraternity membership—and access to attendant social and economic benefits—on the basis of their gender. Because Plaintiffs were unable to join AEPi, they were denied the benefit of living in the AEPi fraternity house at 402 Crown.

By renting the property to an organization that explicitly discriminated against Plaintiffs and against women as a class, 402 Crown, in turn, has made its property unavailable to Plaintiffs and violated the statutory prohibitions against sex discrimination in housing. 42 U.S.C. § 3604; Conn. Gen. Stat. § 46a-64c. Similarly, Defendants caused the making of statements indicating that Plaintiffs and other women were not eligible for housing at the facility and that men would be favored as occupants. *See* 42 U.S.C. § 3604(c). Defendant agreed with AEPi to engage in actions that violate state and federal fair housing law, thus, 402 Crown is also liable for a civil conspiracy.

Finally, renting to AEPi as a public social organization renders 402 Crown a place of public accommodation; thus, 402 Crown has engaged in illegal sex-based discrimination against Plaintiffs under the Connecticut public accommodations law. Conn. Gen. Stat. § 46a-63.

Plaintiffs have met the required pleading standards on each of these causes of action. Because Plaintiffs' fair housing, civil conspiracy, and public accommodations claims all require a fact-intensive inquiry, dismissal of the case at this stage of the litigation is inappropriate. For the reasons that follow, the Court should deny Defendant's Motion in all respects.

## **FACTUAL BACKGROUND**

Plaintiffs Anna McNeil, Eliana Singer, and Ry Walker are undergraduate students at Yale. Dkt. No. 63, Amended Complaint ("AC") ¶ 1. They are co-directors of Plaintiff Engender—an undergraduate organization dedicated to promoting equity and inclusion within the Yale

community. *Id.* ¶¶ 1, 125. All-male fraternities are the de facto social environment for many students at Yale, and female students are regularly subjected to harassment and assault at fraternity parties. *Id.* ¶ 4. Plaintiffs McNeil, Singer, and Walker were all groped during fraternity parties during their first semester at Yale. *Id.* ¶ 3. To make matters worse, the fraternities also offer their members economic and social opportunities that Yale's female and gender non-binary students cannot access. *Id.* ¶ 7.

Engender was founded in the fall of 2016. *Id.* ¶ 28. Plaintiffs and their peers in Engender believe that Yale's fraternities disproportionately contribute to the high levels of gender inequality, sexual harassment, and sexual assault on and around Yale's campus. *Id.* ¶ 126. To combat sexual harassment and to take advantage of the social and economic opportunities fraternities offer to Yale men, beginning in 2017, Engender attempted to integrate Yale's fraternities by gender, including AEPi. *Id.* ¶¶ 10-11, 135-36, 141.

In January 2018, Engender organized a group of female students (including Plaintiffs McNeil, Singer, and Walker) to request access to Defendant Fraternities' rush processes, including those of AEPi. These rush processes are the only means of entry into membership in the fraternities. *Id.* ¶ 127. However, Plaintiffs were "discriminatorily denied . . . access to [these] rush processes based on gender." *Id.* ¶ 138. On January 16, 2018, Plaintiff McNeil emailed the Yale chapter presidents of Defendant Fraternities on behalf of Engender's members, requesting that they open their doors to non-male students. AEPi did not respond, *id.* ¶¶ 135-36, sending a clear message that it would not deviate from its established policies and practices and thus would not consider admitting women. On December 12, 2018, Plaintiff Singer emailed the president of each of the local chapters on behalf of Engender, requesting access to their upcoming rush processes. Again, AEPi did not respond, effectively excluding Plaintiff from the fraternity. *Id.* ¶ 141. Finally,

on December 20, 2018, Plaintiff Singer emailed AEPi again after learning about a change in the leadership of the organization, but yet again did not receive a response. *Id.* ¶ 141, n.5.

Because they were denied any opportunity for membership in AEPi, and because AEPi only allows members—men—to live in its fraternity house, Plaintiffs were unable to live in the AEPi house. *Id.* ¶¶ 163, 261. Defendant 402 Crown is the owner and landlord of the house, manages the house for its and AEPi's mutual benefit, and knowingly rents the property for use as an all-male fraternity house from which women are excluded as members and residents. *Id.* ¶¶ 53, 161.

By renting exclusively to a fraternity that has repeatedly denied Plaintiffs membership and subjected Plaintiffs to sexual harassment or assault at fraternity parties, 402 Crown is liable for discriminating against Plaintiffs under counts III, IV, V, VI, and VII of the Amended Complaint.

## LEGAL STANDARD

The "liberal pleading standard[]" of Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

A court should deny a motion to dismiss if a complaint states "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). As the Supreme Court stated in *Twombly*, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." 550 U.S. at 556 (citation omitted).

4

On a 12(b)(6) motion, a "court . . . is not engaged in an effort to determine the true facts," *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016); that comes later—"[t]he test of a claim's 'substantive merits' is 'reserved for . . . summary judgment.'" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558-59 (2d Cir. 2016) (citation omitted). The Court must take a complaint "as a whole," "accepting all factual allegations . . . as true and drawing all reasonable inferences in Plaintiffs' favor." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 169, 171 (2d Cir. 2015).

## ARGUMENT

### I.   402 CROWN'S EXTRINSIC FACTUAL ASSERTIONS SHOULD BE DISREGARDED

402 Crown improperly introduces facts outside the four corners of the Amended Complaint in its Motion to Dismiss. "Consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2)." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002). When a motion to dismiss introduces such extraneous material, "it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (quoting Fed. R. Civ. P. 12(d)); *see also* Fed. R. Civ. P. 56(d).

402 Crown attempts to introduce several facts outside of the four corners of the Amended Complaint. As extraneous (and unsupported) assertions, these purposed "facts" should be disregarded. Specifically, 402 Crown describes the property it leases to Defendant AEPi. Mot. at 2. It asserts that "there is no affiliation between 402 and any fraternal organization." Mot. at 6. 402 Crown further asserts that "there is no connection between rushing, or even acceptance into a fraternity, and obtaining housing." Mot. at 10 n.4. Plaintiffs cannot respond to these assertions without discovery. The Court should therefore disregard these factual assertions.

## II.     THE AMENDED COMPLAINT SATISFIES RULE 8

Under Rule 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff need only "disclose sufficient information to permit the defendant to have a fair understanding of what [she] is complaining about and to know whether there is a legal basis for recovery." *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (citation omitted). Where a party asserts that a complaint fails to comport with the "short and plain statement" standard, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).[1]

402 Crown feigns that it "simply has no idea of what specific acts it is accused of doing." Mot. at 6. Its own motion contradicts this disingenuous assertion. Defendant identifies and restates specific facts from the Amended Complaint as those facts pertain to each count asserted against 402 Crown. Mot. at 2-3. Plainly, then, the complaint "does not overwhelm the defendants' ability to understand or to mount a defense." *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (reversing dismissal where "plaintiff's submission [was] a model of neither clarity nor brevity . . . but it [was] sufficient to put the defendants on fair notice"). Complaints are dismissed when they contain an "incomprehensible labyrinthian prolixity of unrelated and vituperative charges," not when they simply and clearly allege several claims against more than one defendant, as Plaintiffs have done here. *Harnage*, 916 F.3d at 142 (citation omitted).

402 Crown also argues that the practice of incorporating preceding paragraphs by reference justifies dismissal, but this notion is contradicted by its own cited authority. In *Jansson v. Stamford*

---

[1] To the extent the Amended Complaint is not sufficiently clear, the Court should grant leave to amend. *See id.* at 42 ("When the court chooses to dismiss, it normally grants leave to file an amended pleading that conforms to the requirements of Rule 8.").

*Health, Inc.*, "Plaintiff broadly incorporate[d] by reference the preceding 156 paragraphs containing her statement of facts. However, language in certain of these preceding paragraphs suggest[ed] that they pertain[ed] specifically to this claim," and the court accordingly denied the motion to dismiss that claim. No. 3:16-CV-260, 2017 WL 1289824, at *20 (D. Conn. Apr. 5, 2017). The Amended Complaint provides far more clarity than the pleading at issue in *Jansson*, because it summarizes which prior stated facts support each Count asserted against 402 Crown. AC ¶¶ 258-63 (Count III); 267-76 (Count IV); 280-83 (Count V); 28-96 (Count VI); 300-08 (Count VII). This level of detail also distinguishes Plaintiffs' Complaint from the pleading in *Lowe v. Planning & Zoning Comm'n of Mansfield*, No. 16-CV-381, 2017 WL 1375170 (D. Conn. Apr. 14, 2017). There, each legal count merely incorporated the entire complaint and offered a conclusory statement that a particular statute was violated, providing no other detail to indicate which alleged facts supported each count. *Id.* at *4. Here, Plaintiffs have provided more than enough information to direct Defendant's attention to the relevant facts in each count. As shown in the sections below, these facts are more than sufficient to state a claim against 402 Crown.[2]

## III.   PLAINTIFFS ADEQUATELY PLEAD HOUSING DISCRIMINATION CLAIMS

### A.  Plaintiffs state a claim under the Fair Housing Act (Count III)

The FHA renders it unlawful to "otherwise make unavailable or deny, a dwelling to any person because of . . . sex." 42 U.S.C. § 3604 (a). "The phrase 'otherwise make unavailable' has been interpreted to reach a wide variety of discriminatory housing practices." *AvalonBay Cmtys., Inc. v. Town of Orange*, 775 A.2d 284, 307 (Conn. 2001). "A plaintiff can make out a claim of

---

[2] To the extent that 402 Crown argues that the Amended Complaint is prolix or confusing, this concern is more appropriately addressed through a motion for a more definite statement under Rule 12(e) or a motion to strike under Rule 12 (f), both of which are highly disfavored. Dismissal under Rule 12(b)(6) is improper.

discrimination either on a theory of disparate impact or one of disparate treatment." *Fair Hous. in Huntington Comm., Inc. v. Town of Huntington, N.Y.*, 316 F.3d 357, 366 (2d Cir. 2003) (citation omitted). "[U]nder the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

402 Crown wrongly contends that Plaintiffs have failed to state a claim because they purportedly do not make out a *prima facie* case of disparate treatment under the *McDonnell Douglas* standard. Mot. at 8-10. This is mistaken for several reasons. First, *McDonnell Douglas* applies to assist discrimination plaintiffs in cases resting primarily on circumstantial evidence; its burden-shifting rubric is not particularly useful where, as here, a defendant promulgates a facially-discriminatory policy or otherwise concedes that a protected category is implicated. *E.g. McMillan v. City of N.Y.*, 711 F.3d 120, 129 (2d Cir. 2013). Second, *McDonnell Douglas* is an evidentiary framework used to litigate claims of disparate treatment. It does not supply a pleading standard. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 997 (2002); *see infra* p. 11. *Third*, Plaintiffs allege facts sufficient to state a claim for housing discrimination. It is beyond peradventure for pleading purposes that Plaintiffs were discriminated against under a facial policy of gender classification (*i.e.*, no women allowed) and that their injuries are properly attributable to Defendant's conduct in furnishing the 402 Crown property to AEPi for use as a male-only fraternity house and residence.[3]

---

[3] Similarly, Defendant's acts, as pled in the Complaint, would give rise to liability under § 3604(c) for causing the making of statements indicating a discriminatory policy or preference for renting the house's dwelling units to men but not women. Each time that AEPi represented itself as a male-only fraternity or turned women away from joining and seeking housing, it plainly and unambiguously communicated this message. Section 3604(c) is an expansive provision that covers a range of conduct, even by parties bearing no direct discriminatory animus. *See, e.g.*, *Ragin v. New York Times*, 923 F.2d 995 (2d Cir. 1991) (finding *New York Times* liable for publishing and failing to screen out housing advertisements that could convey a discriminatory message through racial patterns in the models depicted in the ads).

The Amended Complaint pleads sufficient allegations to put Defendants on notice of a claim under § 3604(c). *See Tice v. Southington Bd. of Educ.*, 2 F. App'x 152, 153 (2d Cir. 2001) ("The principal function of pleadings under the Federal Rules is to give fair notice of the claim asserted . . . There is no requirement in the Federal Rules that a plaintiff cite statutory sections in the complaint."). To the extent there is any

*1.  Plaintiffs State a Claim Based on a Facially-Discriminatory Classification*

Defendant's invocation of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), does not warrant dismissal. *McDonnell Douglas* is generally applicable to cases that rely on circumstantial evidence of discriminatory intent. *See, e.g.*, *Wanamaker v. Westport Bd. of Educ.*, No. 3:11-cv-1791, 2015 WL 2229716 (D. Conn. Mar. 16, 2015); *Collins v. Conn. Job Corps*, 684 F. Supp. 2d 232, 250 (D. Conn. 2010). But, here, in contrast, Plaintiffs base their claims on the ultimate *direct* evidence of discrimination: a facially-discriminatory classification. AEPi and its fellow fraternities propound policies excluding women as a class. 402 Crown, as owner and landlord, adopts and promulgates these policies by knowingly and deliberately furnishing the Property to a discriminatory organization (AEPi) that refuses to rent to women. These policies are the ground rules by which the 402 Crown house operates.

Intentional discrimination may be demonstrated by a facially-discriminatory policy—*i.e.*, a policy that "expressly classifies persons on the basis of race or gender." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999) (equal protection case); *Int'l Union, UAW v. Johnson Controls, Inc.*, 499 U.S. 187 (1991) (Title VII: employer policy barring fertile women from certain jobs involving exposure to lead). In a facial classification case, it does not matter whether the defendant has a "malevolent" or benign motive: "Whether a [] practice involves disparate treatment through explicit facial discrimination does not depend on why the [defendant] discriminates but rather on the explicit terms of the discrimination." *Johnson Controls*, 499 U.S. at 199.

Here, Plaintiffs allege, fraternities like AEPi adopt precisely such a facial classification—welcoming men for membership and housing but refusing their female counterparts: It is part of

---

ambiguity, Plaintiffs request leave to amend to more clearly cite this subsection of the statute in Count III. *See generally* Fed. R. Civ. P. 15(a)(1)(B) ("The court should freely give leave when justice so requires."); *Foman v. Davis*, 371 U.S. 178, 182 (1962) (describing the liberal standard for amendment).

their organizational DNA. The landlord, 402 Crown, has an independent duty not to engage in or facilitate housing discrimination; its intent may be inferred through its acquiescence in AEPi's open, notorious, and longstanding policy. *See, e.g.*, *Barbano v. Madison Cty.*, 922 F.2d 139, 141, 143 (2d Cir. 1990) ("knowing and informed toleration of discriminatory statements," amounting to "acquiescence"); *Patterson v. Cty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (in context of municipal liability under § 1981/1983, a policy or custom of intentional discrimination is established when a "discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials" (citation omitted));[4] *cf. Hill v. City of N.Y.*, 136 F. Supp. 3d 304, 340 (E.D.N.Y. 2015) ("[T]he acquiescence theory permits an inference    of discriminatory intent based    on    the    union's    disregard    of    an employer's discrimination."). Since Plaintiffs plausibly allege that 402 Crown adopted a facially discriminatory policy, 402 Crown's motion must be denied.

2.   *Plaintiffs satisfy the pleading requirements for a McDonnell Douglas-type claim of housing discrimination*

FHA disparate treatment claims grounded on circumstantial evidence "are analyzed using the *McDonnell Douglas* burden-shifting framework" established for employment discrimination cases under Title VII, 42 U.S.C. §§ 2000e *et seq. Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008). In such cases, "[p]laintiffs may establish a prima facie case of housing discrimination by showing (1) that they are members of a protected class; (2) that they sought and were qualified to rent or purchase the housing; (3) that they were rejected; and (4) that the housing opportunity

---

[4] *See generally Jalal v. Columbia Univ. in City of N.Y.*, 4 F. Supp.2d 224, 240 (S.D.N.Y. 1998) ("[A]cquiescence with a decision that is known to have been the product of discrimination can itself show a discriminatory intent.") (collecting cases).

remained available to other renters or purchasers." *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003).

Because the *prima facie* case "is an evidentiary standard, not a pleading requirement," *Swierkiewicz*, 534 U.S. at 510, "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas* at least as the test was originally formulated, to defeat a motion to dismiss." *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). Instead, at the pleading stage of a housing discrimination case, "a plaintiff can survive a motion to dismiss if the plaintiff can allege facts that support a plausible claim that the plaintiff was 'a member of a protected class,' suffered relevant 'adverse' treatment, and 'can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation.'" *Palmer*, 755 F. App'x at 45 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).[5]

Here, Plaintiffs surpass their "minimal burden" to state a disparate treatment claim under the FHA and the CDHPA. *Id.* Indeed, even though they are not required to, Plaintiffs plausibly allege all four elements of the traditional prima facie case. It is undisputed that Plaintiffs are members of a protected class. Mot. at 8. Plaintiffs allege that 402 Crown knowingly rents a property to Defendant AEPi for use as a male-only fraternity house. AC ¶ 161. AEPi grants

---

[5] *See also Doe v. Columbia Univ.*, 831 F.3d 46, 55, n.8 (2d Cir. 2016) ("[A]the 12(b)(6) stage of a Title VI suit, allegation of facts supporting a minimal plausible inference of discriminatory intent suffices as to this element of the claim because this entitles the plaintiff to the temporary presumption of *McDonnell Douglas* until the defendant furnishes its asserted reasons for its action against the plaintiff. . . . For this reason, we have often vacated 12(b)(6) . . . dismissals of complaints alleging discrimination. . . .We have also cautioned district courts against imposing too high a burden on plaintiffs alleging discrimination at the 12(b)(6) stage." (internal citations omitted)); *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 49 (2d. Cir 2002), *superceded by statute on other grounds* ("[Plaintiffs'] initial burden of production under the *McDonnell Douglas* analysis is 'minimal.'") (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993)); *Littlejohn*, 795 F.3d at 311 n.9 ("[T]he elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim.") (citation omitted).

membership, and therefore housing, only to men. *Id*. ¶ 31. In fact, AEPi admits most men who apply for membership, *id*. ¶¶ 193, 195, but refuses to admit a single woman. These men are then given priority in obtaining housing at the space leased from 402 Crown. *Id*. ¶ 163. Applying its gender exclusionary policy, AEPi refused on two occasions to provide Plaintiffs with even basic information about the process of applying for membership and, by extension, for housing. *Id*. ¶ 141. As a result, Plaintiffs were denied (and, at the very least, deterred from obtaining) housing at the AEPi house. *Id*. ¶ 143. This denial was part and parcel of AEPi's "policy and practice of denying women . . . an equal opportunity to rent units because of their gender." *Id*. ¶ 164. Accordingly, Plaintiffs plausibly allege that housing has been denied or "otherwise [made] unavailable" to them because of their gender in violation of § 3604(a).[6]

> 3.  *As landlord, 402 Crown is liable for the discriminatory acts of its fraternity tenant, AEPi*

402 Crown suggests in passing that it is not liable for discriminatory housing practices by AEPi unless it is "the legal equivalent of Alpha Epsilon Pi." Mot. at 9. However, 402 Crown need not be the legal proxy of AEPi in order to be liable for its tenant's discriminatory housing practices. Courts around the country have found landlords directly liable for the discriminatory actions of their tenants, analogizing to the responsibility employers have under Title VII to correct a discriminatory working environment. *E.g. Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 865 (7th Cir. 2018) (holding landlord liable because it "had, but failed to deploy, available remedial tools," including evicting or suspending certain privileges of tenants who harassed

---

[6] 402 Crown cites only one case in support of its argument that Plaintiffs have not plausibly alleged housing discrimination, but this case was decided at the summary judgment stage after the parties conducted discovery. *See Khalil v. Farash Corp.*, 452 F. Supp. 2d 203, 207-08 (W.D.N.Y. 2006). At the pleading stage in that matter, the court held that the plaintiffs had plausibly alleged discrimination, despite the landlord's undisputed assertion that it had not directly denied housing to the plaintiffs. *Khalil*, 260 F. Supp. 2d at 589-90. 402 Crown prematurely attempts to litigate this Count on the merits, and its motion to dismiss must be denied.

another tenant on the basis of her sexual orientation, and noting that "[c]ontrol in the absolute sense . . . is not required for liability. Liability attaches because a party has an arsenal of incentives and sanctions . . . that can be applied to affect conduct but fails to use them") (citations omitted).[7] Liability attaches when the landlord knew or should have known of the discriminatory conduct and failed to use mechanisms it has for remedying such acts, such as evicting the offending tenant. *Id.*; 24 C.F.R. § 100.7(a)(1)(iii) (In a 2016 rule amendment, the Department of Housing and Urban Development ("HUD") confirmed that "[a] person is directly liable for . . . [f]ailing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it").

As a conceptual matter, the well-pled allegations in the Amended Complaint are even stronger than this existing precedent because the allegations here do not involve discrimination or harassment between co-tenants. Rather, from the very act of leasing the property to AEPi, Defendant 420 Crown knowingly permitted the premises to be used as an instrument of discrimination against would-be female members and residents. In doing so, Defendant implicitly adopted and endorsed AEPi's "No Women Allowed" policy as the established practice governing the house. At all times, 420 Crown had the power and wherewithal to take corrective action but never did so. It did not direct AEPi to change its practices or even consider eviction. Rather, it

---

[7] *See Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364 (8th Cir. 2003) (reversing dismissal of complaint because a landlord can be held liable for failing to address tenant's discriminatory behavior on the basis of another tenant's disability); *Fahnbulleh v. GFZ Realty, LLC*, 795 F. Supp. 2d 360, 364 (D. Md. 2011) (denying motion to dismiss because a landlord could be held liable under the FHA for failing to take corrective action against tenant-on-tenant sexual harassment, and noting that "[t]o hold otherwise would be to introduce an unjustified discrepancy between Title VII and Title VIII theories of harassment and discrimination"); *Martinez v. Calif. Inv'rs XII*, No. CV 05-7608, 2007 WL 8435675, at *1 (C.D. Cal. Dec. 12, 2007) (denying defendant's Rule 12 (c) motion because landlord could be held liable for the racially motivated harassment of one tenant towards another tenant); *Williams v. Poretsky Mgmt., Inc.*, 955 F. Supp. 490, 496 (D. Md. 1996) (denying motion for summary judgment because a landlord could be held liable under the FHA for failing to correct sexual harassment committed by its employee against a tenant).

continually doubled down by affirmatively renewing the fraternity's lease—term after term.

This Court has recently gone one step beyond the co-tenant harassment cases by extending liability under the FHA to a consumer reporting agency that screens prospective tenants. *Conn. Fair Hous. Ctr. v. Corelogic Rental Prop. Sols., LLC*, 369 F. Supp. 3d 362, 374 (D. Conn. 2019). The Court's analysis that landlords, and by extension screening companies, "can be liable under [the FHA] where they knew of and had the power to correct and end a discriminatory housing practice," is highly instructive here. *Id.* Indeed, without imposing liability in these circumstances, "a housing provider could simply use an intermediary to take discriminatory and prohibited actions on its behalf and defeat the purpose of the FHA." *Id.* at 375.

Here, Plaintiffs allege that Defendant effectively permitted AEPi to determine who was able to rent available units in the fraternity house. *See, e.g.*, AC ¶¶ 158, 161, 163-64. 402 Crown knew or should have known precisely what the result would be—that AEPi would exercise its authority in a discriminatory manner and fill the house exclusively with male occupants. *See, e.g.*, *id.* ¶ 161. After all, AEPi is an all-male fraternity that does not admit women. Discovery will allow Plaintiffs to determine what sanctions, up to and including eviction, that Defendant had at its disposal but failed to enforce against its tenant. *Conn. Fair Hous. Ctr.*, 369 F. Supp. 3d at 374.

4. *Plaintiffs satisfy the pleading requirements for a disparate impact claim of housing discrimination*

Plaintiffs also plausibly allege housing discrimination on a theory of disparate impact. For a disparate impact claim, a plaintiff need only allege "a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *MHANY Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 617 (2d Cir. 2016)). Even if the Court were to adopt 402 Crown's position that its practice of renting to tenants such as AEPi (regardless of those tenants' practices) is "facially neutral," Plaintiffs allege that this "neutral"

policy has a disparate impact on them and similarly situated-members of their protected class. In effect, only men can live at the subject premises. Indeed, Plaintiffs twice applied for—and were denied—admission to AEPi, and by extension, housing at the subject property. AC ¶¶ 141, 141 n.5. 402 Crown's suggestion that Plaintiffs may not have been qualified to rent the subject premises, Mot. at 8, is therefore immaterial, as the relevant "qualification" (membership in a male fraternity) produced a disparate impact.[8]

**B. Plaintiffs State a Claim Under the Connecticut Discriminatory Housing Practices Act (Count IV)**

Connecticut courts "are guided by the cases interpreting federal fair housing laws" when analyzing housing discrimination claims under state law. *AvalonBay Cmtys.*, 775 A.2d at 307. The Amended Complaint plausibly alleges a violation of the FHA, so Plaintiffs have also stated a claim for violation of the CDHPA.

**C. Plaintiffs State a Claim of Civil Conspiracy (Count V)**

Because 402 Crown entered into a lease with AEPi that furthered violations of the FHA and CDHPA, Plaintiffs also state a claim of civil conspiracy. "To say that individuals 'join' a conspiracy, thereby exposing them to liability, is to say that they agree to participate, in some manner, in the object of the conspiracy." *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F. Supp. 2d 104, 107 (D. Conn. 2010). A claim for civil conspiracy requires:

> (1) [A] combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff.

---

[8] Further, 402 Crown has not even explained in what way Plaintiffs fail to allege they were qualified. The Amended Complaint makes clear that they would have been eligible to live in the fraternity house had they been male and thus been admitted to the fraternity's membership. AC ¶¶ 163-64.

*Williams v. Cmty. Sols., Inc.*, 932 F. Supp. 2d 323, 334 (D. Conn. 2013) (quoting *Harp v. King*, 835 A.2d 953, 972 (Conn. 2003)).

As demonstrated above, Plaintiffs allege that 402 Crown has agreed with AEPi to rent and operate the subject property as a male-only fraternity house ("a combination"). As 402 Crown knows, the space that AEPi leases from 402 Crown is provided to men on an exclusive basis in violation of the FHA and CDHPA (an "unlawful act"). AC ¶¶ 31, 163-64. AEPi uses the property as a residence for its (male) members and to attract new (male) members—indeed, the property is essential for this purpose. *Id*. ¶ 158. In two consecutive years, AEPi denied Plaintiffs housing at the subject premises ("an act done . . . in furtherance of the object" and "damage" to the Plaintiffs). Accordingly, Plaintiffs have successfully stated a claim for civil conspiracy against 402 Crown: they have alleged injury as a result of 402 Crown's lease agreement with AEPi in furtherance of AEPi's unlawful housing discrimination.

## IV. PLAINTIFFS ADEQUATELY PLEAD A CLAIM OF DISCRIMINATION IN A PLACE OF PUBLIC ACCOMMODATION (COUNTS VI AND VII)

### A. Plaintiffs state a claim for violation of Conn. Gen. Stat. § 46a-64

Plaintiffs reasonably allege that 402 Crown is a public accommodation. A "public accommodation" is defined as "any establishment which caters or offers its services or facilities or goods to the general public." Conn. Gen. Stat. § 46a-63. Whether an establishment falls under this statute depends on the extent to which the establishment has maintained a private relationship with its own constituency, as opposed to a general relationship with the public at large. *Quinnipiac Council, Boy Scouts of Am., Inc. v. Comm'n on Human Rights & Opportunities*, 528 A.2d 352, 359 (Conn. 1987). "[O]nce such an organization has determined to eschew selectivity, under our statute it may not discriminate among the general public." *Id*.

As the *Quinnipiac* court made clear, this "question of coverage [under the Connecticut General Statutes] is a question not of law but of fact." *Id*.; *see also Collins v. Univ. of Bridgeport*, 781 F. Supp. 2d 59, 66 (D. Conn. 2011) (noting "the issue of whether [defendant] may be a place of public accommodation" is a "fact-specific inquiry . . . ill-suited to a motion to dismiss"). Accordingly, this question cannot be decided at the pleading stage.

Plaintiffs allege facts sufficient to support an inference that 402 Crown is a public accommodation. Plaintiffs allege that AEPi and similar Defendant Fraternities (i) routinely hold open house parties to which "hundreds (or even thousands) of Yale undergraduates" are invited; (ii) host events that are advertised as "public" and welcome students from neighboring schools; and (iii) typically do not restrict entry by checking identification of guests. AC ¶¶ 196, 197, 301. Plaintiffs further allege that the fraternities like AEPi rent out their houses, like the property leased by 402 Crown, for use by outside individuals and organizations. *Id*. ¶¶ 198-99. Finally, Plaintiffs allege that Yale's fraternities "admit the majority of men who request membership." *Id*. ¶¶ 193, 195. These facts strongly support an inference that AEPi welcomes the public and eschews selectivity in its membership.

Connecticut law prohibits the denial of public accommodation to any person based on that person's membership in a protected class. Conn. Gen. Stat. § 46a-64(a)(1). Discrimination or separation based on sex, gender identity, or expression is also prohibited. Conn. Gen. Stat. § 46a-64(a)(2). "[T]he statutory obligation of a place of public accommodation is to treat all persons alike." *Comm'n on Human Rights and Opportunities ex rel. Thomas George v. Town of West Hartford*, CHRO No. 0910466, 2011 WL 1734676, at *4 (CT. Civ. Rts. Mar. 24, 2011). In determining whether a practice is discriminatory, courts "inquire into specific circumstances to determine whether a complainant has established a discriminatory denial of accommodations."

*Quinnipiac*, 528 A.2d at 359. Courts consider the "practical effect" of an organization's policies as well as the policies themselves. *Corcoran v. German Soc. Soc'y Frohsinn, Inc.*, No. CV020562775S, 2008 WL 642659, at *6 (Conn. Super. Ct. Feb. 21, 2008). This is so because "[a]ll of our antidiscrimination law is essentially fact-bound." *Quinnipiac*, 528 A.2d at 359.

Plaintiffs more than sufficiently plead that 402 Crown is liable for discriminatory denial of a public accommodation. Plaintiffs allege that 402 Crown knowingly rents property to AEPi for use as a fraternity house—as a center of operations and a place to host parties and events. AC ¶¶ 53, 161, 196-98. Defendant AEPi admits most men who apply to become members, but it denies membership to any and every woman. *Id*. ¶¶ 141, 193, 195. As a result, the male members of AEPi enjoy economic and social opportunities that female and gender non-binary students cannot access. *Id*. ¶ 7. Plaintiffs further allege that they attended parties at the subject premises thrown by AEPi, *id*. ¶¶ 110, 115, and were harmed by the hostile environment perpetuated by the fraternity at the 402 Crown property, *id*. ¶¶ 2, 4-6, 119, 126. Taking these allegations as true, Plaintiffs clearly state a claim that Defendant 402 Crown knowingly permitted AEPi to use the subject premises as a place of public accommodation and to deny women equal access to that place of public accommodation because of their gender.

**B. Defendant's Administrative Exhaustion Argument is Misplaced**

402 Crown wrongly asserts that Plaintiffs have failed to exhaust administrative remedies with respect to their claims of discrimination in places of public accommodation. This is a misinterpretation of the Amended Complaint. As a formal matter, Plaintiffs have not yet asserted claims of public accommodations discrimination against 402 Crown. At the time of filing the Amended Complaint, the allegations pertaining to the public accommodation claims against 402 Crown were pending before the Connecticut Commission on Human Rights and Opportunities

18

("CHRO"). Thus, Plaintiffs clearly stated in the Amended Complaint that they intended to amend the Complaint to add 402 Crown as a Defendant in Counts VI and VII once they receive all relevant Releases of Jurisdiction from the CHRO. AC ¶¶ 293, 305. Since the public accommodations claims against 402 Crown have not yet been formally asserted, Defendant's argument regarding administrative exhaustion is premature and inappropriate.

As Defendant 402 Crown notes, Plaintiffs and 402 Crown submitted a joint request to release jurisdiction from the CHRO for Plaintiffs' claims pursuant to Conn. Gen. Stat. § 46a-64(a). Mot. at 3 n.1, 12. *See* Conn. Gen. Stat. § 46a-101(b) ("The complainant and the respondent . . . may jointly request that the complainant receive a release from the commission at any time from the date of filing of the complaint."). On July 1, 2019, the CHRO issued the relevant releases of jurisdiction. As set forth in the Amended Complaint, AC ¶¶ 293, 305, Plaintiffs will seek to amend the Complaint to allege their claims against 402 Crown under Conn. Gen. Stat. § 46a-64. Once the Complaint is amended, Plaintiffs request that the Court deem 402 Crown's Motion made as to Plaintiffs' public accommodations claims and consider the arguments presented in 402 Crown's Motion, this opposition brief, and any reply brief 402 Crown submits.

### C.  Engender Has Standing to Assert a Claim Under Conn. Gen. Stat. § 46a-64

An organization has standing to sue if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. St. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). When standing is challenged at the pleading stage, the court accepts Plaintiff's allegations as true and construes the complaint in their favor. *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 227 (2d Cir. 2011), *aff'd*, 570 U.S. 205 (2013).

19

Connecticut law prohibits the denial of public accommodation to any "person" based on that person's membership in a protected class. Conn. Gen. Stat. § 46a-64. "Person" is defined to include "one or more individuals, partnerships, [or] associations." *Id*. § 46a-51(14) (emphasis added). 402 Crown does not dispute that Engender is a membership organization, of which the individual Plaintiffs are members. Nor does it dispute that individual Plaintiffs have standing to sue in their own right under section § 46a-64. Consequently, Engender indisputably satisfies the first prong of the *Hunt* test.

Engender also satisfies the second prong of *Hunt*, because its claims of public accommodation discrimination seek to protect interests germane to its purpose: namely, ending sexual harassment and enabling women and gender non-binary individuals to take advantage of the social and economic opportunities fraternities offer to Yale men. AC ¶ 28. Since 2016, Engender has pursued this mission through its attempts to integrate Yale's fraternities by gender, including AEPi. AC ¶¶ 10-11, 141. The public accommodations claim aims to vindicate that mission, and accordingly supports Engender's standing to pursue relief.

Finally, neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Claims for money damages do not require individualized proof when the injury is not "peculiar to the individual member concerned," but rather "common to the entire membership," or "shared by all in equal degree." *Warth v. Seldin*, 422 U.S. 490, 515-16 (1975). Moreover, "[i]f in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Id.* at 515.[9] Plaintiffs

---

[9] *Cf. Fed. R. Civ. P. 23(b)(2), 23(c)(2)(A) (no notice to class members required in mandatory class action for injunctive relief); *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Civil rights cases against

allege harm in the form of "loss of social, economic, and educational opportunities" that affect all members of Engender equally, so no individualized proof is required to assert these claims. AC ¶¶ 291, 303. Counts Six and Seven also seek "all legal and equitable remedies available for violations of Conn. Gen. Stat. §§ 46a-63, 46a-64, including actual damages, compensatory damages, injunctive relief, attorneys' fees and costs, and other appropriate relief." *Id.* ¶¶ 297, 309. As Engender seeks injunctive relief on behalf of its members, it clearly has standing under *Hunt*.

## **CONCLUSION**

Plaintiffs' well-pled Amended Complaint survives Defendant 402 Crown's Motion to Dismiss. The Amended Complaint contains extensive factual allegations supporting Plaintiffs' claims and the relief sought, and none of the claims are barred as a matter of law. Accordingly, this Court should deny Defendant's motion, and permit Plaintiffs to engage in and complete the discovery process.

---

parties charged with unlawful, class-based discrimination are prime examples" of Rule 23(b)(2) class cases for declaratory or injunctive relief).

Dated:  July 3, 2019

Respectfully submitted,


  /s/ David Tracey_____


David Sanford*
David Tracey*
Albert Powell*
Scott Sullivan*
Meredith Firetog**
Carolin Guentert**
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
dtracey@sanfordheisler.com
apowell@sanfordheisler.com
ssullivan@sanfordheisler.com
mfiretog@sanfordheisler.com
cguentert@sanfordheisler.com
*admitted *pro hac vice*
***pro hac vice* forthcoming

Attorney Daniel H. Schneider
Fed. Bar No. ct13208
**Schneider Law Firm, LLC**
112 Broad Street North, First Floor
Milford, CT 06460
Telephone: (203) 874-0030
Facsimile: (203) 878-01117
Daniel@Schneider-Law-Firm.com


*Attorneys for Plaintiffs and the Proposed
Class*

22