UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANNA McNEIL, et al., | ) | Case No.:  3:19-cv-00209 |
| Plaintiffs, | ) | |
| | ) | Hon. Victor A. Bolden |
| v. | ) | |
| | ) | |
| YALE UNIVERSITY *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

**FRATERNITY DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION IN FURTHER SUPPORT OF  FRATERNITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6)**

5795810

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

ARGUMENT ........................................................................................................... 1

I. Plaintiffs Do not Have Standing under the Fair Housing Act ........................... 1

    A. The Student Plaintiffs are not Aggrieved Persons under the FHA ........................... 1

    B. Engender Fails to Plausibly Plead Organizational Standing ................................. 3

II. The Fraternity Defendants are Not Public Accommodation .............................. 5

    A. Plaintiffs Mischaracterize and Engage in Improper Group Pleading Regarding the Fraternity Defendants ........................................................................ 5

    B. Decisions regarding Public Accommodation Statutes Outside of Connecticut are Not Relevant ................................................................................... 6

    C. The Fraternity Defendants are Highly Selective ....................................................... 7

    D. Proximity to Yale Does Not Render the Fraternity Defendants a Public Accommodation ........................................................................................................ 7

III. Plaintiffs' Claim under the Fair Housing Act should be dimissed due to the Act's Private Club Exemption ....................................................................................... 8

    A. Courts May Dismiss Claims on the Basis of an Affirmative Defense ..................... 8

    B. The Private Club Exemption Applies to the Fraternity Defendants ........................ 9

    C. Plaintiffs' Causes of Action under the Connecticut Fair Housing Act Must Fail ........................................................................................................... 9

IV. Plaintiffs Fails to Plead a Cause of Action for Civil Conspiracy ......................... 9

CONCLUSION ....................................................................................................... 10

5795810

## <u>TABLE OF AUTHORITIES</u>

Cases

*Bank of Am. Corp. v. City of Miami,*
137 S. Ct. 1296 (2017) ......................................................................................3

*Corcoran v. German Social Society Frohsinn,*
2008 WL 642659 (Conn. Super. Ct. Feb. 21, 2008).......................................7

*Fair Elections Ohio v. Hustad,*
770 F.3d 456 (6th Cir. 2014) ..........................................................................4

*Fraternal Order of Eagles, Inc., Tucson Aerie No. 180 v. City of Tucson,*
816 P.2d 255 (Ariz. App. 1991).....................................................................6, 7

*Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie Fraternal Order of Eagles,*
59 P.3d 655 (Wash. 2002 ..............................................................................6, 7

*Gladstone Realtors v. Village of Bellwood,*
441 U.S. 91 (1979)..........................................................................................2, 3

*Havens Realty Corp. v. Coleman,*
455 U.S. 363 (1982)........................................................................................2, 3, 4

*Hunt v. Wash. State Apple Advertising Comm'n,*
432 U.S. 333 (1977)........................................................................................4

*McKenna v. Wright,*
*386 F.3d 432 (2d Cir. 2004)* .........................................................................8

*State v. State,*
No. CV9557527S, 1996 WL 737513 (Sup. Ct. Conn. Dec. 16, 1996) ...........8

*Trafficante v. Metropolitan Life Ins., Co.,*
409 U.S. 205 (1972)........................................................................................2, 3

*U.S. v. Space Hunters,*
429 F.3d 416 (2d Cir. 2005) ...........................................................................8

*United States ex rel. Takemoto v. Nationwide Mut. Ins. Co.,*
674 Fed. Appx. 92 (2017) ...............................................................................6

*United States v. Columbus Country Club,*
915 F. 3d 877 (3d Cir. 1990) ..........................................................................8, 9

Statutes

20 U.S.C. § 1681(a)(6)(A) ..............................................................................1
42 U.S.C. §3607(a) .........................................................................................9
Article III..........................................................................................................3, 5

5795810

Case 3:19-cv-00209-VAB   Document 97   Filed 07/24/19   Page 4 of 16

Fair Housing Act ("FHA") ................................................................................................passim
Title II of the Civil Rights Act of 1964 ..............................................................................1
Title IX of the Educational Amendments of 1972 ("Title IX") ...........................................1

Rules
Fed. Rule Civ. P. 8 ...............................................................................................................9

iii

5795810

## INTRODUCTION

*"I have a hard time seeing how the law is going to force [fraternities] to be gender neutral."*

-- Douglas Fierberg, Senior Advisory Board Member for Plaintiff Engender, attorney, and founder of the Fierberg National Law Group."[1]

Without doubt, the reason that Mr. Fierberg has difficulty seeing how the law could require gender neutrality in fraternities is because both federal and state law permits fraternities (and sororities) to include gender as selection criteria.[2]  Regardless, Plaintiffs ask the Court to do what federal and state legislatures expressly have not: require collegiate fraternities and sororities to remove gender from their selection criteria.   The Court should not entertain Plaintiffs' attempted end run around these legislative decisions.

Plaintiffs' arguments as to why this case should continue are without merit.  They lack standing under the Fair Housing Act, they have not established -- because they cannot -- that the Fraternity Defendants are public accommodations, and they have not pled a claim for civil conspiracy.  This Court should dismiss the Second Amended Complaint.[3]

## ARGUMENT

I.    Plaintiffs Do Not Have Standing under the Fair Housing Act

A.    *The Student Plaintiffs are not Aggrieved Persons under the FHA*

---

[1] Interview with Douglas Fierberg, Slate podcast, "*The Fight to Curb Fraternity Abuse: If financial pressures won't force frats to change, will the courts?*"

[2] Title IX of the Educational Amendments of 1972 ("Title IX") explicitly permits gender as a selection criterion in social fraternities and sororities.  20 U.S.C. § 1681(a)(6)(A).  Title II of the Civil Rights Act of 1964 does not include gender or sex a protected characteristic in the law governing discrimination by "place[s] of public accommodation," *id.* § 2000a(a).  Title II also includes explicit exceptions for private clubs with restricted membership such as fraternities (and sororities), *id.* § 2000a(d).

[3] The factual background and legal arguments relevant to the disposition of this motion have been previously submitted to the Court in the Fraternity Defendants' Memorandum of Law in support of their Motion to Dismiss. In an effort to avoid repetition of all relevant facts and arguments, the Fraternity Defendants respectfully refers the Court to the facts and arguments contained in their Memorandum of Law and expressly incorporates them herein.

5795810

Plaintiffs Singer, Walker, and McNeil (the "Student Plaintiffs") are not "aggrieved persons" under the Fair Housing Act. In order to claim injury, the Student Plaintiffs seek to align themselves with the plaintiffs in *Trafficante v. Metropolitan Life Ins., Co.*, 409 U.S. 205 (1972); *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979), and *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). But applying the broad standing language contained in these cases, Plaintiffs are not within the "zone of interests" that the FHA seeks to protect. Plaintiffs are not municipalities claiming a loss of tax revenue based on alleged discriminatory action of the Fraternity Defendants, or renters turned away from apartments. Plaintiffs' alleged injuries in this action, including the loss of "coveted parking spaces," are a far cry from allegations of racial steering considered in these cases, and they fall far short of the "aggrieved person" standard.[4]

The Student Plaintiffs allege that they were denied social, associational, and economic benefits sufficient to confer standing under the FHA—including association with fraternity members.[5] Plaintiffs' claims of social and economic benefits are wholly speculative, and more critically, those alleged injuries do not have a nexus to alleged housing discrimination. Plaintiffs do not plead that membership in a fraternity automatically grants a member residence in a fraternity house, or that all fraternity members live in the house. In other words, one could receive all benefits of fraternity membership as pled by Plaintiffs without living in a fraternity house. Accordingly, there is no proximate cause between the alleged injury and the alleged housing discrimination. Plaintiffs also allege that they suffered emotional harm (and in doing

---

[4] Plaintiff's Opposition Memorandum of Law (Docket No. 87 pages 16-20 of 43) (hereinafter "Pl. Opp.").

[5] Pl. Opp. pp. 18-19 of 43. Plaintiffs' claim that they were deprived of the benefits of living with fraternity members is contrary to their claim that the fraternities would instead benefit from Plaintiffs' membership. Further, taking the allegations in Plaintiffs' SAC true as required at this stage, a CBS News Report noted a logical inconsistency in Plaintiffs' position: "If I am someone who goes into a party at the only place available for me to socialize, which is a fraternity, and I am being groped and sexually assaulted and in an environment that I think is unsafe, why do I want to join the fraternity?" See, CBS This Morning, "*Women claiming sexual harassment at Yale fraternities take unexpected legal action*" (Feb. 12, 2019) https://www.cbsnews.com/news/yale-fraternities-lawsuit-women-claim-sexual-harassment-at-fraternity-events-ask-to-integrate-women/.

5795810

so, compare themselves to the plaintiffs denied marriage equality in *Obergefell*). But Plaintiffs have pled no facts supporting alleged emotional harm associated with any alleged denial of housing. As such, these allegations of emotional distress are without merit.

In an attempt to convince the Court that they somehow have standing under the FHA, Plaintiffs misrepresent the Supreme Court's holding in *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296 (2017), claiming that the Court there "unequivocally rejected" standing arguments asserted by the banks in that action.[6] But the *City of Miami* decision is narrow and far more nuanced than a flat rejection of limitations on standing under the FHA articulated by the banks in that action. As noted by the dissenting justices in *City of Miami*, the "Court conspicuously does not reaffirm the broad language from *Trafficante*, *Gladstone* and *Havens* suggesting that Congress intended to permit any person with Article III standing to sue under the FHA." *Id.* at 695. In addition, the majority's standing analysis in the *City of Miami* was narrowly circumscribed based on *stare decisis*, as Miami, like the village in *Gladstone*, alleged reduced tax revenues as an injury.

### B. Engender Fails to Plausibly Plead Organizational Standing

Engender has not pled any facts supporting its barebones assertion that it used any resources to seek equal access to housing.[7] Plaintiffs' opposition brief has not changed that pleading inadequacy.

An organizational plaintiff can demonstrate standing either through representational standing or direct standing. An organization can bring suit as a representative of its members only if, *inter alia*, at least one member has standing. *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). As set forth in the Fraternity Defendants' motion and

---

[6] Pl. Opp. at p. 12. Notably, *City of Miami* was a 5-3 decision. Justice Gorsuch took did not participate in the decision.

[7] *See*, Fraternity Defendants' Memorandum of Law in Support of their Motion to Dismiss, Docket No. 76-1, Page 13 of 28.

5795810

above, the Student Plaintiffs do not have standing. As such, Engender does not and cannot have representational standing.

Engender also has not pled -- nor could it -- that it suffered direct injury and therefore has direct standing. The *Havens* Court recognized that direct organizational injury is cognizable in only two ways: (a) consequential drain on organizational resources to identify or counteract the allegedly unlawful action, or (b) frustration of the organization's mission. *Havens, supra* at *33. Engender has pled neither. Engender alleges that it had to focus resources on seeking equal access to fraternity membership and housing.[8] But Engender is a student organization created in 2016 for the express purpose of seeking to "equity and inclusion at Yale," *i.e.*, to "integrate fraternities by gender" at Yale.[9] Engender was created to put funds toward this purpose. Thus, Engender is not claiming that its resources were diverted, or its mission frustrated by alleged housing discrimination. Rather, Engender alleges that it is "*continuing*" to spend time and resources on ending alleged "gender discriminatory practices of fraternities."[10] In other words, it has pled that it is engaged in activities central to its mission.

Engender's argument is contrary to standing principles. In *Havens*, Housing Opportunities Made Equal ("HOME") was a fair housing organization that operated housing counseling services and identified suitable apartments for local low income citizens. *Id.* at 368. Thus, HOME had a purpose a mission that was frustrated by Havens' alleged discriminatory conduct. HOME's work was undermined in the activity of providing truthful counseling when Havens "directly interfered with" its counselee. *See also*, *Fair Elections Ohio v. Hustad*, 770 F.3d 456, 460 n.1 (6th Cir. 2014) (discussing organizational standing in Havens and holding that voter outreach organization lacked standing to challenge a deadline for requesting an

---

[8] SAC at ¶ 272.
[9] SAC at ¶¶ 1 and 10-11.
[10] SAC at ¶ 18.

5795810

absentee ballot). Engender does not provide other services, nor is there any allegation that false information regarding housing was communicated to Plaintiffs. Engender has no such mission or purpose frustrated by alleged housing discrimination.

Article III standing is more than a pleading game. An organization cannot create Article III standing by forming for the sole purpose of challenging a practice it believes to be discriminatory and then claiming that the discriminatory practice has frustrated its mission and caused it to divert resources. Accordingly, Engender's claims of discrimination under the FHA must be dismissed.

II.    The Fraternity Defendants are Not Public Accommodations

Plaintiffs have failed to establish that the Fraternity Defendants are Public Accommodations under the FHA or Connecticut law. As a threshold matter, the Court may and should take judicial notice of the decision issued by the Connecticut Commission on Human Rights and Opportunities ("CHRO"), the agency tasked with enforcing the state's public accommodation statute.[11] CT. Gen. Stat. 46a-55. Not surprisingly, Plaintiffs beg the Court to ignore the CHRO's assessment, which dismissed Plaintiffs' claims in their entirety. The Fraternity Defendants are, of course, not asking this Court to simply adopt the CHRO's decision. Rather, the Fraternity Defendants urge this Court to take notice that the CHRO has already determined that Plaintiffs have not pled facts to support a finding that the Fraternity Defendants are "public accommodations" under Connecticut law -- the same question this Court must decide here.

A.    *Plaintiffs Mischaracterize and Engage in Improper Group Pleading Regarding the Fraternity Defendants*

As the CHRO previously determined, the public accommodation inquiry can and should

---

[11] Pl. Opp. at p. 37 of 43.

5795810

easily be resolved at the pleading stage,[12] as Plaintiffs wholly fail to plead facts that the Fraternity Defendants are public accommodations.  Plaintiffs repeatedly argue that the Fraternity Defendants are no different than bars or clubs on campus and therefore must be public accommodations.[13] But several fraternity brothers living in a house and hosting parties is in no way akin to bars or clubs that are open to the public on a daily basis from open-to-close, with numerous employees transacting business with customers.

To create the illusion of widespread access to the public, Plaintiffs improperly group together the social activities of all Fraternity Defendants.[14]  For example, Plaintiffs lump together the social activities of the Zeta, Alpha Delta Phi, and Delta Kappa Epsilon fraternities to create the appearance of multiple social functions open to the general public.  Such pleading is improper.  *See, e.g., United States ex rel. Takemoto v. Nationwide Mut. Ins. Co.,* 674 Fed. Appx. 92 (2017). And regardless of Plaintiffs' pleading efforts, there is no case law finding that the hosting of a party renders a social club a public accommodation.

> B. *Decisions regarding Public Accommodation Statutes Outside of Connecticut are Not Relevant*

Plaintiffs' reliance on case law regarding the Fraternal Order of the Eagles (FOE) in support of their public accommodation argument is misplaced.[15]  Analysis of the Washington and Arizona statutes at issue in those cases has no bearing on this Court's interpretation of the Connecticut statute at issue, and the key factual underpinnings of those decisions are not present in this matter.

---

[12] Pl. Opp. at p. 29 of 43.
[13] Pl. Opp. at p. 30 of 43.
[14] Pl. Opp. at p. 30 of 43 (Plaintiffs combining the Zeta, Alpha Delta Phi and Delta Kapp Epsilon parties to argue that each of the Fraternity Defendants host regular parties).
[15] Pl. Opp. at p. 31 of 43, citing *Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie Fraternal Order of Eagles*, 59 P.3d 655 (Wash. 2002), and *Fraternal Order of Eagles, Inc., Tucson Aerie No. 180 v. City of Tucson*, 816 P.2d 255, 257 (Ariz. App. 1991).

5795810

For example, in *Tuscon Aerie*, the court found that to meet the statute's public accommodation exemption, the organization's profits must be "solely for the benefit" of the organization. *Tuscon Aerie* at *9. In that case, there was no dispute that the FOE raised a large amount of money annually that it distributed to a number of charities. *Id*. The Connecticut statute does not contain this or similar language. Further, Plaintiffs have not pled any facts regarding the Fraternity Defendants' charitable giving practices.

### C. *The Fraternity Defendants are Highly Selective*

The Fraternity Defendants have a long history of being highly selective in choosing men for membership, and they have not eschewed that selectivity. Plaintiffs attempt to rely on *Corcoran v. German Social Society Frohsinn*, 2008 WL 642659 (Conn. Super. Ct. Feb. 21, 2008), in demonstrating that there is no true selectivity here. The German Club at issue in *Corcoran* had no consistent history of the denial of applications for membership. *Id*. at *14. Without this history, the Court found that the German Society had eschewed selectivity. The same cannot be said for the Fraternity Defendants here.

Further, Plaintiffs' own allegations regarding the National Organizations -- that they provide detailed recruitment instructions, have handbooks and manuals regarding recruitment, and retain control over candidate selection -- support the fact that that the Fraternity Defendants are selective.[16] Indeed, Plaintiffs have pled meaningful limitations on membership, including sponsorship by current members through a Chapter vote.[17]

### D. *Proximity to Yale Does Not Render the Fraternity Defendants a Public Accommodation*

Plaintiffs fail to plead a "symbiotic" relationship between the Fraternity Defendants and Yale University to transform the Fraternity Defendants into a "public accommodation."

---

[16] Pl. Opp. at pp. 35-43.
[17] Pl. SAC. at ¶ 150.

7

5795810

Plaintiffs again point to non-binding determinations regarding analysis of state anti-discrimination laws that are wholly irrelevant to the Connecticut statute at issue here. This Court should disregard those cases and look instead to *State v. State*, No. CV9557527S, 1996 WL 737513 (Sup. Ct. Conn. Dec. 16, 1996), which deals with the very state law at issue here. The *State* court evaluated the relationship between a public university's own cheerleading squad and the university and found it not to be sufficiently "symbiotic" with the university to render the cheerleading squad a public accommodation.

III.    Plaintiff's Claim under the Fair Housing Act should be dismissed due to the Act's Private Club Exemption

*A.   Courts May Dismiss Claims on the Basis of an Affirmative Defense*

The applicability of the FHA's private club exemption to this action is a question of law. The Court may apply the statutory law to the facts presented by Plaintiffs to determine that they have failed to plausibly plead facts supporting that the Fraternity Defendants are places of public accommodation.  Despite Plaintiffs' claims to the contrary, this court can and should dismiss a claim on the basis of an affirmative defense if "the facts supporting the defense appear on the face of the complaint," and "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *U.S. v. Space Hunters*, 429 F.3d 416 (2d Cir. 2005) citing *McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004)* (internal quotation marks omitted).[18]

For the same reasons that the Fraternity Defendants are not public accommodations, they are "private clubs": that is, they have "meaningful conditions of limited membership." Here, the Fraternity Defendants peer-selection procedure is intensely personal and meaningful.

---

[18] The Fraternity Defendants do not dispute that the FHA exemptions have been considered affirmative defenses as discussed by the United States Court of Appeals for the Third Circuit in *United States v. Columbus Country Club, 915 F.2d 877, 882-85 (3d Cir. 1990)* (treating the "religious organization" and "private club" exemptions as affirmative defenses).

5795810

Plaintiffs make much of the fact that members host private functions, but as discussed above, such events this do not compromise the Fraternity Defendants' private nature.

B. *The Private Club Exemption Applies to the Fraternity Defendants*

As pled by the Plaintiffs, the Fraternity Defendants fall within the private club exemption.  In reference to the language of 42 U.S.C. §3607(a), Plaintiffs argue that the word "lodging" as contained in the private club exemption does not apply to the Fraternity Defendants.  Plaintiffs rely on *United States v. Columbus Country Club*, 915 F. 3d 877 (3d Cir. 1990), in which the Third Circuit considered whether the Columbus Country Club's sale of vacation bungalows was exempt under Section 3607(a).  Here, unlike the sale of vacation bungalows, the Housing Entities provide rental arrangements of a limited term. Indeed, the Fraternity Defendants provide "lodgings" as contemplated within the private club exemption, which function as educational housing, available during an academic year, and potentially over a summer break.

C. *Plaintiffs' Causes of Action under the Connecticut Fair Housing Act Must Fail*

The Fraternity Defendants agree that Connecticut Fair Housing Practices Act ("CFHPA") tracks the federal FHA.  For the reasons discussed above, Plaintiffs have suffered no injury under either the FHA or the CFHPA.[19]  Accordingly, Plaintiffs CFHPA claim also fails.

IV.   <u>Plaintiffs Fails to Plead a Cause of Action for Civil Conspiracy</u>

Mere recitation of the elements of a conspiracy is insufficient for Plaintiffs to meet their pleading obligation under Fed. Rule Civ. P. 8 and *Twombly/Iqbal*.  Without pointing to any facts, Plaintiffs allege that each local chapter, national organization, and housing corporation

---

[19] Pl. Opp. at 26 of 43.

5795810

conspired to engage in unlawful housing allegations.[20]  No specific agreement is alleged and no specific act is alleged.   Plaintiffs' vague assertions provide wholly implausible conclusory assertions to support their conspiracy claims against any Fraternity Defendant.

**CONCLUSION**

The Fraternity Defendants respectfully request that the Court dismiss all claims against them in their entirety, along with such other and further relief as the Court deems just and proper.

Dated: New York, New York
      July 24, 2019

                        Respectfully submitted,

                        KAUFMAN BORGEEST & RYAN LLP

                        /s/ Joan M. Gilbride
                        Joan M. Gilbride (Ct.13836)
                        Laura B. Juffa *(Pro Hac Vice)*
                        Stephanie Fox *(Pro Hac Vice)*
                        *Attorneys for Defendants Alpha Delta Phi International Inc., Alpha Epsilon Pi Fraternity, Inc., Conn. Omega of Sigma Alpha Epsilon, Alpha Kappa Delta of Chi Psi, Alpha Epsilon Pi, Epsilon Upsilon, Chi Psi Fraternity, Delta Kappa Epsilon Fraternity, Edward Donahue, III, Leo, High Street Housing Corporation, Delta Kappa Epsilon, Phi Chapter, House Corporation of Sigma Chi at Yale, Sigma Phi Epsilon, Connecticut Delta Chapter, Sigma Alpha Epsilon Fraternity, Sigma Chi International Fraternity, Sig Ep Housing of Connecticut Delta LLC, Mother Phi Foundation, Inc., Sigma Chi, Theta Upsilon Chapter, Sigma Nu Fraternity Beta Alpha Chapter, Sigma Nu Fraternity, Inc., Sigma Phi Epsilon Fraternity, Yale Chapter of Alpha Delta Phi International, Inc., Zeta Psi Fraternity, Inc., ZP Nutmeg Association, Zeta Psi, ETA Chapter.*
                        120 Broadway, 14th Floor
                        New York, New York 10271
                        Telephone: 212.980.9600

---

[20] Pl. Opp. at p. 27 of 43; SAC at ¶ 280.

5795810

Facsimile: 212.980.9291
Email: jgilbride@kbrlaw.com
Email: ljuffa@kbrlaw.com
Email: sfox@kbrlaw.com


Stanton Jones *(Pro Hac Vice)*
Emily Newhouse Dillingham *(Pro Hac Vice)*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001
Telephone: 202-942-5563
Email: stanton.jones@arnoldporter.com
Email: emily.dillingham@arnoldporter.com


TO:   (via ECF)
      All counsel of record

11

5795810

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this day 24th of July, 2019, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all counsel who are registered users.

/s/ Joan Gilbride
Joan M. Gilbride

5795810