# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANNA MCNEIL, *et al.*, on behalf of themselves and all others similarly situated, | |
| *Plaintiffs,* | |
| v. | |
| YALE UNIVERSITY *et al.* | |
| | No. 3:19-cv-00209-VAB |
| *Defendants.* | October 25, 2019 |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO SUBMIT SUPPLEMENTAL BRIEFING ON PROXIMATE CAUSE

i

**TABLE OF AUTHORITIES**

**CASES:**

*Bank of Am. Corp. v. City of Miami*,
  137 S. Ct. 1296 (2017) ................................................................................................... *passim*

*Bigelow v. RKO Radio Pictures*,
  327 U.S. 251 (1946) ................................................................................................................ 7

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008) ................................................................................................................ 6

*City of Oakland v. Wells Fargo Bank, N.A.*,
  No. 15-cv-04321, 2018 WL 7575537 (N.D. Cal. Sept. 5, 2018) ............................................. 2

*City of Phila. v. Wells Fargo & Co.*, No. 17-2203,
  2018 WL 424451 (E.D. Pa. Jan. 16, 2018) ............................................................................. 5

*CSX Transp., Inc. v. McBride*,
  564 U.S. 685 (2011) ................................................................................................................ 1

*Gilead Cmty. Servs. Inc. v. Town of Cromwell*,
  No. 3:17-cv-627, 2019 WL 4805032 (D. Conn. Sept. 30, 2019) ........................................ 3, 4

*Greenberg v. Smolka*,
  No. 03 Civ. 8572, 2006 WL 1116521 (S.D.N.Y. Apr. 27, 2006) ............................................ 6

*Holmes v. Secs. Inv'r Prot. Corp.*,
  503 U.S. 258 (1992) ............................................................................................................ 1, 6

*Jackson v. White Castle Sys., Inc.*,
  15-CV-06378, 2017 WL 4737257 (E.D.N.Y. Oct. 19, 2017) .................................................. 7

*Maziarz v. Hous. Auth. of Town of Vernon*,
  281 F.R.D. 71 (D. Conn. 2012) ........................................................................................... 3, 5

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
  199 F. Supp. 3d 818 (S.D.N.Y. 2016) ............................................................................... 8

*Mhany Mgmt., Inc. v. Cty. of Nassau*,
  819 F.3d 581 (2d Cir. 2016) ............................................................................................ 3

*Montgomery Cty. Md. v. Bank of Am. Corp.*,
  Civ. No. PWG-18-3575, 2019 WL 4805678 (D. Md. Sept. 30, 2019) .................................. 2, 5

*N.Y. City Dist. Council of Carpenters Pension Fund v. Forde*,
  No. 11 Civ. 5474, 2018 WL 2455437 (S.D.N.Y. June 1, 2018) .................................................. 6

*Nat'l Fair Hous. All. v. Bank of Am., N.A.*,
  Civ. No. CCB-18-1919, 2019 WL 3241126 (D. Md. July 18, 2019) .......................................... 5

*Or v. Edwards*,
  818 N.E.2d 163 (Mass. App. Ct. 2004) .............................................................................. 7

*Portee v. Hastava*,
  853 F. Supp. 597 (E.D.N.Y. 1994) ................................................................................... 2

*Prince George's Cty. Md. v. Wells Fargo & Co.*,
  Civ. No. 18-3576, 2019 WL 3766526 (D. Md. Aug. 9, 2019) ................................................ 2, 5

*Samaritan Inns v. Dist. of Columbia*,
  114 F.3d 1227 (D.C. Cir. 1997) ......................................................................................... 5

*Sherwood v. Finch*,
  No. CV-00-349, 2000 WL 1862562 (D. Or. Dec. 20, 2000) .................................................. 8

*Smith v. United Residential Servs. & Real Estate, Inc.*,
  837 F. Supp. 2d 818 (N.D. Ill. 2011) ................................................................................. 5

*Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
  135 S. Ct. 2507 (2015) ..................................................................................................... 3

*Thurmond v. Bowman*,
  211 F. Supp. 3d 554 (W.D.N.Y. 2016) ............................................................................ 3, 4

*U.S. v. Balistrieri*,
  981 F.2d 916 (7th Cir. 1992) .................................................................................................. 5

*U.S. v. Tighe*,
  No. 15-CR-62, 2018 WL 1307949 (E.D.N.Y. Mar. 13, 2018) .................................................. 3

*United States v. Space Hunters, Inc.*,
  429 F.3d 416 (2d Cir. 2005) .................................................................................................... 4

*White v. Roger*,
  901 F.2d 1501 (9th Cir. 1990) ................................................................................................. 8

**STATUTES:**

42 U.S.C. § 3604 .................................................................................................................. *passim*

**OTHER AUTHORITIES:**

4 Harper, James, & Gray, *Torts* § 20.5 (2d ed. 1986)………………………………………..7

Kenneth S. Abraham, *The Forms and Functions of Tort Law* 135 (1997)……………………..7

Plaintiffs hereby move the Court for permission to submit supplemental briefing on the issue of proximate cause under the Fair Housing Act ("FHA"). In particular, Plaintiffs seek to address the Court's discussion of proximate cause at the October 15 hearing on Defendants' motions to dismiss. Since the Court raised this issue *sua sponte*, Plaintiffs request an opportunity to submit supplemental briefing (set forth below) to the extent that the Court is considering this issue as a potential ground for dismissal of their FHA claims.

With regard to the FHA claims, the Fraternity Defendants raised only two potential grounds for relief: standing and the private club exemption.[1] Defendants did not raise proximate cause in connection with their Rule 12 motion and Plaintiffs had no opportunity to address or brief the matter. They did not delve into the body of case law in this area. In this case, there is a direct, unbreakable link between the Fraternities' practice of denying admission to women and the harm Plaintiffs suffered from being denied the opportunity to live in Defendants' fraternity houses.

Under *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296 (2017), proximate cause is a separate issue from standing. Part II of the opinion concerns standing, which turns on an "injury in fact" coming within the "zone of interests" protected by the statute. The Court there concluded that standing was satisfied under the facts and circumstances of that case. *Id*. at 1302-1305.

In Part III of the opinion, the *Bank of America* court turned to the separate, "remaining question" of causation. *Id*. at 1305. The Court indicated that, in FHA cases, the proximate cause doctrine—imported from the common law of torts—acts as an equitable and practical limitation on *damages* remedies. *See id*. at 1305-1306.[2] Indeed, defendant there had argued that "the distance

---

[1] Likewise, neither 340 Elm nor 402 Crown raised the issue of proximate cause. These Defendants asserted that the standards of liability were not met as to the claims against them as landlords of the properties.

[2] *See also, e.g.*, *Holmes v. Secs. Inv'r Prot. Corp.*, 503 U.S. 258, 268-69 (1992); *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692-93 (2011).

between the [alleged] violations and the harms the City claims to have suffered is simply too great to entitle the City to collect damages." *Id*. at 1301.

Thus, there is no indication in *Bank of America* that the proximate cause limitation applies to an FHA claim for injunctive relief. *See, e.g.*, *Prince George's Cty. Md. v. Wells Fargo & Co.*, Civ. No. 18-3576, 2019 WL 3766526, at *9 (D. Md. Aug. 9, 2019) (dismissing damages claim for non-economic injuries as too remote, but allowing injunctive claim to proceed as the proximate cause requirement is less strict or is obviated in the context of equitable and declaratory relief); *Montgomery Cty. Md. v. Bank of Am. Corp.*, Civ. No. PWG-18-3575, 2019 WL 4805678, at *17 (D. Md. Sept. 30, 2019) (same). The issue is pending before the Ninth Circuit. *See City of Oakland v. Wells Fargo Bank, N.A.*, No. 15-cv-04321, 2018 WL 7575537, at *2 (N.D. Cal. Sept. 5, 2018).

Upon remand, the Eleventh Circuit has now concluded that proximate cause is satisfied on several of the claims in the *Bank of America* case—particularly as to the claim for diminished tax revenue. *City of Miami v. Wells Fargo & Co.*, 923 F.3d 1260 (11th Cir. 2019).

Here, while the parties have presented detailed arguments on whether Plaintiffs have standing under the FHA (Part II of *Bank of America*), they have not addressed proximate cause (Part III). Plaintiffs should have an opportunity to do so. Plaintiffs maintain that their arguments are at least equally strong and that the claims should not be dismissed on this ground.

---

First, Plaintiffs suggest that proximate cause does not apply as a potential bar to their claims for injunctive relief. *See, e.g.*, *Prince George's Cty.*, 2019 WL 3766526, at *9; *Montgomery Cty.*, 2019 WL 4805678, at *17; *cf. Portee v. Hastava*, 853 F. Supp. 597, 610 (E.D.N.Y. 1994) (FHA case: an effort to cure discrimination that has already occurred "impacts on proximate cause and

2

damages, not liability").[3]

In any case, the pleadings amply support a plausible inference of proximate cause and a jury could well conclude as much on the facts as alleged. There is plainly "some direct relation between the injury asserted and the injurious conduct alleged." *Bank of Am.*, 137 S. Ct. at 1306.

The proximate cause inquiry, similar to the issue of standing, must be applied in light of the extraordinary breadth of the statutory provisions at issue. *Id.* at 1305 ("Proximate cause analysis is controlled by the nature of the statutory cause of action."); *see also id.* at 1306 ("What falls within that 'first step' [of the causation chain] depends in part on the nature of the statutory cause of action. . . . ") (citation omitted); *see generally U.S. v. Tighe*, No. 15-CR-62, 2018 WL 1307949, at *5 (E.D.N.Y. Mar. 13, 2018) (proximate cause "is a flexible concept grounded in policy considerations") (citations omitted).

Here, the "otherwise make unavailable" language of 42 U.S.C. § 3604(a) is a "catchall phrase" that "look[s] to consequences, not intent," and has been broadly "construed to reach every practice which has the effect of making housing more difficult to obtain on prohibited grounds." *Gilead Cmty. Servs. Inc. v. Town of Cromwell*, No. 3:17-cv-627, 2019 WL 4805032, at *19 (D. Conn. Sept. 30, 2019) (Bolden, J.) (citing *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2519 (2015); *Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 600 (2d Cir. 2016); *Thurmond v. Bowman*, 211 F. Supp. 3d 554, 564 (W.D.N.Y. 2016)). The statute cannot be cabined to cover only "an express denial of a housing opportunity or the unavailability of a specific housing opportunity." *Gilead*, 2019 WL 4805032, at *21.

---

[3] Notably, voluntary cessation does not ordinarily moot a claim for injunctive and declaratory relief. To establish mootness, a defendant must meet a "heavy burden to ensure the allegedly illegal activities do not temporarily cease only to resume after the claims have been dismissed . . . the defendant must demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Maziarz v. Hous. Auth. of Town of Vernon*, 281 F.R.D. 71, 79-80 (D. Conn. 2012) (citations omitted).

Similarly, section 3604(c) is not limited to "statements that directly [a]ffect a housing transaction" and "applies on its face to anyone who makes prohibited statements." *Id*. at \*15, 18 (citing *U.S. v. Space Hunters, Inc.*, 429 F.3d 416, 424 (2d Cir. 2005)). Statements need only be made "in connection with the housing market." *Id*. at \*15-16, 18 (rejecting argument that statements were not made "with respect to the sale or rental of a dwelling" as inconsistent with Circuit precedent). The overall question is whether the challenged statements "*convey* a prohibited preference or discrimination to the ordinary listener," an intensely factual issue. *Id*. at \*15-16.

In this case, there is a direct, inextricable link between the Fraternities' rigid male-only policies and the availability of its housing stock. A fraternity house is the central locus of the organization's activity, and housing is generally reserved exclusively for (male) members. *E.g.*, Second Amended Complaint ("SAC") ¶¶ 158-59, 163-64, 261. By repeatedly turning Plaintiffs away from pledging and joining the Fraternities on account of their gender, the Fraternity Defendants—as an inherent corollary—denied them access to housing, making that housing "unavailable" under section 3604(a); and, Defendants conveyed a sex-based "preference, limitation, or discrimination" "in connection with the housing market" under section 3604(c). Defendants sent an unmistakable message that Plaintiffs were not welcome as residents of their fraternity houses because they are female. Plaintiffs' injuries—including deprivation of housing opportunities as well as dignitary, psychic, and emotional harm—are directly attributable to Defendants' conduct.

These harms are certainly no more remote or attenuated than those at issue in *Gilead*. There, the Court held that there were genuine issues of material fact as to whether the defendants' political speech and activity against a group home for disabled individuals caused plaintiff, a not-for-profit service provider, to have to close the program and sell the house at a loss, as well as

4

causing damage to its reputation and to the livelihood of its clients. *Id*. at *25. Similarly, defendants' conduct could be viewed as the cause of the injuries suffered by a third-party housing advocacy organization which was compelled "to expend additional resources to re-educate the public and policymakers about housing discrimination against individuals with disabilities." *Id. See also, e.g.*, *Maziarz v. Hous. Auth. of Town of Vernon*, 281 F.R.D. 71, 78-79 (D. Conn. 2012) (rejecting proximate cause and standing challenge where disabled plaintiff alleged that he suffered psychic injury from having to complete, as a condition of tenancy, a health certification and tenant sponsorship form on account of his disability); *Samaritan Inns v. Dist. of Columbia*, 114 F.3d 1227, 1234-38 (D.C. Cir. 1997) (District of Columbia issued illegal stop-work order for residential rehabilitation facility, and initiated proceedings to revoke its construction permits, causing plaintiff organization remediable harm in the form of delayed contributions from donors).[4]

*Bank of America* and related cases are also instructive. *See City of Miami*, 923 F.3d 1260; *Prince George's Cty.*, 2019 WL 3766526; *Montgomery Cty.*, 2019 WL 4805678; *City of Phila. v. Wells Fargo & Co.*, No. 17-2203, 2018 WL 424451, at *4-5 (E.D. Pa. Jan. 16, 2018). Courts in those cases have found many of the injuries alleged by plaintiff municipalities to be appropriately attributable to defendant banks' discriminatory lending practices. The links are far closer and

---

[4] *See further U.S. v. Balistrieri*, 981 F.2d 916, 933 (7th Cir. 1992) (rejecting argument that defendants' conduct was not the proximate cause of housing testers' emotional distress because they did not experience harm at the time of their interactions with defendants but only after being informed by third party as to the end results of the tests: "discrimination is not always immediately apparent . . . The fact that the victim does not suffer the full effects of the discrimination until he discovers the big picture does not change the fact that the defendant's discrimination was the primary cause of his harm"); *Nat'l Fair Hous. All. v. Bank of Am., N.A.*, Civ. No. CCB-18-1919, 2019 WL 3241126, at *9-12 (D. Md. July 18, 2019) (plausible that disproportionately poor maintenance practices with respect to foreclosed properties in communities of color proximately caused vacancies, lowered home values, and reduced availability of housing stock in those neighborhoods—in turn causing organizational plaintiffs to divert resources from their mission of eliminating racially segregated housing and its effects); *Smith v. United Residential Servs. & Real Estate, Inc.*, 837 F. Supp. 2d 818, 825 (N.D. Ill. 2011) (in a discriminatory lending case, finding plaintiff's causation allegations sufficient even though plaintiff utilized a broker and chose from available rates: Plaintiff alleged that the brokers were controlled by defendants' policies and acted as "mere conduits").

5

stronger here: Plaintiffs' claims are directly and immediately about housing transactions affecting them personally, and there are no third-party victims standing between Defendants' acts and Plaintiffs' injuries. Plaintiffs' claims present far more of a straightforward FHA housing case.

Consequently, the claims readily meet each of the "directness" factors set forth in the leading Supreme Court precedents, although they are not strictly required to do so. *See, e.g.*, *City of Miami*, 923 F.3d at 1270, 1275-76, 1282 (interpreting *Bank of Am.*, 137 S.Ct. at 1306 and *Holmes v. Secs. Inv'r Prot. Corp.*, 503 U.S. 258 (1992)):[5]

■ First, the purported harm is firmly attributable to the alleged violation. There is *no* other or intervening cause for the alleged deprivations Plaintiffs suffered here. The chain of causation remains at the "first step": there are no extra links between the alleged violations and injuries and no third-party actors involved. Plaintiffs were denied housing because of their gender and lost *that housing*, as well as suffering attendant, closely-related harm.[6]

The harm here is *direct*: it was an immediately "foreseeable and natural consequence of [defendants'] scheme" to exclude women from the Fraternities and to turn them away. *N.Y. City Dist. Council of Carpenters Pension Fund v. Forde*, No. 11 Civ. 5474, 2018 WL 2455437, at *11 (S.D.N.Y. June 1, 2018) (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008)).

---

[5] "The [*Holmes*] Court pointed to three distinct reasons why directness of relationship was one of the central elements of . . . causation. First, less direct injuries are harder to attribute to a violation. Second, claims at different levels of remove complicated the apportionment of harm among plaintiffs at different levels. Third, directly injured plaintiffs usually can be counted on to sue and deter wrongdoing." *City of Miami*, 923 F.3d at 1232. at 1282 (citing *Holmes*, 503 U.S. at 269-70).

[6] Under the case law, "garden-variety" emotional distress is purely incident to being subject to acts of discrimination and is equivalent to what an ordinary individual would suffer in similar circumstances. *See, e.g.*, *Greenberg v. Smolka*, No. 03 Civ. 8572, 2006 WL 1116521, at *5-6, 8-9 (S.D.N.Y. Apr. 27, 2006) (no waiver of psychotherapist-patient privilege for claims of "garden variety" distress "reasonably . . . attributable to the incident"— *i.e.*, "nothing more than the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized").

■ Second, it would not be unduly complicated to determine and apportion damages. Juries do so all the time. Here, both the alleged wrongful conduct and the resulting harm are unitary and not dispersed between competing actors and causes. Of course: "The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery for a proven invasion of the plaintiff's rights." *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265-66 (1946). This rationale is particularly strong here where an expansive remedial statute provides for relief.

■ Third, Plaintiffs' injuries are not merely derivative of the injuries of another and there is no party better positioned to recover in their stead. Plaintiffs and other similarly-situated women (the proposed class members) are the only ones whose rights and injuries are at stake, and they have a strong incentive to pursue this matter. As the directly injured parties here, they "will be able to deter future [FHA] violations [ ] effectively and efficiently." *City of Miami*, 923 F.3d at 1288.

Ultimately, it may be discerned, the essence of the "proximate cause" limitation is that a defendant is not held liable for harms other than those which made its conduct tortious in the first place.[7] *See Or v. Edwards*, 818 N.E.2d 163, 172 (Mass. App. Ct. 2004) (Kaplan, J.) (comprehensively distilling and synthesizing the doctrine in the tort context). Indeed, the limitation on tort liability imposed by the proximate cause requirement is a quintessential jury issue:

> Juries have a special place and value when it comes to handling the issue of limitation on liability, for here community standards—conceptions about what is right—should and inevitably do play their part . . . proximate cause is the most practical and realistic of doctrines, for it asks the jury to step back after it has applied the individual pieces of the liability puzzle and look at the whole picture before it makes the final decision.

*Id*. at 174-75 (citing 4 Harper, James, & Gray, *Torts* § 20.5 at 136-37 (2d ed. 1986); Kenneth S.

---

[7] This formulation is consistent with the Supreme Court's observation in *Bank of America* that the proximate cause inquiry is defined by the nature of the statutory cause of action.

7

Abraham, *The Forms and Functions of Tort Law* 135 (1997)). *See also, e.g.*, *Jackson v. White Castle Sys., Inc.*, 15-CV-06378, 2017 WL 4737257, at *2 (E.D.N.Y. Oct. 19, 2017) ("The Court must afford due deference to the jury's role as fact-finder . . . particularly with regard to questions of proximate cause.") (citation omitted); *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 199 F. Supp. 3d 818, 841 (S.D.N.Y. 2016) (proximate cause ordinarily an issue of fact for the jury); *Sherwood v. Finch*, No. CV-00-349, 2000 WL 1862562, at *13-14 (D. Or. Dec. 20, 2000) (FHA case: "Generally, [q]uestions of proximate causation are issues of fact which are properly left to the jury if reasonable persons could reach different conclusions") (citing *White v. Roger,* 901 F.2d 1501, 1506 (9th Cir. 1990)).[8]

In the sweep of FHA decisions, this is far from a close case—particularly at the pleadings stage. Defendants maintained male-only policies and practices and made housing "unavailable" to Plaintiffs as an immediate result. They conveyed discriminatory preferences, causing Plaintiffs to look elsewhere for housing and to experience the type of dignitary insult and harm that victims of discrimination generally endure. Accordingly, the Court should decline to dismiss the claims on grounds of proximate cause or, alternatively, entertain further briefing on this limited issue.

Dated:  October 25, 2019

                                              Respectfully submitted,

                                               /s/ Andrew Melzer_____

                                              David Sanford*
                                              David Tracey*

---

[8] In *Sherwood,* the court at summary judgment rejected defendants' contention that plaintiff's damages—arising from frequent moves between temporary residences, some of which were allegedly substandard—were not caused by defendants' conduct but by plaintiffs' "peculiar" and desperate desire to remain in a certain school district at all costs. It found both foreseeability and proximate cause to be issues of fact. 2000 WL 1862562, at *13.

Andrew Melzer*
Albert Powell*
Scott Sullivan*
Meredith Firetog*
Carolin Guentert*

**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
dtracey@sanfordheisler.com
amelzer@sanfordheisler.com
apowell@sanfordheisler.com
ssullivan@sanfordheisler.com
mfiretog@sanfordheisler.com
cguentert@sanfordheisler.com

*admitted *pro hac vice*

Attorney Daniel H. Schneider
Fed. Bar No. ct13208
**Schneider Law Firm, LLC**
112 Broad Street North, First Floor
Milford, CT 06460
Telephone: (203) 874-0030
Facsimile: (203) 878-01117
Daniel@Schneider-Law-Firm.com

*Attorneys for Plaintiffs and the Proposed Class*

9